UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:26-cv-22257- JB/Torres

UNIDOSUS, et al.,

    *Plaintiffs*,

v.

BYRD, in his official capacity as Florida
Secretary of State, et al.,

    *Defendants*.

_____/

## DEFENDANTS SECRETARY BYRD AND DIRECTOR KERNER'S MOTION TO TRANSFER, CONSOLIDATE, AND ALIGN PLEADING DEADLINES

Secretary of State, Cord Byrd, and Director of the Florida Department of Highway Safety and Motor Vehicles, Dave Kerner, ask this Court to (1) transfer Case No. 4:26-cv-00147-MW-MAF, currently pending before the Northern District of Florida; (2) consolidate the Northern District case with this one; and (3) align the responsive pleading deadlines in the two cases. Transfer is appropriate under the first-to-file rule and 28 U.S.C. § 1404(a). Consolidation and alignment of the deadlines would promote judicial economy and the efficient resolution of the two cases. Secretary Byrd and Director Kerner provide the attached memorandum in support.

1

## MEMORANDUM OF LAW IN SUPPORT

### I.       Background

On April 1, 2026, Plaintiffs filed a complaint for declaratory and injunctive relief in the Southern District of Florida against the Secretary of State and the Supervisors of Elections for Broward, Miami-Dade, and Palm Beach Counties. 1:26-cv-22257, Doc.1 (S.D. Fla.). This action challenges provisions in newly enacted House Bill 991.

Later that day, the Florida State Conference of Branches and Youth Units of the NAACP and the Florida Alliance for Retired Americans challenged the same law in the Northern District of Florida. 4:26-cv-00147, Doc.1 (N.D. Fla.). The Florida NAACP and Florida Alliance likewise seek declaratory and injunctive relief against HB 991. They're suing the Secretary, the Executive Director of the Florida Department of Highway Safety and Motor Vehicles, and all of Florida's sixty-seven Supervisors of Elections.

As detailed below, a transfer to the Southern District of Florida is appropriate under the first-to-file rule. There already exists a first-filed action encompassing the same defendants and substantially the same issues in the Southern District. In addition, transfer to the Southern District is appropriate under 28 U.S.C. § 1404(a).

This Court also has the inherent power to provide the other requested relief, namely consolidation and alignment of the pleading deadlines. Doing so would promote the efficient resolution of the cases.

### II.      Argument

***Transfer under the first-to-file rule is appropriate.*** "Under the first-filed rule 'when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case.'" *Exactech United States Inc. v. Midwest Med. Sols., LLC*,

No. 1:19-cv-57, 2019 U.S. Dist. LEXIS 246311, at *2 (N.D. Fla. Apr. 24, 2019) (quoting *Collegiate Lic. Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 78 (11th Cir. 2013)). "Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit." *Id.* (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)). "[T]he overlap between the pending cases necessarily raises concerns of judicial efficiency and disparate resolutions of similar cases; such concerns would be addressed by transfer of the case." *Jacobs v. United States*, No. 5:13-cv-278, 2013 U.S. Dist. LEXIS 183064, at *4-5 (N.D. Fla. Sept. 30, 2013), *magistrate recommendation adopted* 2014 U.S. Dist. LEXIS 3129 (N.D. Fla. Jan. 10, 2014).

"For the first-filed rule to apply, the two actions must involve overlapping parties and issues." *Belacon Pallet Servs., Ltd. Liab. Co. v. Amerifreight, Inc.*, No. 1:15-cv-191, 2016 U.S. Dist. LEXIS 195606, at *8 (N.D. Fla. Mar. 26, 2016) (citing *Manuel*, 430 F.3d at 1135). "The issues and the parties need not be identical but must overlap." *Millican v. Gerber Prods. Co.*, No. 21-60602-CIV, 2021 U.S. Dist. LEXIS 112379, at *3 (S.D. Fla. June 10, 2021). And while there must be overlapping issues, "identical legal issues are not the standard; the relevant inquiry is whether the actions are largely based on the same conduct and the issues overlap." *Id.* at *6. "[I]n the Eleventh Circuit, the First Filed Rule is liberally construed." *Daugherty v. Adams*, No. 1:16-cv-02480, 2017 U.S. Dist. LEXIS 218131, at *27 (N.D. Ga. Mar. 22, 2017) (citing *Manuel*, 430 F.3d at 1135).

The first-to-file rule applies here. A civil action is commenced by filing a complaint with the court, Fed. R. Civ. P. 3, and the Southern District action was filed before the action in the Northern District, albeit by a matter of hours. Based on conversations with the respective clerk's offices, the complaint in the Southern District was filed at 9:32 AM (eastern time), while the

3

complaint in the Northern District was filed at 11:29 AM (eastern time). The two actions involve overlapping parties, namely the Secretary and the Supervisors of Elections for Broward, Miami-Dade, and Palm Beach Counties. And the two actions involve the same issues—both actions challenge the citizenship verification provisions in HB 991. *See* 4:26-cv-00147, Doc.1 (N.D. Fla.); 1:26-cv-22257, Doc.1 (S.D. Fla.).

Judicial efficiency favors pursuing only the first-filed action. Transferring and then "consolidating this case with the nearly identical [Southern District] action would prevent Defendants from defending against the same allegations in multiple jurisdictions, thus preserving both party and judicial resources." *Yao v. Ulta Beauty Cosmetics, LLC*, No. 18-22213-CIV, 2018 U.S. Dist. LEXIS 219079, at *11 (S.D. Fla. Aug. 8, 2018). And transferring to the Southern District would avoid the possibility of conflicting decisions. *See id.* at *3 (the first-to-file rule is "intended to avoid conflicting decisions and promote judicial efficiency"); *Savage v. Seterus, Inc.*, No. 2:19-cv-14256, 2020 U.S. Dist. LEXIS 6670, at *6 (S.D. Fla. Jan. 15, 2020) ("The purposes of the first-filed rule are to avoid the waste of judicial resources, inconsistent rulings, and piecemeal litigation."); *IoT Innovs. LLC v. Lutron Elecs. Co.*, No. 25-60483-CIV, 2026 U.S. Dist. LEXIS 67398, at *17-18 (S.D. Fla. Mar. 30, 2026) (explaining that "[t]he first-filed rule is intended to prevent inconsistent judgments").

Plus, "[t]here is no indication that the plaintiffs will be prejudiced by transfer. This case is in its infancy and the parties have not even begun discovery." *Summers-Wood L.P. v. Wolf*, No. 3:08-cv-60, 2008 U.S. Dist. LEXIS 108827, at *13 (N.D. Fla. May 23, 2008); *see also Yao*, 2018 U.S. Dist. LEXIS 219079, at *10 (observing that both cases "are in the very early stages of litigation, and this is not a situation where a second-filed matter has proceeded far beyond a first-

filed matter, such that it becomes impractical to dismiss or stay the second-filed matter." (quotation and brackets removed)).

"To overcome the strong presumption of the first-filed rule," the non-moving party "must demonstrate 'compelling circumstances' that warrant an exception to the rule." *Belacon Pallet Servs.*, 2016 U.S. Dist. LEXIS 195606, at *7-8 (citing *Manuel*, 430 F.3d at 1135). A "lost race to the courthouse" isn't a "compelling circumstance." *Id.* at *10 (quoting *Tech Data Corp. v. Mainfreight, Inc.*, No. 8:14-cv-1809, 2015 U.S. Dist. LEXIS 17347, at *6 (M.D. Fla. Feb. 12, 2015)). Nor is the plaintiff's "forum preference" enough on its own "to be a 'compelling circumstance' that warrants an exception to the first-filed-rule." *IoT Innovs.*, 2026 U.S. Dist. LEXIS 67398, at *17.

There's an exception to the rule when the first-filed action "was filed in apparent anticipation of the other pending proceeding." *Exactech*, 2019 U.S. Dist. LEXIS 246311, at *3 (quoting *Manuel*, 430 F.3d at 1135). That exception doesn't apply in this case because there's no indication that the plaintiffs in the Southern District filed the action when they did in anticipation of the action in the Northern District. The Secretary and Director are also unaware of the Southern District plaintiffs having "notice of a potential lawsuit" in the Northern District that prompted an "anticipatory filing." *Id.* (quoting *Collegiate Lic. Co.*, 713 F.3d at 79). It seems that the Southern District claims were filed in response to the Governor signing HB 991 earlier that day.

Nor does the fact that the Northern District and Southern District cases currently have different plaintiffs change whether the first-to-file rule applies. For the first-to-file rule, "[n]either the parties nor the issues need be identical." *Goldstein v. Beliv, LLC*, No. 22-cv-80643, 2022 U.S. Dist. LEXIS 196685, at *3 (S.D. Fla. Oct. 28, 2022). "Rather, the parties and the issues 'must simply overlap.'" *Id.* (quoting *Daugherty*, 2017 U.S. Dist. LEXIS 218131, at *34). "The first-to-

file rule applies where 'some of the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters.'" *Id.* at *5 (quoting *Cadenasso v. Metro. Life Ins. Co.*, No. 13-cv-05491, 2014 U.S. Dist. LEXIS 52750, at *34 (N.D. Cal. Apr. 14, 2014)); *see also Daugherty*, 2017 U.S. Dist. LEXIS 218131, at *32 ("[F]or the First Filed Rule to apply, the parties need not be identical. Instead, courts look to whether there are overlapping similarities." (citing *Manuel*, 430 F.3d at 1135)); *Millican*, 2021 U.S. Dist. LEXIS 112379, at *5 (same).

And "[i]n the Eleventh Circuit, the First Filed Rule is the rule, not an exception." *Daugherty*, 2017 U.S. Dist. LEXIS 218131, at *25 (citing *Manuel*, 430 F.3d at 1135). "As such, the First Filed Rule should not be disregarded lightly," and there are no compelling circumstances that warrant departing from the rule here. *Id.* (citing *Manuel*, 430 F.3d at 1135). Because the first-to-file rule applies, this Court should transfer the Northern District's action to the Southern District. *See Yao*, 2018 U.S. Dist. LEXIS 219079, at *4 ("When the rule applies, the proper course of action is for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed."); *Martin v. Akers Bioscience, Inc.*, No. 8:14-cv-2835, 2014 U.S. Dist. LEXIS 174158, at *10 (M.D. Fla. Dec. 17, 2014) (staying second-filed case pending first-filed court's forum and jurisdiction determination).

Finally, as to "who decides whether the first-filed rule applies," "cases from the Eleventh Circuit and its district courts" say that it's this Court. *Humbert v. Bytedance, Inc.*, 5:24-cv-236, 2025 U.S. Dist. LEXIS 187124, at *6-7 (N.D. Fla. Jan. 28, 2025) (collecting cases).

***The transfer statute also favors moving the Northern District case.*** The first-to-file rule is a sufficient basis on its own to transfer this case. *See Millican*, 2021 U.S. Dist. LEXIS 112379, at *3-4 ("If the court determines that transfer under the first-to-file rule is appropriate, the court

6

need not consider the request to transfer made under 28 U.S.C. § 1404(a).”); *Savage*, 2020 U.S. Dist. LEXIS 6670, at *7 (“A transfer of a case under the first-filed rule does not depend on the presence or absence of 28 U.S.C. § 1404(a) considerations.”).

But in the alternative, transfer is also proper under § 1404(a). It states: “For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.” 28 U.S.C. § 1404(a) The transfer statute serves “to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.” *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotations removed).

“Application of the transfer statute” is a “two-pronged inquiry.” *Belacon Pallet Servs.*, 2016 U.S. Dist. LEXIS 195606, at *4. The court first considers “whether the action could have been brought in the alternative venue.” *Id.* The court then “balances private and public factors relevant to the convenience of the parties and witnesses to determine if transfer is warranted.” *Id.* For the second prong, courts in the Eleventh Circuit consider nine factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Exactech*, 2019 U.S. Dist. LEXIS 246311, at *4-5 (quoting *Manuel*, 430 F.3d at 1135 n.1).

And like the first-to-file rule, this Court, as the one where the first-filed case is, should address the § 1404(a) issues. *See Humbert*, 2025 U.S. Dist. LEXIS 187124, at *7 n.2. This makes sense. As the Eleventh Circuit said, “[t]he first-filed rule not only determines which court may

7

decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Collegiate Lic. Co.*, 713 F.3d at 78.

For the § 1404(a) analysis, as a threshold matter, this Court must assess whether the Northern District case could have been brought in the Southern District of Florida. It could have. Subject matter jurisdiction, personal jurisdiction, and venue are all present in the Southern District.

**(1) Subject Matter Jurisdiction.** The Southern District of Florida has subject matter jurisdiction because the Florida NAACP and Florida Alliance's claims arise under the Constitution and laws of the United States; there's federal question jurisdiction. *See* 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1343.

**(2) Personal Jurisdiction.** The Southern District of Florida also has personal jurisdiction because all Defendants are residents of Florida. *See* Fed. R. Civ. P. 4(k)(1)(A).

**(3) Venue.** Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(1) and (2). Some Defendants reside in the Southern District of Florida (specifically the Supervisors of Elections for counties within the Southern District), and all Defendants are residents of Florida. In addition, a substantial part of the alleged harm giving rise to the claims occurred (or supposedly will occur) in the Southern District, as HB 991 is a law of statewide applicability.

In sum, the Florida NAACP and Florida Alliance could have brought this action in the Southern District of Florida.

Moving to the consideration of private and public factors. Many are neutral because Defendants are all over the state (the Florida NAACP and Florida Alliance sued the Supervisor of Elections for every Florida county) and the Florida NAACP and Florida Alliance are statewide

organizations. Furthermore, the Florida NAACP and Florida Alliance haven't named a single specific individual negatively affected by HB 991 that they could call as a witness.

Other considerations favor transferring. There is already a pending lawsuit in the Southern District making substantially the same claims. Four of the Defendants in the Northern District action are subject to suit in the Southern District and must respond to the same claims. The Southern District action was brought before the Northern District action. *See Belacon Pallet Servs.*, 2016 U.S. Dist. LEXIS 195606, at *7-8 (considering first-filed action as part of weighing factors under § 1404(a)).

As for the location of *possible* witnesses and *possible* evidence of the alleged harm, those are more likely to be found in the Southern District because that district covers Florida's largest metropolitan area. Again, the Florida NAACP and Florida Alliance allege that they're statewide organizations with members throughout Florida. *See* 4:26-cv-00147, Doc.1 at 9 (N.D. Fla.) (Florida NAACP has "12,000 members" who "reside in all 67 of Florida's counties"); 4:26-cv-00147, Doc.1 at 13 (N.D. Fla.) (Florida Alliance "has over 200,000 members throughout Florida's 67 counties"). As such, the location of witnesses and evidence doesn't favor keeping the case in the Northern District. *Cf. Abreu v. Pfizer, Inc.*, No. 21-62122-CIV, 2022 U.S. Dist. LEXIS 28133, at *26-27 (S.D. Fla. Feb. 16, 2022) (magistrate judge order) ("Plaintiff seeks to represent a nationwide class—where everyone would have their own healthcare provider and pharmacy—so the location of Plaintiff's witnesses, if they are even necessary to the case, is not a factor in his favor.").

The one factor that could weigh in favor of remaining in the Northern District is the Florida NAACP and Florida Alliance's initial choice of forum. "That choice is not entitled to the weight it is generally accorded, however, where there is no material connection between the forum and the

events underlying the cause of action." *Summers-Wood*, 2008 U.S. Dist. LEXIS 108827, at \*12 (quoting *Delarosa v. Holiday Inn*, 99 Civ. 2873, 2000 U.S. Dist. LEXIS 6882, at \*13 (S.D.N.Y. May 18, 2000)). Or, as one court put it, "where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded 'great weight' and in fact is given reduced significance." *Id.* at \*13 (quoting *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991)). Again, HB 991 applies across the state, in the Southern District as well as the Northern District.

In addition, "where a plaintiff has chosen a forum that is not its home, less deference is required." *Owners Ins. Co. v. Lime Creek AG Transp., LLC*, No. 5:25-cv-00150, 2025 U.S. Dist. LEXIS 122347, at \*7 (M.D. Ga. June 27, 2025) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). Despite bringing this action in the Northern District, "Florida NAACP is headquartered in Fort Lauderdale." 4:26-cv-00147, Doc.1 at 9 (N.D. Fla.). The complaint doesn't specify where the Florida Alliance is based, but the Alliance's 2025 Florida Not For Profit Corporation Reinstatement filed with the Division of Corporations states that its current principal place of business is in Port St. Lucie. Florida Department of State Division of Corporations, https://dos.fl.gov/sunbiz/search/ (last visited April 4, 2026).

And taking all the plaintiffs across both actions, consider this: there are ten plaintiffs in the Southern District case as compared to the two plaintiffs in the Northern District case. As far as convenience of the parties goes, it would be much more convenient to litigate these claims in the Southern District.

Not only could the Florida NAACP and Florida Alliance have brought their claims in the Southern District of Florida, but considerations that favor one forum over the other weigh in favor of the Southern District. The factor of judicial efficiency certainly favors transferring this case to

10

the Southern District. *See Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

***Consolidation of the cases is appropriate.*** Once transferred, this Court should consolidate the two cases. Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." "Rule 42(a) 'is a codification of a trial court's inherent managerial power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Transpire Bio Inc. v. Lupin Inc.*, No. 25-61566-CIV, 2025 U.S. Dist. LEXIS 257015, at *3-4 (S.D. Fla. Oct. 23, 2025) (internal quotation removed) (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)). In deciding whether to consolidate, the court takes into account four factors:

> (1) whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues; (2) the burden on parties, witnesses and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple suits as against a single one; and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* at *4 (citing *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017)). For the same reasons explained above, all these considerations counsel in favor of consolidation. And since both cases have just begun, this isn't a situation where "the cases are at different stages of preparedness for trial." *Id.* (quotation removed).

In fact, the first-to-file rule anticipates that the overlapping actions will be consolidated. *See Perkins v. Am. Nat'l Ins. Co.*, 446 F. Supp. 2d 1350, 1353 (M.D. Ga. 2006) ("[U]nder the 'first-

11

filed rule,' the court where the subsequently filed action has been filed should defer to the court where the first action was filed to allow that court to decide whether it should exercise jurisdiction over both cases in a consolidated action."); *Collegiate Lic. Co.*, 713 F.3d at 78 (the first-to-file rule "establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated").

***Alignment of pleading deadlines.*** Finally, this Court should align the pleading deadlines in the two cases. Absent a stay, the responsive deadline in the Northern District case is June 1, 2026. The deadline in the Southern District is April 22, 2026. Because the issues overlap, compiling consistent pleadings would conserve judicial resources and promote judicial economy.

### III.   Conclusion

For the reasons outlined above, this Court should transfer, consolidate, and align the pleading deadlines.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), I certify that Defendants' counsel has conferred with Plaintiffs' counsel in both the cases in a good faith effort to resolve the issues presented. Plaintiffs in this case consent to the requested relief. Plaintiffs in the Northern District case have not yet responded with their position.

Dated: April 7, 2026                        Respectfully submitted,


                                            Ashley E. Davis (FBN 48032)
                                              General Counsel
                                            Bilal A. Faruqui (FBN 15212)
                                              Deputy General Counsel
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 South Bronough Street
Tallahassee, Florida 32399
(850) 245-6531
ashley.davis@dos.fl.gov
bilal.faruqui@dos.fl.gov
jenna.mclanahan@dos.fl.gov

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
(850) 270-5938
mjazil@holtzmanvogel.com

*Counsel for Florida Secretary of State and
Florida Department of Highway Safety and
Motor Vehicles Director*

## LOCAL RULE 7.1(c) CERTIFICATION

The undersigned certifies that the foregoing does not exceed twenty pages inclusive of all parts.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I certify that on April 7, 2026, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared. In addition, I sent a copy of this document to counsel for Plaintiffs in the Northern District of Florida case at issue here.

/s/ Mohammad O. Jazil
Mohammad O. Jazil