# EXHIBIT 1

April 22, 2026

*Via Certified Mail and E-Mail*

Cord Byrd
Florida Secretary of State
Florida Department of State
R.A. Gray Building
500 South Bronough Street
Tallahassee, FL 32399

Re: <u><i>Florida's Compliance with the National Voter Registration Act</i></u>

Dear Secretary Byrd:

We write on behalf of League of Women Voters of Florida and its members, League of Women Voters of Florida Education Fund, Florida Immigrant Coalition and its members, FLIC Votes, Florida Rising and its members, Florida Rising Together, Common Cause and its members, Common Cause Education Fund, Hispanic Federation, UnidosUS, other similarly situated organizations and individuals who are members of those organizations, and other similarly situated individuals, to notify you that multiple provisions of H.B. 991, Laws of Fla. ch. 2026-26, violate the National Voter Registration Act of 1993, 52 U.S.C. § 20501 et seq. ("NVRA"). These parties are also currently plaintiffs in *UnidosUS*, *v. Byrd*, No. 1:26-cv-22257 (S.D. Fla., filed Apr. 1, 2026).

As the chief elections officer for Florida, you are responsible for compliance with the NVRA. *See* Fla. Stat. § 97.012; 52 U.S.C. § 20509. We write to you in hope of an amicable resolution of these violations, which are set forth in detail in this letter. We are available to discuss these issues at your convenience and welcome hearing from you. But we must insist on concrete, demonstrable steps and assurances to ensure compliance with the NVRA. Absent such assurances, we are prepared to amend our pending litigation to add necessary claims to protect the rights of Florida voters guaranteed by the NVRA.

Below, we detail the relevant requirements of the NVRA and describe how H.B. 991 violates the NVRA, in addition to providing notice of an ongoing violation of the NVRA.

## NVRA REQUIREMENTS:

The goal and intent of the NVRA is to "establish procedures that will increase the number of eligible citizens who register to vote" and "enhance[] the participation of eligible citizens as voters" while protecting election integrity and ensuring accurate voter rolls. 52 U.S.C. § 20501.

## NVRA Section 5: Simultaneous Applications for Driver's Licenses and Voter Registration

Section 5 of the NVRA requires that covered states register voters simultaneously when they apply for a state driver license or ID. 52 U.S.C. § 20504. Furthermore, the required Section 5 processes for these transactions include:

1

> Any change of address form submitted in accordance with State law for the purpose of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registration unless the registrant states on the form that the change of address is not for voter registration purposes.

52 U.S.C. § 20504(d).

**NVRA Section 6:** **The Federal Form and Voter Registration Drives**

*Federal Form:*

The NVRA requires states to establish procedures for registering to vote in federal elections by mail application. 52 U.S.C. § 20503(a)(2). Section 6 of the NVRA establishes the "Federal Form" as one of these methods for registering to vote. *Id.* § 20505(a)(1). All states must "accept and use" the Federal Form. *Id.* In Section 9 of the NVRA, Congress originally delegated the authority to "prescribe such regulations as are necessary" to develop the Federal Form, specifically to "develop a mail voter registration application form for elections for Federal office" to the Federal Election Commission ("FEC"). 52 U.S.C. § 20508(a)(1). Per the NVRA, the Federal Form requires only that an applicant attest under penalty of perjury that they meet the eligibility requirements. *Id.* § 20508(b). And consistent with this requirement, the current version of the Federal Form requires only attestation of citizenship, not Documentary Proof of Citizenship ("DPOC"). *See* 11 C.F.R. § 9428 Subpart B.[1] If an applicant's valid Federal Form is timely received by state election officials, the NVRA mandates that the State "ensure that any [such] eligible applicant is registered to vote." 52 U.S.C. § 20507.

In 2013, the U.S. Supreme Court held that the NVRA precluded a state from requiring applicants who use the Federal Form to submit information beyond that required by the form itself. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15, 18 (2013) (holding that the NVRA's requirements that states "accept and use" the Federal Form "acts as both as ceiling and a floor" for registering to vote in federal elections). Specifically, the Court concluded that a state-imposed requirement of evidence of citizenship not required by the Federal Form was inconsistent with the NVRA's mandate that states accept and use the Federal Form. *Id.* at 15. As such, all Federal Forms from otherwise eligible voters must be accepted, and these voters must be registered to vote in federal elections even if they do not comply with a state's citizenship verification regime.

*Voter Registration Drives:*

The NVRA protects the right of third parties to conduct registration drives and submit voter registration forms. The NVRA directs election officials to make Federal Forms available, "with particular emphasis on making them available for organized voter registration programs." 52 U.S.C.

---

[1] The NVRA was enacted in 1993, and in 1994, the FEC promulgated formal regulations through notice-and-comment rulemaking. *Id.* § 20929; *see, e.g.*, 59 Fed. Reg. 32,311 (June 23, 1994) (final rules regulating the Federal Form). The FEC did not impose any requirement that voters using the Federal Form need to provide DPOC with a completed Form; the rules have not been amended since they were enacted in 1994.

2

§ 20505(b). And the NVRA provides third parties with a legally protected interest in conducting voter registration drives because it limits the states' ability to reject forms meeting the NVRA's standards. 52 U.S.C. § 20507(a)(1)(D) (stating that the states "shall . . . ensure" that voters who complete timely, valid forms are registered); 52 U.S.C. § 20505(a)(2) (states "shall accept" the Federal Forms).

The Eleventh Circuit acknowledges this right. "[T]the NVRA encourages voter-registration drives [because] the NVRA requires a state to accept voter-registration applications collected at such a drive and mailed in to a voter-registration office; the NVRA gives a voter-registration organization like each of the plaintiffs here a 'legally protected interest' in seeing that this is done; and when a state adopts measures that have the practical effect of preventing an organization from conducting a drive, collecting applications, and mailing them in, the state violates the NVRA." *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1162–63 (11th Cir. 2012) (citing *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408. F.3d 1349, 1353–54 (11th Cir. 2005)).

## NVRA Section 7: Public Assistance Agencies

Section 7 of the NVRA requires that "all offices in the State that provide public assistance" operate as "voter registration agencies." 52 U.S.C. § 20506(a)(2). Such voter registration agencies must provide specific voter registration services along with "each application for . . . service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance." *Id.* § 20506(a)(6). These required voter registration services include distribution of a Federal Form or "its equivalent." 52 U.S.C. § 20506.

## NVRA Section 8: List Maintenance

Section 8 of the NVRA addresses how states administer their systems for maintaining voter registration lists for federal elections. First, Section 8(b) requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for election for Federal office shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1). The statue's uniformity requirement is violated when a voter roll maintenance program singles out particular groups of voters for different treatment. *See Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 703 (N.D. Ohio 2006); *see also U.S. v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012) (holding that a "state cannot properly impose burdensome demands in a discriminatory manner").

Second, Section 8 of the NVRA limits the reasons that a state or political subdivision may remove a registered voter from the voter registration rolls. 52 U.S.C. § 20507(a)(3)–(4). Specifically, a voter can be removed at the voter's request, by reasons of criminal conviction or mental incapacity, by the voter's death, or by the voter's change in the residence. *Id.* The statute also establishes that, before any voter is removed, they must be given notice, in writing, and can be removed only if they fail both to respond to the notice and to vote in "2 or more consecutive general elections for Federal office." 52 U.S.C. § 20507(b)(2), (d). The notice that is required under Section 8 of the NVRA must include a postage prepaid and pre-addressed return card and must be sent by forwardable mail. 52 U.S.C. § 20507(d)(2).

Finally, Section 8 of the NVRA requires states to "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A).

**<u>VIOLATIONS:</u>**

**<u>NVRA Section 5</u>: The State Must Allow Voters to Opt-Out of Applying DHSMV Address Changes to Voter Registration.**

H.B. 991 amends Fla. Stat. § 98.093 to impose a new requirement on the information the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") must provide the Department of State. Per the newly added requirement, the DHSMV must report to the Florida Department of State information identifying a change in residence address on the Florida driver license or Florida ID card of any person who declined to register or update his or her voter record. Laws of Fla. ch. 2026-26, § 9, at 13 (amending Fla. Stat. § 98.093(8)(d)). The Department of State must then report each such change in residence address to the appropriate supervisor of elections, who must update the voter's registration to reflect the new address. *Id.*

This requirement conflicts with Section 5 of the NVRA. Section 5 provides that a change of address submitted for the purpose of a driver license shall also serve to update a voter's registered address "unless the registrant states on the form that the change of address is not for voter registration purposes." 52 U.S.C. § 20504(d). The provision thus requires that voters must be able to opt-out of applying their address update for the purpose of a driver license to their voter registration. *See id.* The opt-out built into Section 5 recognizes that some voters, including college students and military personnel, may maintain a permanent residence different from where they currently live. H.B. 991's mandate that all address changes made at the DHSMV apply to voter registration directly conflicts with the flexibility granted to voters pursuant to Section 5 and is therefore preempted by the NVRA.

**<u>NVRA Section 6</u>: The State Must Accept and Use the Federal Form.**

H.B. 991 changes the processing and acceptance of voter registrations to subject every Florida voter—currently registered or prospective—to a citizenship verification regime tied to DHSMV records. Section 4 of H.B. 991 mandates that county supervisors check all voter registration applications, initial registrations, and changes in name, address, or party identification against DHSMV records. Laws of Fla. ch. 2026-26, § 4, at 7 (amending Fla. Stat. § 97.053(6)(a)). If DHSMV records indicate the applicant is not a U.S. citizen or has not provided acceptable DPOC, as defined by the statute, "the applicant must be notified and must provide . . . a document acceptable as evidence of United States citizenship." *Id.* H.B. 991 also gives county supervisors an obligation to "verify the voter's legal status as a United States citizen using available state and federal governmental sources" for certain voter registration applications where DHSMV records indicate the applicant is not a U.S. citizen or has not previously submitted DPOC. Laws of Fla. ch. 2026-26, § 4, at 8 (creating Fla. Stat. § 97.053(6)(b)). If a registrant's citizenship is not confirmed through these database verifications, they will not be permitted to vote a ballot that will be counted until they provide acceptable DPOC. *See id.* at 7–8. They are given a provisional ballot, which is only counted if they "present[] a document acceptable as evidence of United States citizenship." *Id.* § 97.053(6)(a).

4

These provisions apply to all voter registration applications. Section 4 of H.B. 991 states in the relevant parts that "*[a] voter registration application . . . may be accepted as valid only . . . if,*" when "the records of the Department of Highway Safety and Motor Vehicles indicate that the applicant is not a United States citizen," the individual "provide[s] a document acceptable as evidence of United States citizenship." Laws of Fla. ch. 2026-26, § 4, at 7 (amending Fla. Stat. § 97.053(6)(a)) These provisions violate Section 6 of the NVRA because they do not provide voters with the ability to register to vote or update their existing registration using the Federal Form without complying with the citizenship verification regime created by H.B. 991, which will require many voters to provide additional documents to prove their citizenship status. H.B. 991 employs the same citizenship verification regime for every Florida voter without making any exception for use of the Federal Form, which requires only attestation of citizenship. H.B. 991 does make any reference to the Federal Form.

**NVRA Section 6: The State Must Allow Voter Registration Organizations to Conduct Effective Voter Registration Drives**

In failing to allow for the use of the Federal Form, H.B. 991 also violates third parties' legally protected interest in conducting voter registration drives using the Federal Form. The NVRA requires the State to make the Federal Form "available for distribution through governmental and private entities, *with particular emphasis on making them available for organized voter registration programs*." 52 U.S.C. § 20505(b) (emphasis added); *see also id.* §§ 20507(a)(1)(D) (stating that the states "shall . . . ensure" that voters delivering timely, valid forms are registered); 20505 (a)(1) (states "shall accept" the Federal Forms).

Florida has a long history of unnecessarily burdening the efforts of third parties trying to conduct voter registration drivers. *See, e.g.*, Fla. Stat. §§ 97.021(40); 97.0575, Fla. Admin. Code Ann. r.1S-2.042; *see also* Ashley Lopez & Aaron Mendelson, *Groups That Register Voters Are Feeling Besieged by New State Laws*, NPR (May 16, 2024), https://www.npr.org/2024/05/16/1251289736/voter-registration-drive-state-restrictions [https://perma.cc/A8FS-UMYS]. But H.B. 991 will impose an additional burden on the ability of third parties to conduct voter registration drives. Without the ability to use the Federal Form to register voters, organizations in Florida will be required, under H.B. 991's citizenship verification scheme, to take numerous additional steps to ensure that the voter registrations applicants whom they assist will actually make it onto the voter rolls. This will include burdensome steps such as making photocopies in the field of highly confidential documents, like birth certificates and passports. In many cases, it will not be possible for third-party groups to undertake these very burdensome steps. For some organizations, the burdens imposed will be such that they cannot conduct voter registration drives as all. Imposing such an undue barrier to conducting voter registration drives violates the rights of third-party voter registration organizations protected by the NVRA.

**NVRA Section 7: The State Must Use the Equivalent of the Federal Form at Voter Registration Agencies**

Registering to vote using the Federal Form does not require any of the elements of the citizenship verification regime mandated by Section 4 of H.B. 991. Section 6 of the NVRA allows states to create their own mail-in forms for federal elections as long as their form "meets all of the

5

criteria" for the Federal Form laid out in Section 9 of the NVRA. 52 U.S.C. §§ 20505(a), 20508(b)(1). But per the clear terms laid out in the statute, Section 7 of the NVRA does not afford states the same discretion over the forms used by public assistance agencies and other voter registration agencies. Instead, Section 7 requires the registration form used by a public assistance agency to be the "equivalent" of the Federal Form. *Id.* § 20506(a)(6)(A)(ii). Linking the registration form required for public assistance agencies clearly to the requirements of Section 9 is consistent with Congress's intent with Section 7 that public assistance agencies provide voter registration services specifically targeting persons with disabilities and low-income individuals. H.R. Rep. No. 103-66, at 19 (1993) (Conf. Rep.). The criteria required by Section 9 for the Federal Form are limited in that the Form can only require such information "as is necessary to enable the appropriate State election official to assess the eligibility of the applicant." 52 U.S.C. §§ 20505(a), 20508(b). Requiring public assistance agencies to use an "equivalent" to the Federal Form ensures that these individuals are receiving the "simple means of registering to vote in federal elections." *See Inter Tribal Council of Ariz., Inc.*, 570 U.S. at 12 (noting "the Federal Form provides a backstop: No matter what procedural hurdles a State's own form imposes, the Federal Form guarantees that a simple means of registering to vote in federal elections will be available").

It is a violation of Section 7 of the NVRA for public assistance agencies in Florida to impose DPOC requirements on their clients during voter registration transactions. H.B. 991 requires that all potential voters registering to vote or updating their existing registration satisfy the new citizenship verification regime, and this will require many individuals to submit acceptable DPOC with their applications for voter registration. It, therefore, imposes a procedural hurdle beyond what is required to register using the Federal Form. As a result, the process of registering to vote in Florida will no longer be the "equivalent" of what is required under Section 9 of the NVRA. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 720 (2025) (holding that the DPOC requirement imposed on state voter registration forms in Arizona "renders the state form not 'equivalent' to the federal form for applicants without DPOC"). As the court in *Mi Familia Vota* determined, a mandate to provide DPOC was an "unnecessary additional requirement" and therefore violated Section 7. *See id*. The NVRA preempts any attempt by states to impose additional requirements to prove citizenship or any other voter qualification above and beyond those provided by the Federal Form. *See Inter Tribal Council of Arizona*, 570 U.S. at 18.

**<u>NVRA Section 8</u>: The State Must Conduct List Maintenance in a Uniform and Non-Discriminatory Manner and Must Cease Systematic List Maintenance 90 Days Before a Federal Election.**

H.B. 991 imposes a continuing obligation on election officials to conduct retroactive checks of the citizenship status of registered Florida voters, subjecting voters to possible removal from the rolls if they do not comply with the citizenship verification regime, which will require some voters to provide DPOC. The law requires the Department of State to identify registered voters who are "potentially ineligible" based on their citizenship status by "comparing or receiving information from other governmental entities." Laws of Fla. ch. 2026-26, § 8, at 10 (amending Fla. Stat. § 98.075(6)). The Department must then make an "initial determination" as to whether the information "is credible and reliable." *Id*. If the Department determines that it is credible, it must notify the county supervisor

and send any supporting documentation regarding the potential ineligibility of the voter. *Id*. H.B. 991 then requires supervisors to initiate proceedings to remove individuals from the voter rolls if they have not previously provided DPOC or their citizenship cannot be confirmed in a cross-referenced database. *Id.* § 97.053(6)(b).

Under § 98.075, supervisors must notify the registered voter of their potential ineligibility by mail within seven days and notify the applicant that they must respond within thirty days. Laws of Fla. ch. 2026-26, § 8, at 11 (codified at Fla. Stat. § 98.075(7)(a)(1)). If the applicant fails to provide DPOC, the supervisor must make a final determination of the voter's eligibility within seven days after the expiration of the voter's time to respond and must remove the voter from the statewide system. *Id.*, at 12 (codified at § 98.075(7)(a)(3)).

Section 8(a) of the NVRA only allows a voter to be removed from the registration rolls at the voter's request, by reason of criminal conviction or mental incapacity, by the voter's death, or by a change of the voter's residence. 52 U.S.C. § 20507(a)(3)–(4). Therefore, any removals because a voter has not provided DPOC or their citizenship cannot be confirmed in a cross-referenced database would violate Section 8 of the NVRA.[2]

Additionally, this mandate violates the NRVA requirement in Section 8(b) that any list maintenance efforts be uniform and non-discriminatory. The removal of currently registered voters who have not complied with the citizenship verification scheme created by H.B. 991 violates the NVRA's uniformity requirements because it treats voters differently and places additional burdens on some, but not all, voters. By no fault of their own, if a voter's citizenship cannot be confirmed through potentially stale records from the DHSMV or one of the flawed federal databases, they will have to provide separate, additional citizenship documents to stay registered to vote even though they were already determined to be a U.S. citizen and took the same oath as all registered voters. This process from H.B. 991 will single out some voters who have not previously provided DPOC and treat them differently in denying them the right to vote with a regular ballot. *See* 52 U.S.C. § 20507 (b)(1), *see, e.g.*, *Project Vote*, 455 F. Supp. 2d at 703.

These removals also violate the nondiscrimination principle in Section 8(b) of the NVRA, 52 U.S.C. § 20507 (b)(1), because the process creating them targets naturalized citizens Puerto Ricans, married women, older individuals, persons with disabilities, and communities of color who do not have DPOC readily available and subjects them to data-matching against notoriously unreliable databases which contain outdated, stale data and are not as complete for some categories of U.S. citizens. *See* Comm. on H. Admin., Subcomm. on Elections, Rep. on Voting in Am.: Ensuring Free

---

[2] Fla. Stat. § 98.075 (7)(a) (3) is clear that voters who do not respond within thirty days to the notice of their potential ineligibility must be removed from the statewide voter registration system within seven days after the thirty-day deadline has passed if the supervisor determines the voter is ineligible. But it appears that if a removed voter attempts to vote at an early voting site or Election Day polling place, they will be given a provisional ballot. Fla. Stat. § 101.048(1). This provisional ballot will only be counted if the voter presents evidence to their county supervisors that they are eligible to vote, such as the required DPOC, within two days of the election. *See id.* However, the availability of a provisional ballot does not remedy the harm caused by the NVRA violation. *See U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 388 (6th Cir. 2008) (holding when addressing voter purges prohibited by the NVRA that "[g]iven that not all provisional ballots will necessarily be counted, the availability of provisional ballots may not protect those wrongly purged").

and Fair Access to the Ballot 53–55 (July 2021), https://www.govinfo.gov/content/pkg/GOVPUB-Y4_H81_3-PURL-gpo161143/pdf/GOVPUB-Y4_H81_3-PURL-gpo161143.pdf; *Project Vote*, 455 F. Supp. 2d at 703; *United States v. Florida*, 870 F. Supp. 2d 1346, 1347–48 (N.D. Fla. 2012) (listing "major flaws" with the compiling of a list to identify voters for possible removal from the statewide voter registration system based on data from Florida's DHSMV).[3] As such, these removals constitute violations of the NVRA.

H.B. 991 also does not set forth processes or standards to ensure that an accurate match is made officials conduct required matches with governmental databases. Instead, officials are left to their own subjective, arbitrary, and non-uniform opinions on whether a particular voter registrant has accurately matched with information in outdated government databases. This, too, violates Section 8(b) of the NVRA's requirement that list maintenance efforts be uniform and non-discriminatory.

Lastly, H.B. 991 violates Section 8(c) of the NVRA because it requires systematic list maintenance of the voter rolls within ninety days of a federal election, violating the ninety-day quiet period on any systematic list maintenance activity established by the NVRA. 52 U.S.C. § 20507(c)(2); *see also Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1345 (11th Cir. 2014). H.B. 991 imposes an ongoing obligation on election officials to conduct retroactive checks of the citizenship status of registered Florida voters and related removals. There is no exception in H.B. 991's text relaxing or changing H.B. 991's list maintenance-related obligations during the ninety days before a federal election. In fact, H.B. 991 amends Fla. Stat. § 98.093(8) to require the DHSMV to furnish the Department of State with new weekly reports of citizenship information from its customers, Laws of Fla. ch. 2026-26, § 9, at 14 (codified at Fla. Stat. § 98.093(8)(c)), suggesting that this list maintenance work will occur consistently throughout the year. As a result, any registered voter flagged under H.B. 991's citizenship verification scheme—who previously could cast a regular ballot—will now have their registration canceled, including within ninety days of a federal election. In practice, conducting this list maintenance within ninety days of a federal election poses significant risks to eligible Floridians who may be erroneously flagged.

In analyzing Section 8(c) of the NVRA, courts have recognized that a systematic removal program involves "cancelling batches of registrations based on a set procedure such as 'us[ing] a mass computerized data-matching process to compare the voter rolls with other state and federal databases . . . .'" *Mi Familia Vota*, 129 F.4th 691, 716 (9th Cir. 2025) (quoting *Arcia*, 772 F.3d, at 1344). The Eleventh Circuit has specifically held that using the federal SAVE system for data matching with voter rolls, as contemplated under H.B. 991, is systematic list maintenance under the

---

[3] *See also* Will Doran, *NC Election Officials to Take New Steps to Investigate Non-Citizen Voting*, WRAL News (Nov. 25, 2025), https://www.wral.com/news/state/nc-election-officials-investigate-non-citizen-voting-nov-2025/ [https://perma.cc/9L6H-AQL2] (North Carolina Board of Elections staffer Adam Steele noting that it was possible that "'there may be multiple people with the same name, date of birth, and last four of their social [security number],'" and he said he therefore was unsure "what to expect once the database matches are in operation."); Fair Elections Ctr., *Eligible Voters at Risk: Examining Changes to USCIS's SAVE System* 4 (July 2025), https://fairelectionscenter.org/wp-content/uploads/2025/07/Examining-Changes-toUSCISs-SAVE-System.pdf [https://perma.cc/9R2V-G9Z7] (nothing that SSA itself has stated that its citizenship records are merely "a snapshot" and "do not provide definitive information); Jen Fifield & Zach Despart, *"Not Ready for Prime Time." A Federal Tool to Check Voter Citizenship Keeps Making Mistakes*, ProPublica (Feb. 13, 2026), https://www.propublica.org/article/save-voter-citizenship-tool-mistakes-confusion [https://perma.cc/27G4-FFQ2].

NVRA and therefore is prohibited during the ninety-day quiet period before a federal election. *Arcia*, 772 F.3d at 1344 (noting that "[c]ertainly, it is telling that the database that Secretary Detzner used before the general election—SAVE—stands for *Systematic* Alien Verification for Entitlements.").

**NVRA Section 8: The State's Notice of Removal Must Comply with the NVRA's Notice Requirements**

The notice and removal provisions Florida officials are required to follow under state law as part of their list maintenance practices do not comply with the requirements of the NVRA. Many of Florida's notice provisions, outlined in Fla. Stat. § 98.075, already constituted ongoing violations of the NVRA. These violations will be more pronounced in the future given that H.B. 991 will greatly expand the number of individuals who will be impacted by the list maintenance efforts of Florida election officials.

Under § 98.075, county supervisors must notify a registered voter of their potential ineligibility by mail within seven days and require them to respond within thirty days. Laws of Fla. ch. 2026-26, § 8, at 11 (codified at Fla. Stat. § 98.075(7)(a)(1)). If the voter fails to provide DPOC, the supervisor must make a final determination of their eligibility within seven days after the expiration of the voter's time to respond and must remove the voter from the statewide system within seven days. *Id.*, at 12 (codified at § 98.075(7)(a)(3)). Per the provisions of Subsection 7(a)(1) of § 98.075, the notice that county supervisors send to votes must include:

> h. The following statement: "If you attempt to vote at an early voting site or your normal election day polling place, you will be required to vote a provisional ballot. If you vote by mail, your ballot will be treated as a provisional ballot. In either case, your ballot may not be counted until a final determination of eligibility is made. If you wish for your ballot to be counted, you must contact the supervisor of elections office within 2 days after the election and present evidence that you are eligible to vote."

Fla. Stat. § 98.075(7)(a)(1).

However, the notice required under Section 8 of the NVRA must include a postage prepaid and pre-addressed return card and must be sent by forwardable mail. 52 U.S.C. § 20507(d)(2). While Subsection 7(a) of § 98.075 does require that a notice be sent to voters, it does not require that this notice be sent by forwardable mail or that the return form be postage prepaid. In fact, Florida law only requires that if the notice is returned as undeliverable, notice shall either be published in the newspaper or on the county's website, not sent by forwardable mail. Fla. Stat. § 98.075(7)(a)(2). Florida's current notice provisions, therefore, violate the requirements of the NVRA.

**NVRA Section 8: Information from Jury Coordinators**

H.B. 991 added additional language to Section 98.093 requiring that election officials use information received from a jury coordinator that "a person was disqualified or potentially disqualified as a prospective juror from jury service due to . . . being a nonresident of this state, or being a nonresident of the county." Laws of Fla. ch. 2026-26, § 9, at 14 (codified as Fla. Stat.

§ 98.093(9)). H.B. 991 also amended Fla. Stat. § 98.093 so that any information from a jury coordinator that a person was disqualified or potentially disqualified from prospective jury service because of an issue with their residence, such as a change in residence, be used as part of the list maintenance process laid out in Fla. Stat. § 98.075. *Id.* These provisions mean these individuals will receive the notice discussed above and will be removed from the registration rolls within seven days if they fail to respond to the notice within thirty days. As explained above, the NVRA is clear that if an election official receives information indicating a voter's residence has changed, the voter can be removed *only* if they fail both to respond to the notice and to vote in "2 or more consecutive general elections for Federal office." 52 U.S.C. § 20507(b)(2), (d). The only exception to this waiting period for removal is when a voter confirms their change of residence in writing for purposes related to voting. But information provided by a jury coordinator is not directly from the voter and is not for the purpose of voting. Therefore, information from the juror selection process does not fall into this exception and does not allow for immediate cancellation under Section 8(d) of the NVRA. It is a violation of the NVRA for election officials in Florida to use any information related to residency that they receive from a jury coordinator to remove voters from the registration rolls under Fla. Stat. § 98.075(7).

*     *     *

As Secretary of State of Florida, you are the State's Chief Elections Officer, s*ee* Fla. Stat. § 97.012, and as such are responsible for ensuring Florida's compliance with the NVRA. *See* 52 U.S.C. § 20509. This letter constitutes notice pursuant to 52 U.S.C. § 20510(b) that your required enforcement of the H.B. 991 provisions, as well as the other provisions of Florida law, detailed in this notice letter, place you in violation of 52 U.S.C. §§ 20504, 20505, 20506, and 20507. As you know, the Florida primary elections for federal offices will occur on August 18, 2026, which is less than 120 days away. If the violations identified above are not addressed within twenty days, the undersigned may seek declaratory or injunctive relief to secure remedies for the violations. *See* 52 U.S.C.A. § 20510(b).

We are hopeful that you will be willing to address these issues, and we are willing to meet with you at your earliest convenience to discuss an expeditious resolution. We are, however, prepared to proceed with litigation if these violations are not promptly remedied.

Sincerely,

/s/ Sarah Brannon
Sarah Brannon
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
(202) 457-0800
sbrannon@aclu.org

Sophia Lin Lakin
Jonathan Topaz
William Hughes
Nina Nayiri McKay

Caroline McNamara
Nicholas L.V. Warren
Daniel B. Tilley
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, Florida 33134
(786) 363-2738
cmcnamara@aclufl.org
nwarren@aclufl.org
dtilley@aclufl.org

American Civil Liberties
Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
jtopaz@aclu.org
whughes@aclu.org
nmckay@aclu.org

Cesar Z. Ruiz
Delmarie Alicea
Jose Perez
Latino Justice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
cruiz@latinojustice.org
dalicea@latinojustice.org
jperez@latinojustice.org

John Powers
Hani Mirza
Sonali Seth
Nikole Miller
Peter Ketcham-Colwill
Advancement Project
1220 L Street NW, Suite 850
Washington, DC 20005
(202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org
sseth@advancementproject.org
nmiller@advancementproject.org
pketchamcolwill@advancementproject.org

*CC via e-mail*: Mohammad O. Jazil, mjazil@holtzmanvogel.com
Ashley Davis, ashley.davis@dos.myflorida.com
Bilal A. Faruqui, Bilal.Faruqui@dos.fl.gov
Martin Wolk, mwolk@holtzmanvogel.com

*See* Appendix A also send via email

11

## APPENDIX A

## County Supervisor of Election Recipients of this NVRA Notice Letter

| | |
|---|---|
| The Honorable Kim A. Barton<br>Alachua County Supervisor of Elections<br>515 North Main St., Suite 300<br>Josiah T. Walls Building<br>Gainesville, Florida 32601<br>kbarton@alachuacounty.us | The Honorable Christopher Milton<br>Baker County Supervisor of Elections<br>32 North 5th St, Suite A<br>P.O. Box 505<br>Macclenny, Florida 32063<br>vote@bakercountyfl.org |
| The Honorable Nina Ward<br>Bay County Supervisor of Elections<br>830 West 11th St.<br>Panama City, Florida 32401<br>elections@bayvotesfl.gov | The Honorable Amanda Seyfang<br>Bradford County Supervisor of Elections<br>945 North Temple Ave, Suite C<br>P.O. Box 58<br>Starke, Florida 32091<br>bradsoe@votebradfordfl.gov |
| The Honorable Tim Bobanic<br>Brevard County Supervisor of Elections<br>2725 Judge Fran Jamieson Way<br>Building C, Suite 105<br>Viera, Florida 32940<br>SOE@VoteBrevard.gov | The Honorable Joe Scott<br>Broward County Supervisor of Elections<br>4650 Northwest 21st Avenue<br>Fort Lauderdale, Florida 33309<br>elections@browardvotes.gov |
| The Honorable Sharon Chason<br>Calhoun County Supervisor of Elections<br>20859 Central Ave. East, Room 117<br>Blountstown, Florida 32424<br>soe@votecalhounfl.gov | The Honorable Leah Valenti<br>Charlotte County Supervisor of Elections<br>226 Taylor St.<br>Punta Gorda, Florida 33950<br>SOE@SOECharlotteCountyFl.gov |
| The Honorable Maureen Baird<br>Citrus County Supervisor of Elections<br>1500 North Meadowcrest Boulevard<br>Crystal River, Florida 34429<br>P.O. Box 1870<br>Lecanto, FL  34460-1870<br>vote@votecitrus.gov | The Honorable Chris H. Chambless<br>Clay County Supervisor of Elections<br>500 North Orange Ave.<br>Green Cove Springs, FL 32043<br>mail@ClayElections.gov |
| The Honorable Melissa Blazier<br>Collier County Supervisor of Elections<br>Rev Dr Martin Luther King Jr Building<br>3750 Enterprise Ave<br>Naples, Florida 34104<br>Supervisor.Elections@CollierVotes.gov | The Honorable Tomi Stinson Brown<br>Columbia County Supervisor of Elections<br>971 West Duval St.<br>Suite 102<br>Lake City, Florida 32055-3728<br>vote@votecolumbiafl.gov |
| The Honorable Debbie Wertz<br>DeSoto County Supervisor of Elections<br>201 East Oak Street, Suite 104<br>Arcadia, Florida 34266<br>info@votedesotofl.gov | The Honorable Darbi Chaires<br>Dixie County Supervisor of Elections<br>229 Northeast 351 Highway<br>Cross City, Florida 32628<br>elections@dixievotes.com |

| | |
|---|---|
| The Honorable Jerry Holland<br>Duval County Supervisor of Elections<br>105 E. Monroe Street<br>Jacksonville, Florida 32202<br>duval_elections@coj.net | The Honorable Robert Bender<br>Escambia County Supervisor of Elections<br>213 Palafox Pl, 2nd Floor<br>Pensacola, Florida 32502<br>PO Box 12601<br>Pensacola, Florida 32591<br>soe@escambiavotes.gov |
| The Honorable Kaitlyn Lenhart<br>Flagler County Supervisor of Elections<br>Government Services Building<br>1769 E. Moody Boulevard, Building 2, Suite 101<br>P.O. Box 901<br>Bunnell, Florida 32110<br>info@flaglerelections.gov | The Honorable Heather Riley<br>Franklin County Supervisor of Elections<br>34 Forbes St. Suite 1<br>Apalachicola, Florida 32320<br>heather@votefranklinfl.gov |
| The Honorable Kenya Williams<br>Gadsden County Supervisor of Elections<br>16 South Madison Street<br>Quincy, Florida 32351<br>info@gadsdensoefl.gov | The Honorable Lisa Darus<br>Gilchrist County Supervisor of Elections<br>112 S Main Street, RM 137<br>Trenton, Florida 32693<br>elections@gilchrist.fl.us |
| The Honorable Aletris Farnam<br>Glades County Supervisor of Elections<br>998 US Highway 27 South<br>P.O. Box 668<br>Moore Haven, Florida 33471<br>vote@voteglades.gov | The Honorable Rhonda Pierce<br>Gulf County Supervisor of Elections<br>401 Long Avenue<br>Port St Joe, Florida 32456<br>gulfsoe@votegulf.gov |
| The Honorable Laura Hutto<br>Hamilton County Supervisor of Elections<br>1153 US Highway 41 Northwest, Suite 1<br>Jasper, Florida 32052<br>elect@hamiltonvotesfl.gov | The Honorable Diane Smith<br>Hardee County Supervisor of Elections<br>131 K. D. Revell Road<br>Wauchula, Florida 33873<br>info@hardeeflvotes.gov |
| The Honorable Sherry Taylor<br>Hendry County Supervisor of Elections<br>East Hickpochee Ave<br>LaBelle, Florida<br>1100 South Olympia St<br>Clewiston, Florida<br>supervisor@hendryelections.gov | The Honorable Denise LaVancher<br>Hernando County Supervisor of Elections<br>16264 Spring Hill Drive<br>Brooksville, Florida 34604<br>elections@hernandovotes.gov |
| The Honorable Karen Healy<br>Highlands County Supervisor of Elections<br>580 South Commerce Avenue, Room A201<br>Sebring, Florida 33870<br>vote@votehighlands.gov | The Honorable Craig Latimer<br>Hillsborough County Supervisor of Elections<br>Robert L. Gilder Elections Service Center<br>2514 North Falkenburg Road<br>Tampa, Florida 33619<br>voter@votehillsborough.gov |

| | |
|---|---|
| The Honorable H. Russell Williams<br>Holmes County Supervisor of Elections<br>201 North Oklahoma Street,<br>Suite 102<br>Bonifay, Florida 32425<br>rusty@holmeselectionsfl.gov | The Honorable Leslie Rossway Swan<br>Indian River County Supervisor of Elections<br>4375 43rd Avenue<br>Vero Beach, Florida 32967<br>info@voteindianriver.gov |
| The Honorable Carol A. Dunaway<br>Jackson County Supervisor of Elections<br>2851 Jefferson Street<br>Marianna, Florida 32448<br>email@votejacksonfl.gov | The Honorable Michelle Milligan<br>Jefferson County Supervisor of Elections<br>1175 West Washington St.,<br>Monticello, Florida 32344<br>soe@jeffersonvotesfl.gov |
| The Honorable Travis Hart<br>Lafayette County Supervisor of Elections<br>120 West Main Street, Room 210<br>P.O. Box 76<br>Mayo, Florida 32066<br>travis@lafayettevotes.com | The Honorable Alan Hays<br>Lake County Supervisor of Elections<br>1898 E Burleigh Boulevard<br>P.O. Box 457<br>Tavares, Florida 32778<br>hays@lakevotes.gov |
| The Honorable Bernie Feliciano<br>Lee County Supervisor of Elections, Chief<br>Deputy<br>Melvin Morgan Constitutional Complex<br>2480 Thompson St, 3rd Floor<br>Fort Myers, Florida 33901<br>P.O. Box 2545<br>Fort Myers, Florida 33902-2545<br>elections@lee.vote | The Honorable Mark Earley<br>Leon County Supervisor of Elections<br>2990-1 Apalachee Parkway<br>Tallahassee Florida 32301<br>P.O. Box 7357<br>Tallahassee Florida 32314-7357<br>Vote@leonvotes.gov |
| The Honorable Tammy Jones<br>Levy County Supervisor of Elections<br>421 South Court Street<br>Bronson, Florida 32621<br>elections@votelevy.gov | The Honorable Grant Conyers<br>Liberty County Supervisor of Elections<br>10818 Northwest State Road 20<br>Bristol, Florida 32321-0597<br>vote@libertycountyflsoe.gov |
| The Honorable Heath Driggers<br>Madison County Supervisor of Elections<br>239 Southwest Pinckney St,<br>Madison, Florida 32340<br>hdriggers@votemadison.com | The Honorable Scott Farrington<br>Manatee County Supervisor of Elections<br>600 301 Boulevard West, Suite 108<br>Bradenton, Florida 34205<br>P.O. Box 1000<br>Bradenton, Florida 34206-1000<br>info@votemanatee.gov |
| The Honorable Wesley Wilcox<br>Marion County Supervisor of Elections<br>981 Northeast 16th Street<br>Ocala, Florida 34470<br>P.O. Box 289<br>Ocala, Florida 34478-0289<br>WWilcox@VoteMarion.Gov | The Honorable Vicki Davis<br>Martin County Supervisor of Elections<br>135 Southeast Martin Luther King, Jr.<br>Boulevard<br>Stuart, Florida 34994<br>P.O. Box 1257<br>Stuart, Florida 34995<br>elections@MartinVotes.gov |

| | |
|---|---|
| The Honorable Alina Garcia<br>Miami-Dade County Supervisor of Elections<br>2700 Northwest 87 Avenue<br>Miami, Florida 33172<br>soedade@miamidade.gov | The Honorable Sherri Hodies<br>Monroe County Supervisor of Elections<br>5200 College Rd<br>Key West, Florida 33040<br>info@votemonroeflkeys.gov |
| The Honorable Janet H. Adkins<br>Nassau County Supervisor of Elections<br>James S. Page Governmental Complex<br>96135 Nassau Place, Suite 3<br>Yulee, Florida 32097<br>info@votenassaufl.gov | The Honorable Paul A. Lux<br>Okaloosa County Supervisor of Elections<br>302 North Wilson St, Ste 102<br>Crestview, Florida 32536-3474<br>plux@myokaloosa.com |
| The Honorable David May<br>Okeechobee County Supervisor of Elections<br>307 Northwest 5th Avenue<br>Okeechobee, Florida 34972<br>elections@voteokeechobee.gov | The Honorable Karen Castor Dentel<br>Orange County Supervisor of Elections<br>119 West Kaley Street<br>Orlando, Florida 32806<br>P.O. BOX 562001<br>Orlando, FL 32856-2001<br>voter@ocfelections.gov |
| The Honorable Mary Jane Arrington<br>Osceola County Supervisor of Elections<br>2509 East Irlo Bronson Memorial Highway,<br>Kissimmee, Florida 34744<br>soe@voteosceola.gov | The Honorable Wendy Link<br>Palm Beach County Supervisor of Elections<br>4301 Cherry Road<br>West Palm Beach, Florida 33409<br>P.O. Box 22309<br>West Palm Beach, Florida 33416<br>info@votepalmbeach.gov |
| The Honorable Brian Corley<br>Pasco County Supervisor of Elections<br>P.O. Box 300<br>Dade City, Florida 33526<br>webcomment@pascovotes.gov | The Honorable Julie Marcus<br>Pinellas County Supervisor of Elections<br>Elections Service Center<br>13001 Starkey Road<br>Largo, Florida 33773<br>Election@VotePinellas.gov |
| The Honorable Melony Bell<br>Polk County Supervisor of Elections<br>250 South Broadway Ave.<br>Bartow, Florida 33830<br>70 Florida Citrus Blvd.,<br>Winter Haven, Florida 33880<br>info@polkelections.gov | The Honorable Charles Overturf<br>Putnam County Supervisor of Elections<br>2509 Crill Ave, Suite 900<br>Palatka, Florida 32177<br>electionsoffice@voteputnamflorida.gov |
| The Honorable Tappie Villane<br>Santa Rosa County Supervisor of Elections<br>6495 Caroline Street<br>Suite F<br>Milton, Florida 32570<br>villane@santarosa.fl.gov | The Honorable Ron Turner<br>Sarasota County Supervisor of Elections<br>Terrace Building<br>2001 Adams Lane<br>Sarasota, Florida 34237<br>rturner@sarasotavotes.gov |

| | |
|---|---|
| The Honorable Amy Pennock<br>Seminole County Supervisor of Elections<br>1500 East Airport Blvd.<br>Sanford, Florida 32773<br>P.O. Box 1479<br>Sanford, Florida 32772-1479<br>pennock@voteseminole.gov | The Honorable Vicky Oakes<br>St. Johns County Supervisor of Elections<br>4455 Avenue A, Suite 101<br>St. Augustine, Florida 32095<br>elections@votesjc.gov |
| The Honorable Gertrude Walker<br>St. Lucie County Supervisor of Elections<br>4132 Okeechobee Rd<br>Fort Pierce, Florida 34947<br>elections@stlucievotes.gov | The Honorable William Keen<br>Sumter County Supervisor of Elections<br>7375 Powell Rd<br>Suite 125<br>Wildwood, Florida 34785<br>electioninfo@sumtercountyfl.gov |
| The Honorable Jennifer Kinsey<br>Suwannee County Supervisor of Elections<br>302 Pine Ave., Southwest<br>Live Oak, Florida 32064<br>suwanneesoe@suwanneevotes.com | The Honorable Dana Southerland<br>Taylor County Supervisor of Elections<br>433 U.S. 19 North<br>Perry, Florida 32347<br>vote@taylorelections.com |
| The Honorable Deborah Osborne<br>Union County Supervisor of Elections<br>175 West Main St.<br>Lake Butler, Florida 32054<br>debbie.osborne@unionflvotes.com | The Honorable Lisa Lewis<br>Volusia County Supervisor of Elections<br>1588 North Woodland Blvd.<br>DeLand, Florida 32720<br>elections@volusia.org |
| The Honorable Joseph R. Morgan<br>Wakulla County Supervisor of Elections<br>3115 B Crawfordville Highway<br>Crawfordville, Florida 32327<br>wakullacountysoe@wakullavotes.gov | The Honorable Ryan Messer<br>Walton County Supervisor of Elections<br>571 US Hwy 90 East, Suite 102<br>DeFuniak Springs, Florida 32433<br>info@votewalton.gov |
| The Honorable Deidra Malloy Pettis<br>Washington County Supervisor of Elections<br>1424 Jackson Avenue, Suite C<br>Chipley, Florida 32428<br>votewashingtonfl@wcsoe.gov | |