**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNIDOSUS, et al., | |
| *Plaintiffs*, | |
| v. | |
| CORD BYRD, in his official capacity as Secretary of State of Florida, et al., | No. 1:26-cv-22257-JB |
| *Defendants*, | |
| REPUBLICAN NATIONAL COMMITTEE and RE-PUBLICAN PARTY OF FLORIDA, | |
| *Proposed Intervenor-Defendants*. | |

## MOTION TO INTERVENE AND INCORPORATED MEMORANDUM

The Republican National Committee and the Republican Party of Florida ("Movants") move to intervene in these consolidated cases to defend their interests in Florida's documentary proof of citizenship requirement. Movants have successfully intervened in a plethora of election lawsuits in Florida,[1] the Eleventh Circuit,[2] and courts nationwide.[3] Indeed, "in 'virtually all' of the recent

---

[1] *E.g.*, *Vote.Org v. Byrd*, Doc. 85, No. 4:23-cv-111 (N.D. Fla. 2023); *Harriet Tubman Freedom Fighters Corp. v. Lee*, Doc. 34, No. 4:21-cv-242 (N.D. Fla. 2021); *Fla. Rising Together v. Lee*, Doc. 52, No. 4:21-cv-201 (N.D. Fla. 2021); *League of Women Voters of Fla. v. Lee*, Doc. 72, No. 4:21-cv-186 (N.D. Fla. 2021); *Fla. State Conf. of the NAACP v. Lee*, Doc. 43, No. 4:21-cv-187 (N.D. Fla. 2021); *Nielsen v. De-Santis*, 4:20-cv-236, 2020 WL 6589656 (N.D. Fla. 2020).

[2] *E.g.*, *IATSE v. Lindsey*, Doc. 84, No. 1:23-cv-4929 (N.D. Ga. 2024); *New Ga. Project v. Raffensperger*, Doc. 39, No. 1:21-cv-1333 (N.D. Ga. 2021); *United States v. Georgia*, Minute Order, No. 1:21-cv-2575 (N.D. Ga. 2021); *Coal. for Good Governance v. Raffensperger*, Minute Order, No. 1:21-cv-2070 (N.D. Ga. 2021); *Concerned Black Clergy of Metro. Atlanta v. Raffensperger*, Minute Order, No. 1:21-cv-1728 (N.D. Ga. 2021); *Ga. State Conf. of NAACP v. Raffensperger*, Doc. 40, No. 1:21-cv-1259 (N.D. Ga. 2021); *Vote Am. v. Raffensperger*, Doc. 50, No. 1:21-cv-1390 (N.D. Ga. 2021).

[3] *E.g.*, *LUPE v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022); *DNC v. Hobbs*, Doc. 18, No. 2:22-cv-1369 (D. Ariz. 2022); *Mi Familia Vota v. Hobbs*, Doc. 53, No. 2:21-cv-1423 (D. Ariz. 2021); *Ga. State Conf. of NAACP v. Raffensperger*, Doc. 40, No. 1:21-cv-1259 (N.D. Ga. 2021); *Swenson v. Bostelmann*, Doc. 38, No. 3:20-cv-459 (W.D. Wis. 2020); *Edwards v. Vos*, Doc. 27, No. 3:20-cv-340 (W.D. Wis. 2020); *League of Women Voters of Minn. Ed. Fund v. Simon*, Doc. 52, No. 0:20-cv-1205 (D. Minn. 2020); *Priorities USA v. Nessel*, Doc. 60, No. 2:19-cv-13341 (E.D. Mich. 2020); *Thomas v. Andino*, Doc. 39, No. 3:20-cv-1552 (D.S.C. 2020); *League of Women Voters of Va. v. Va. State Bd. of Elections*, Doc. 57, No. 6:20-cv-24 (W.D. Va. 2020).

1

challenges to Florida's election rules, federal district courts have allowed political parties and committees to intervene." *Fla. Rising Together v. Byrd*, Doc. 81 at 3, No. 6:24-cv-1682 (M.D. Fla. Mar. 5, 2025). That's because political committees "are not marginally affected individuals; they are substantial organizations with experienced attorneys who might well bring perspective that others miss or choose not to provide." *Nielsen v. DeSantis*, No. 4:20-cv-236, 2020 WL 6589656, at *26-27 (N.D. Fla. May 28, 2020). In accord with that great weight of precedent—unanimous in the Eleventh Circuit—this Court should grant the motion to intervene.

The most "efficient" course is to grant permissive intervention under "Rule 24(b)." *Fla. Rising Together*, Doc. 81 at 3 (granting permissive intervention to RNC and RPOF). Then the Court need not evaluate intervention as of right under Rule 24(a). In any case, Movants satisfy Rule 24's requirements for intervention as of right. This motion is timely. Plaintiffs just filed their amended complaints, this litigation is still in its infancy, and no party will be prejudiced. This case's resolution will impact Movants' interests—and its members, candidates, voters, and resources—as Movants work to ensure that Republican candidates and voters can participate in fair and orderly elections, and no party will adequately represent those interests. But if Movants are denied intervention, their interests could be irreparably harmed by an order overriding Florida's voter registration rules, which could undermine the integrity of Florida's elections. And while Movants' defenses share common questions of law and fact with the existing parties' defenses, their interests are distinct and not adequately represented by the State Defendants.

In fact, the RNC is litigating the validity of Arizona's similar proof-of-citizenship requirement before the Supreme Court—a case in which the RNC was granted intervention as a defendant, just as it seeks to here. *Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) *cert. granted*, *RNC v. Mi Familia Vota*, No. 25-1017 (U.S. June 29, 2026).

2

**INTERESTS OF PROPOSED INTERVENORS**

The RNC is a political committee that manages the Republican Party's business at the national level, representing Republican voters and candidates nationwide, as defined by 52 U.S.C. §30101(14). The RNC supports Republican candidates for public office at all levels, coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The RNC's membership consists of the party chair and national committeeman and national committeewoman for each State and territory, including three representatives from Florida who are registered Florida voters.

The Republican Party of Florida is a Florida state political party committee recognized under state and federal law. *See* 11 C.F.R. 100.15; Fla. Stat. §103.091. RPOF is the statewide organization representing Republican candidates at the state and local level and the more than five million Republican voters throughout the State of Florida. RPOF supports the election of duly nominated Republican candidates through fundraising, voter registration, get-out-the-vote drives, and other campaign activities. RPOF is committed to a fair and open election process where every lawfully eligible person entitled to vote has the opportunity to cast a ballot and have that ballot counted properly. RPOF's membership includes a large state executive committee, all of whom are individuals and registered voters in Florida.

Movants engage in a variety of activities to register voters at the state and local levels, including in Florida. They identify likely voters, encourage them to register to vote as Republicans, and engages in get-out-the-vote drives to increase voter turnout. The RNC engages in these activities directly and assists state and local parties in Florida to do the same.

Also central to the RNC's mission are its programs to promote sound election administration and election integrity, which protect the rights of qualified voters and support the accuracy and public confidence in elections. Movants monitor all aspects of election administration and deploy staff and volunteers to observe election administration. As part of these programs, Movants devote significant

resources to identifying both qualified voters and unqualified voters who might dilute the votes of qualified voters. These efforts require Movants to rely on state voter registration lists. The RNC devotes millions of dollars each year to these activities. As part of its efforts to ensure election integrity, Movants litigate important election administration issues. These include the verification of voter qualifications and state efforts to remove ineligible non-citizens from voter registration lists.

## ARGUMENT

### I.   Movants have an unconditional right to intervene.

Movants are entitled to intervene as a matter of right under Rule 24(a). This Rule is "'construed liberally,'" *Adams Offshore, Ltd. v. Con-Dive, LLC*, 2009 WL 2971103, at *1 (S.D. Ala. Sept. 14, 2009), and "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors," *Fed. Sav. & Loan Ins. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). This approach enables efficient resolution of "all related disputes in a single action." *Id.* Under Rule 24(a)(2), this Court must grant intervention by right if four conditions are met: (1) the motion is timely; (2) movants have a legally protected interest in this action; (3) this action may impair or impede that interest; and (4) no existing party adequately represents movants' interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). All four are true here.

### A.   The motion is timely.

Timeliness is determined by four factors: (1) the length of time after Movants knew of their interests in the case; (2) any prejudice to the existing parties from undue delay; (3) prejudice to Movants from denying intervention; and (4) any unusual circumstances. *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002). The "convenience" of the parties is irrelevant. *Clark v. Putnam Cty.*, 168 F.3d 458, 462 (11th Cir. 1999). All four factors favor Movants.

The motion is timely. Plaintiffs have only just amended their complaints, effectively restarting this consolidated case at step one. And a motion to intervene may be timely even if submitted months

after the complaint. *Chiles*, 865 F.2d at 1213; *see also Snadon v. SEW-Eurodrive*, 2020 WL 13544217, at *1 (N.D. Ga. Nov. 4, 2020) (motion filed ten months after case removed to federal court was "not untimely"); *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed one year after answer not untimely). That the Court has not yet taken "significant action," *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259-60, and the case is "still at the answer stage," *New Ga. Project*, 2021 WL 2450647, at *2, confirms that the motion is timely.

Nor will Movants' intervention delay this litigation or prejudice anyone. Movants swiftly moved to intervene once this case was consolidated and the operative complaints filed. *See Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020). Rule 24(c), after all, requires the intervention motion to "be accompanied by a pleading that sets out the claim or defense for which intervention is sought."[4] The Court has not issued any substantive rulings that Movants could "seek to delay or reconsider." *Wal-Mart Stores v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). Movants also commit to complying with the scheduling order recently issued by the Court, *see* Doc. 88, and they will work to prevent duplicative briefing, and coordinate with the parties on discovery, *see Nielsen*, 2020 WL 6589656, at *1. The motion is timely.

### B.    Movants have protected interests in this case.

As the national and state committees of the Republican Party that represent members, candidates, and voters in every county in Florida, Movants have "'direct, substantial, legally protectible interest[s] in the proceeding.'" *Chiles*, 865 F.2d at 1213-14. "An unfair and inaccurate election plainly affects" Movants and their candidates "in a different way" than it does other individuals and organizations who are not political competitors. *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 78 (2026); *see also NRSC v. FEC*, No. 24-621, __ U.S. __, 2026 WL 1868932, at *7 (U.S. June 30, 2026) ("[A] political

---

[4] Attached as <u>Exhibit 1</u> is Movants' Proposed Answer to the Unidos Plaintiffs' First Amended Complaint and <u>Exhibit 2</u> is Movants' Proposed Answer to the Florida NAACP Plaintiffs' First Amended Complaint.

party's 'success or failure depends in large part on whether its candidates get elected.'"). As competitors in Florida elections, Movants have an "interest" in "a fair process and an accurate result" that is at risk of impairment based on the outcome of these proceedings. *Bost*, 607 U.S. at 77.

Unlike the parties in this case, Movants want Republican voters to vote, Republican candidates to compete in fair elections, and Republican resources to be spent wisely and not wasted on diversions. Such interests "are routinely found to constitute significant protectable interests" in election cases justifying intervention under Rule 24. *Issa v. Newsom*, 2020 WL 3074351, at *3 (E.D. Cal. 2020); *see, e.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586-87 (5th Cir. 2006); *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007); *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001). All these interests are at stake here.

Movants are not a "common competitors in the economic marketplace." *Bost*, 607 U.S. at 77. Rather, they represent Republican candidates who seek to serve the people. *Cf. NRSC*, 2026 WL 1868932, at *7 (discussing the "thoroughly intertwined relationship of parties and their candidates"). So "[w]in or lose," Movants "suffer when the process" of Florida's elections "departs from the law." *Bost*, 607 U.S. at 77. If Plaintiffs win, Movants will thus be "deprive[d]" of "a fair process" for elections in which its candidates will participate. *Id.* Movants' interests in "a fair process" are "in no sense common to all members of the public." *Id.* at 77-78 (cleaned up). Rather, their interest "differs in kind." *Id.* Because Movants "spend untold time and resources seeking" to help elect Republican candidates who can "claim the right to voice the will of the people," they have "an undeniably different—and more particularized—interest in knowing what that will is." *Id.* (cleaned up). Movants also have a significant interest in having a "chance to compete" in an electoral process that is structured according to Florida's election and voter-registration laws. *Id.* at 79. "The same is true of competitors in other contests. Each runner in a 100-meter dash, for example, would suffer if the race were unexpectedly extended to 105 meters. Whether a particular runner expects to finish strong or fall off the pace in the

final five meters, all would be deprived of the chance to compete for the prize that the rules define." *Id.* Movants' interest in winning elections runs parallel to their interests in get-out-the-vote and voter registration efforts.

Movants also have an interest in ensuring that Florida's voter registration process is not structured in such a way as to "undermine" a Republican "winner's political legitimacy." *Id.*; *City of Houston v Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012). When noncitizens illegally register to vote, it "erodes public confidence that the election results reflect the people's will. And when public confidence in the election results falters, public confidence in the elected representative follows. To the representative, that loss of legitimacy—or its diminution—is a concrete harm." *Bost,* 607 U.S. at 79; *Purcell v. Gonzalez,* 549 U.S. 1, 4 (2006) (per curiam). Movants are thus no mere bystanders when it comes to the registration of voters and election of candidates. They have "an obvious personal stake in how the result is determined and regarded. Departures from the preordained rules cause [them] particularized and concrete harm." *Id.*

### C.    The outcome of this case may impair or impede Movants' interests.

A court should look at the practical consequences of denying intervention to determine whether an intervenor's interests could be impaired. Fed. R. Civ. P. 24(a). Given their inherent and intense interest in elections, usually "[n]o one disputes" that political parties "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, at *2 (D. Colo. Sept. 15, 2014); *see also Bost*, 607 U.S. at 78-79. To prove potential impairment, Movants "need only show" that if they cannot intervene, "there is a possibility" that their "interest could be impaired or impeded." *La Union del Pueblo Entero*, 29 F.4th at 307. Movants clear that low bar. Plaintiff's request for a permanent injunction, if granted, would "change the entire election landscape for those participating" in the upcoming election. *Id.* It would "change what [Movants] must do to prepare for upcoming elections." *Id.* And Movants will be forced to expend "resources to educate their members on

the shifting situation in the lead-up to the 202[4] election." *Id.* Each of these potential practical impairments standing alone are enough to justify intervention. Movants will plainly "suffer if the Government were to lose this case, or to settle it against [their] interests." *Mausolf v. Babbitt*, 85 F.3d 1295, 1302-03 (8th Cir. 1996).

Movants interests in registering qualified voters, preventing the registration of unqualified voters, maintaining accurate voter registration rolls, and participating in fair and accurate elections are jeopardized by this lawsuit. Movants rely on Florida's voter roll management, and enjoining Florida's proof of citizenship requirements would impair that interest. Changes to election rules necessarily impact the allocation of party resources and campaign strategies. For the RNC, that includes both voter registration activities and its programs to ensure election integrity. *See, e.g., Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005) (When a party "need[s] to adjust their campaign strategy, they too suffer harm to their legally protected interests.").[5]

Granting Plaintiff's requested relief will result in more ineligible voters being added to and remaining on Florida's voter rolls, which impairs Movants' interest in accurate registration lists. Enjoining enforcement of the proof-of-citizenship requirements within spitting-distance of an impending election inhibits the State's obligation to "ensure that voter registration records in the State are accurate and are updated regularly," which includes a "reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. §21083(a)(4). Though Plaintiffs may disagree, "in resolving a motion to intervene," this Court "cannot assume" that Plaintiff "will ultimately prevail on the merits." *Pavek v. Simon*, 2020 WL 3960252, at *3 (D. Minn. July 12, 2020). At

---

[5] Some of Movants' authorities discuss Article III standing, not the "interest" requirement of Rule 24(a). In this Circuit, a "party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24," *Chiles*, 865 F.2d at 1213, but "a movant who shows standing is deemed to have a sufficiently substantial interest to intervene," *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1480 (11th Cir. 1993). Under Rule 24(a), intervenors need only be "real parties in interest" which is a "flexible" inquiry. *Chiles*, 865 F.2d at 1213-14.

least for this motion, the Court must accept Movants' defenses as correct. *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).

And "as a practical matter," Fed. R. Civ. P. 24(a)(2), this proceeding might be the only time that Movants can litigate Plaintiffs' claims. If Plaintiffs pursue injunctive relief, this Court's decision could be the final word on the laws governing the upcoming and subsequent elections. Because the "very purpose of intervention is to allow interested parties to air their views" before "making potentially adverse decisions," *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014), the "best" course is to give "all parties with a real stake in [the] controversy" an "opportunity to be heard." *Hodgson v. UMWA*, 473 F.2d 118, 130 (D.C. Cir. 1972). That includes Movants.

### D.    Defendants do not adequately represent Movants' interests.

Inadequacy of representation is not a demanding standard. Rule 24(a)(2) requires this Court to grant intervention if existing party representation "'may be' inadequate." *Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972). And "the burden of making that showing should be treated as minimal." *Id.* The "presumption" of adequate representation "is weak and can be overcome if the [Movants] present some evidence to the contrary"—for example, a "difference in interests." *Stone v. First Union Corp.*, 371 F.3d 1305, 1311-12 (11th Cir. 2004). Even where an intervenor has "similar, but not identical interests," to the State, the intervenor's "interests are not adequately represented." *Id.* at 1312 (cleaned up); *see also Huff v. Comm'r*, 743 F.3d 790, 800 (11th Cir. 2014) ("[W]hile the Taxpayers have taken the same litigation position as the [state defendants]," their "interest in their overall tax liability is *not the same* as the [state defendants'] interest in how the taxes are apportioned." (emphasis added)).

Movants easily satisfy this minimal standard. No party to this case shares Movants' interests in promoting Republican candidates' electoral success, supporting Republican voters, and conserving Republican Party resources. Much less does any party adequately represent those interests. Defendants are state and county government officials who necessarily represent "the public interest." *Coal. of*

9

*Ariz./N.M. Counties for Stable Econ. Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996). By contrast, Movants' interests are inherently "partisan." *La Union del Pueblo Entero*, 29 F.4th at 309. "Neither the State nor its officials can vindicate such an interest while acting in good faith." *Id.* Defendants have no interest in the election of Republican candidates, the mobilization of Republican voters, or the costs associated with either. Instead, as officials acting on behalf of Florida citizens and the State itself, the Defendants must consider "a range of interests likely to diverge from those of the intervenors." *Meek*, 985 F.2d at 1478. Those clashing interests include: the interests of Plaintiff, *In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991), "the expense of defending the current [rules] out of [state] coffers," *Clark*, 168 F.3d at 461, and "the social and political divisiveness of the election issue" to the State, *Meek*, 985 F.2d at 1478.

These diverging interests make Defendants less likely to present the same arguments, less likely to exhaust all appellate options, and more likely to settle. *Clark*, 168 F.3d at 461-62. By contrast, Movants care about this case's effect on the Republican Party, Republican candidates, and Republican voters. This stark divergence of interests meets the "minimal burden to show that the existing Defendants' representation of their interests, at the very least, *may* be inadequate." *Greene v. Raffensperger*, 2022 WL 1045967, at *4 (N.D. Ga. Apr. 7, 2022).

Additionally, no Defendant opposes Movants' intervention. As many courts have stressed, the government's "silence on any intent to defend [the Movants'] special interests is deafening." *Conservation Law Found. of N.E., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *accord Utahns for Better Transp. v. DOT*, 295 F.3d 1111, 1117 (10th Cir. 2002) (same). Because Defendants "nowhere argue" that they "will adequately protect [Movants'] interests," Movants have "raised sufficient doubt concerning the adequacy of [its] representation." *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017). The Court should thus grant intervention under Rule 24(a)(2).

## II.   Alternatively, the Court should grant permissive intervention.

Regardless of whether the Court finds that Movants are entitled to intervene by right, they satisfy the statutory requirements for permissive intervention. Rule 24(b) grants this Court discretion to permit "anyone to intervene" who, on a timely motion, presents "a claim or defense that shares with the main action a common question of law or fact." Movants' "claim or defense" does share with "the main action a common question of law or fact." Fed. R. Civ. P. 24(b). And Movants' intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *Id.* "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed inter-venors because it allows the court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. v. Falls Chase Special Taxing Dist.*, 983 F.2d at 216. If a court has doubts, "the most prudent and efficient course" is to allow permissive intervention. *Lac Courte Oreilles Band v. United States*, 2002 WL 32350046, at *3 (W.D. Wis. Nov. 20, 2002).

Indeed, permissive intervention is the path Florida courts routinely take. "In 'virtually all' of the recent challenges to Florida's election rules, federal district courts have allowed political parties and committees to intervene under Rule 24(b)." *Fla. Rising Together*, Doc. 81 at 3, No. 6:24-cv-1682 (granting intervention to the RNC and RPOF). That path serves "the interest of judicial efficiency" because the Court need not address intervention as of right. *Id.*

The requirements of Rule 24(b) are met here. As discussed above, Movants' timely motion will neither delay the case nor prejudice the parties. And Movants will raise defenses that share many common questions with the parties' claims and defenses. Even if Movants did not meet the higher standard for intervention as of right, as discussed above, *cf.* Fed. R. Civ. P. 24(a)(2), they have numer-ous legal and political interests in the "subject of the action" that defendants—as public officials—cannot "adequately represent." Fed. R. Civ. P. 24(a)(2).

11

Plaintiffs allege that Florida's proof-of-citizenship requirement is unlawful and must be enjoined. But laws like the one challenged here are designed to serve "the integrity of [the] election process" and the "orderly administration" of elections. *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). Movants will argue that the law is valid, that an injunction is unwarranted, and that Plaintiffs' desired relief would undermine Movants' interests. This obvious clash is why courts allow political parties to intervene in defense of state election laws. *See, e.g.*, *Swenson v. Bostelmann*, Doc. 38, No. 3:20-cv-459 (W.D. Wis. June 23, 2020) ("[T]he [RNC and Republican Party of Wisconsin] have a defense that shares common questions of law and fact with the main action; namely, they seek to defend the challenged election laws to protect their and their members' stated interests—among other things, interest in the integrity of Wisconsin's elections."); *Priorities USA v. Nessel*, No. 2:19-cv-13341, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020) (granting permissive intervention where the RNC "demonstrate[d] that they seek to defend the constitutionality of Michigan's [election] laws, the same laws which the plaintiffs allege are unconstitutional").

Allowing Movants to intervene will promote consistency and fairness in the law, as well as efficiency in this case. It will allow the Court "to profit from a diversity of viewpoints." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). While intervention "inevitably" risks some "'delay,'" that kind of prejudice or delay is irrelevant: Rule 24(b) is concerned with "*undu[e]* delay or prejudice," and "'[u]ndue' means not normal or appropriate." *Appleton v. Comm'r*, 430 F. App'x 135, 138 (3d Cir. 2011) (emphasis added). Any purported burdens of briefing, discovery, or argument "fall well within the bounds of everyday case management." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022). For these reasons, the Court should permit Movants to intervene.

Simply put, "'in cases challenging … statutory schemes as unconstitutional or as improperly interpreted and applied, … the interests of those who are governed by those schemes are sufficient to

support intervention.'" *Chiles*, 865 F.2d at 1214. Because Movants' candidates will "actively seek [election or] reelection in contests governed by the challenged rules," and Movants' voters will vote in them, Movants have an interest in "demand[ing] adherence" to Florida's rules. *Shays v. FEC*, 414 F.3d 76, 88 (D.C. Cir. 2005). Allowing Movants to intervene would serve "'the interest of a full exposition of the issues.'" *South Carolina v. North Carolina*, 558 U.S. 256, 272 (2010).

## CONCLUSION

Movants respectfully ask the Court to grant the motion and allow them to intervene as defendants.

## CERTIFICATE OF GOOD-FAITH CONFERENCE

In accordance with Local Rule 7.1(a)(3), counsel for Movants conferred with counsel for the parties in a good faith to attempt resolving the issues raised in this motion. The State Defendants and the Supervisor for Brevard County do not oppose the relief requested in the motion. The Supervisors for Broward, Clay, DeSoto, Duval, Flagler, Gilchrist, Hernando, Highlands, Hillsborough, Jefferson, Leon, Liberty, Madison, Martin, Okaloosa, Osceola, Palm Beach, Polk, St. Lucie, and Union Counties take no position on the motion. The Unidos Plaintiffs take no position on the motion so long as any intervention would not disrupt the timeline and schedule the Court ordered at Doc. 88. To the extent proposed intervenors do not agree to that timeline and schedule, the Unidos Plaintiffs object to the motion.[6] The NAACP Plaintiffs oppose the motion. In accordance with the Court's rules, Movants' counsel conferred by phone with Plaintiffs' counsel to confirm their positions.

---

[6] As noted in this motion, Movants commit to complying with the Court's scheduling order and will not seek reconsideration of any existing deadlines.

Dated: July 27, 2026

Respectfully submitted,

Thomas R. McCarthy*
Gilbert C. Dickey*
Conor D. Woodfin*
Peter Allevato*†
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com
peter@consovoymccarthy.com

 /s/ *Jesus M. Suarez*

Jesus M. Suarez (FBN: 60086)
Carmen Manrara Cartaya (FBN: 73887)
CONTINENTAL PLLC
245 Alcazar Avenue
Coral Gables, FL 33134
(305) 677-2707
JSuarez@ContinentalPLLC.com
CCartaya@ContinentalPLLC.com

\* *pro hac vice* forthcoming
† *Supervised by principals of the firm admitted to practice in Virginia*

*Counsel for Movants*

14