IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:26-cv-22257-JB/Torres

FLORIDA STATE CONFERENCE OF
BRANCHES AND YOUTH UNITS OF THE
NAACP and FLORIDA ALLIANCE FOR
RETIRED AMERICANS,

*Plaintiffs*,

v.

CORD BYRD, in his official capacity as
Secretary of State of Florida, *et al.*,

*Defendants*.

**FLORIDA NAACP PLAINTIFFS' OPPOSITION TO REPUBLICAN NATIONAL
COMMITTEE AND REPUBLICAN PARTY OF FLORIDA'S MOTION TO INTERVENE**

Plaintiffs Florida State Conference of Branches and Youth Units of the NAACP and the

Florida Alliance for Retired Americans (collectively, "FL NAACP Plaintiffs") file this opposition to

the Republican National Committee and Republican Party of Florida's Motion to Intervene.

**INTRODUCTION**

FL NAACP Plaintiffs brought this challenge to the documentary proof-of-citizenship

("DPOC") requirement in the recently enacted House Bill 991 because it unduly burdens Floridians'

right to vote and violates the National Voter Registration Act ("NVRA") several times over. Through

this lawsuit, FL NAACP Plaintiffs seek to enjoin a state law that makes it harder for their members

to register and vote, in violation of their constitutional and statutory rights. The Republican National

Committee ("RNC") and Republican Party of Florida ("RPOF") (collectively, the "Republican

Movants") seek to intervene to defend HB 991, but their motion comes up short at every turn.

They start by attempting to bury the Court in an avalanche of string-cite citations that give

1

the false impression that political parties *always* get intervention. But as one of their own cases acknowledges, many of these decisions involved "little opposition or deliberation." Report and Recommendation at 3, *Fla. Rising Together, Inc. v. Byrd*, No. 6:24-cv-1682 (M.D. Fla. Mar. 5, 2025), ECF No. 81. In reality, partisan actors are *often* denied intervention in election law cases, particularly when cases are initiated by nonpartisan organizations rather than the partisan rivals of the putative intervenor. Indeed, in several recent challenges to DPOC laws brought by nonpartisan organizations, the RNC has been denied intervention. *See* Order, *Red Wine & Blue v. LaRose*, No. 1:25-cv-1760, ECF No. 27 (N.D. Ohio Nov. 20, 2025) (denying RNC intervention) (attached as Ex. 1); Order, *N.H. Youth Movement v. Scanlan*, No. 1:24-cv-291 (D.N.H. Mar. 13, 2025), ECF No. 48 (similar) (attached as Ex. 2); Order, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-509 (D. Ariz. June 23, 2022), ECF No. 57 (similar) (attached as Ex. 3).[1]

Turning to the actual legal standard, Republican Movants do not meet the requirements to intervene as a matter of right under Federal Rule of Civil Procedure 24(a). They fail to identify any specific, legally protectible interest that may be impaired in this litigation, relying instead on a generalized interest in election integrity and voter confidence. Such abstract interests are shared by all parties and the public at large and, in any event, are adequately represented by governmental defendants who have zealously touted the law's merits. The Republican Movants likewise fail to show that permissive intervention under Rule 24(b) would be appropriate. The Republican Movants' intervention would add little more than unnecessary procedural complexity to this already

---

[1] As explained *infra*, in *Mi Familia Vota*, the RNC was denied intervention in a challenge brought by nonprofit organizations Mi Familia Vota and Voto Latino but subsequently intervened without opposition in a later-filed lawsuit brought by the Democratic National Committee—the RNC's partisan opposite. *See Democratic Nat'l Comm. v. Hobbs*, No. 2:22-cv-1369 (D. Ariz. Aug. 24, 2022), ECF No. 18 (attached as Ex. 4). The RNC participated in *Mi Familia Vota* solely due to the later consolidation of those suits.

complicated case—while injecting a gratuitously partisan aspect to the dispute.

This Court should therefore deny the Republican Movants' motion and allow them to express their views as *amici* instead. *Brenner v. Scott*, 298 F.R.D. 689, 691–92 (N.D. Fla. 2014) ("The better course . . . is to deny intervention but to allow [the movant] to be fully heard as an amicus" where "intervention would bring little additional value."). But if it grants the motion, the Court should at least impose conditions to avoid needless duplication, as courts have done in similarly complex election law cases.

## BACKGROUND

HB 991 is the latest effort in a nationwide campaign to promote the fictional threat of widespread noncitizen voter fraud. Even though noncitizen voting poses no measurable threat to Florida's elections—in which the Republican Party and its candidates have performed quite successfully in recent years—the state has nonetheless joined a small handful of others to require voters to present DPOC to register, to remain on the rolls, and to cast an effective ballot. The experiences of these other states show that such DPOC requirements burden and disenfranchise eligible voters, while doing nothing to improve election integrity. There is no reason to think Florida's experience will prove different. Indeed, there is strong reason to believe HB 991 will prove far more harmful than these already burdensome laws, which have been enjoined in whole or part. *See* Fla. NAACP Pls.' Am. Compl. ¶¶ 82–87, ECF No. 90.

The Florida Legislature passed HB 991 on March 12, 2026, and Governor DeSantis signed it into law on April 1, 2026. That same day, FL NAACP Plaintiffs filed suit in the Northern District of Florida, while the UnidosUS Plaintiffs filed in this Court. The two actions—which collectively involve 12 plaintiff organizations and 70 state- and county-level defendants—were consolidated before this Court on May 20, 2026. *See* ECF No. 64. On the Court's order, all parties met, conferred,

and jointly proposed a comprehensive case management schedule, through trial. *See* ECF No. 77. The parties then appeared for a status conference before the Court agreed to the proposed schedule on July 10, 2026. *See* ECF Nos. 87–88.

Consistent with the agreed upon schedule, and upon expiration of the NVRA's 90-day notice period, both the FL NAACP and UnidosUS Plaintiffs filed amended complaints on July 22, 2026, adding various NVRA claims. ECF Nos. 89–90. The following week—nearly four months after this case began—the Republican Movants filed their motion to intervene. *See* ECF No. 100.

## LEGAL STANDARD

To intervene as a matter of right under Rule 24(a), the movant bears the burden of establishing four conditions:

> (1) [H]is application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

*Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). "Putative intervenors . . . bear the burden of proof to establish all four bases for intervention as a matter of right." *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 291 (11th Cir. 2020).

Under Rule 24(b), a district court may allow the intervention of a party who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). But even where these factors are met, Rule 24(b) intervention remains "wholly discretionary with the court," which "may refuse to allow intervention." *Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 595 (11th Cir. 1991) (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1913 (2d ed. 1986)).

**ARGUMENT**

## I. The Republican Movants enjoy no automatic right to intervene and courts often deny their intervention requests.

Eager to short-circuit Rule 24's requirements, the Republican Movants first assert that courts do little more than rubberstamp their requests to intervene. *See* Mot. 1 nn.1–3. But their citation barrage ignores that courts routinely deny the Republican Movants' requests to intervene, particularly in cases filed by nonpartisan organizational plaintiffs.[2] Indeed, in a trio of recent DPOC cases, courts uniformly denied intervention motions brought by Republican affiliates. *See* Ex. 1 at 19, 23; Ex. 2 at 1; Ex. 3 at 4–6.

To be sure, in *Mi Familia Vota*, the RNC later intervened—but only after the Democratic National Committee filed its own separate lawsuit and thereafter declined to oppose the RNC's intervention. *See* Order, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-509 (D. Ariz. Oct. 27, 2022), ECF No. 160 (attached as Ex. 5). That is consistent with precedent recognizing that partisan organizations typically have a substantial interest in a case once their "direct counterparts" appear to advance "'mirror-image' interests." *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (granting RNC intervention because DNC was plaintiff); *see also Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) (granting Democratic Party committees' intervention where Republican Party committees were plaintiffs). But none of the plaintiffs here are partisan entities, and in such cases courts are wary to "introduce

---

[2] *See, e.g.*, *Liebert v. Wis. Elections Comm'n*, 345 F.R.D. 169 (W.D. Wis. Dec. 5, 2023); *Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20-CV-457, 2020 WL 6589359, at *1 (M.D.N.C. June 30, 2020); *Yazzie v. Hobbs*, No. 20-cv-08222, 2020 WL 8181703, at *4 (D. Ariz. Sept. 16, 2020); *Common Cause R.I. v. Gorbea*, No. 1:20-cv-00318, 2020 WL 4365608, at *3 n.5 (D.R.I. July 30, 2020); *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 258 (D.N.M. 2008); *Kan. Appleseed Ctr. for L. & Just. v. Schwab*, DG-2025-cv-000206 (Kan. Dist. Ct. Nov. 12, 2025) (attached as Ex. 6).

unnecessary partisan politics into an otherwise nonpartisan legal dispute." *Miracle v. Hobbs*, 333 F.R.D. 151, 156 (D. Ariz. 2019) (quotation omitted) (denying intervention to Republican legislators); *see also* Ex. 3 at 4–6.

The Republican Movants' string cites are not to the contrary. To start, many of those cases involved *unopposed* requests to intervene.[3] Indeed, one of their own cases acknowledges that many previous intervention orders were issued "with little opposition or deliberation." Report and Recommendation at 3, *Fla. Rising Together v. Byrd*, No. 6:24-cv-1682 (M.D. Fla. Mar. 5, 2025), ECF No. 81. Republican Movants also double-count several interventions that were granted in a single order.[4] And several others involved the sort of partisan opponents that the Republican Movants lack here.[5] Simply put, the Republican Movants' effort to carpet bomb the Court with citations flounders upon closer look.

Indeed, the Republican Movants' argument-by-string-cite approach ignores that Rule 24 imposes a case-specific standard. Accordingly, "the facts and procedural posture of each case are important." *In re W. Caribbean Airways Crew Members*, No. 1:07-cv-22015, 2010 WL 11601239, at *9 (S.D. Fla. Jan. 8, 2010) (quoting *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 412 (5th Cir. 1991)). As a result, "past decisions cannot provide uniformly dependable guidelines." *Id.* The Republican Movants' footnotes, which cram together factually and procedurally unique

---

[3] *See* Ex. 4; Min. Order, *United States v. Georgia*, No. 1:21-cv-2575 (N.D. Ga. July 12, 2021); *Vote.org v. Byrd*, No. 4:23-cv-111, 2023 WL 7174246, at *1 (N.D. Fla. May 26, 2023).

[4] The Georgia district court granted five interventions in a single order, *New Ga. Project v. Raffensperger*, No. 1:21-cv-01229, 2021 WL 2450647, at *2 (N.D. Ga. June 4, 2021), which Republican movants cite as three different Eleventh Circuit precedents, Mot. 1 n.2 (citing *New Ga. Project v. Raffensperger*, No. 1:21-cv-1333 (N.D. Ga. 2021), *Ga. State Conf. of NAACP v. Raffensperger*, No. 1:21-cv-1259 (N.D. Ga. 2021), *Vote Am. v. Raffensperger*, No. 1:21-cv-1390 (N.D. Ga. 2021)).

[5] *See* Ex. 4; *Thomas v. Andino*, 613 F. Supp. 3d 926 (D.S.C. 2020); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006).

cases, therefore offer little aid to the Court, which must apply the Rule 24 requirements to the specific facts of this case, even though the Republican Movants are eager to skip past that inquiry.

**II.      The Republican Movants fail to satisfy Rule 24(a)(2)'s requirements.**

While failing to satisfy just *one* of Rule 24(a)(2)'s requirements is enough to deny intervention as of right, *see Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007), Republican Movants notably fail to satisfy any of them. Simply put, they have no "legally protected interest" in a law that burdens lawful voters and, in any event, their tenuous, generalized interests in this case are adequately represented by the Secretary, who has stood behind HB 991 since its enactment. Finally, Republican Movants' choice to seek intervention *four months* into this litigation fails to show the sort of alacrity that usually accompanies a meritorious request to intervene.

**A.      Republican Movants' alleged interests are generalized and indirect.**

Republican Movants do not have a "legally protectable interest" that confers a right to intervene in this action. *Chiles*, 865 F.2d at 1212. "Intervention of right must be supported by [a] 'direct, substantial, legally protectible interest in the proceeding.'" *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (citation omitted). A cognizable interest "must be a particularized interest rather than a general grievance." *Chiles*, 865 F.2d at 1212. Courts have repeatedly held that amorphous concerns about election integrity are too generalized and speculative to support intervention. *See, e.g.*, *United States v. Georgia*, No. 1:21-cv-02575, 2022 WL 61156, at *2 (N.D. Ga. Jan. 6, 2022) (denying motion to intervene based upon "a generalized interest in orderly elections"); *United States v. Florida*, No. 4:12-cv-285, 2012 WL 13034013, at *1 (N.D. Fla. Nov. 6, 2012) (similar based upon interest in preserving "confidence in the election process").[6]

---

[6] *See also Liebert*, 345 F.R.D. at 173 (holding "the integrity of the election process" is "not a 'direct, significant and legally protectable interest'") (citation omitted); *Common Cause Ind. v. Lawson*, No.

Yet this is all Republican Movants can muster: an interest in ensuring that their "voters . . . vote" and that "candidates . . . compete in fair elections." Mot. 6. These are precisely the sort of generalized interests other courts have rejected, including in litigation challenging similar DPOC requirements in other states. For example, the RNC asserted almost *verbatim* interests in a similar case in Ohio—"an interest in Republican voters voting, in Republican candidates winning, and in Republican resources being used effectively." Ex. 1 at 9. That court explained that these purported interests did not reflect a substantial interest in the case and instead "simply pertain[ed] the enforceability of the statute in general." Ex. 1 at 11.

The cases on which Republican Movants rely do not support their claimed interests either. *See* Mot. 6 (collecting cases). As explained, this case does not already involve a political party or partisan litigant. *Contra Issa*, 2020 WL 3074351 at *3 (partisan entities appearing on opposite sides of the case); *Benkiser*, 459 F.3d at 584–85 (similar); *see also* Ex. 1 at 13 (distinguishing *Issa* on this basis). Nor does HB 991 regulate the conduct of political parties. *Contra La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022); *see also* Ex. 1 at 12 (again distinguishing this authority because it involved a Texas law that regulated political parties' own conduct). It has nothing to do with an ongoing dispute about a specific recount between political candidates and entities. *Contra Siegel v. LePore*, 234 F.3d 1163, 1168 (11th Cir. 2000). And it certainly does not involve any law that will make it harder for the Republican Movants' supporters to vote, *contra Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S 181 (2008); to the contrary,

---

1:17-cv-03936, 2018 WL 1070472, at *4–5 (S.D. Ind. Feb. 27, 2018) (finding organization's claimed interests in "state control over structuring its own election system" and the state's "ability to conduct fair and robust elections" "too generalized to afford a right to intervention under Rule 24(a)"); *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 253 ("[A]n interest in fair elections and the prevention of voter registration fraud . . . [is] too general an interest to form the basis of a rule 24(a) [sic] motion."); *Miracle*, 333 F.R.D. at 155 (rejecting Republican legislators' "highly generalized argument that [they] ha[d] an interest in upholding the constitutionality of the [election regulation]").

enjoining HB 991 will remove the burden the law imposes on *all* prospective voters' (including Republicans') access to the franchise. None of these cases vindicates the Republican Movants' asserted interests here, which amount only to vague concerns about election integrity.

Finally, while the Republican Movants lean heavily on the Supreme Court's recent decision in *Bost*, that case offers little to support their purported interest here. *Bost* held that a candidate for office had established Article III standing based on his "personal stake in the rules that govern the counting of votes in his election." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 77 (2026). But while *Bost* recognizes candidates' interest in the lawful counting of votes cast for or against them, it does not support a political entity's interest in defending a rule that makes it harder for voters of all political stripes from casting a ballot in the first place. *See Liebert*, 345 F.R.D. at 173 (distinguishing a political party's interest in a case where "plaintiffs [are] seeking to *eliminate* a requirement, not add one. . . . so that voting absentee becomes easier, not harder"); *see also Libertarian Party of Pa. v. Wolf*, No. 5:20-cv-2299, 2020 WL 6580739, at *1 n.1 (E.D. Pa. July 8, 2020) (distinguishing cases involving changes to "balloting procedures" that "directly impact[] the interest of" political associations and finding that a political party's "worr[y] about their candidates losing votes to [another] party['s] candidates" was not "a sufficient interest that justifies intervention as a matter of right"). *Bost* did not address the type of speculative, abstract interests Republican Movants advance here, and the Republican Movants have not demonstrated a substantial, let alone a cognizable, interest in the enforcement of HB 991.

### B. The Republican Movants have not identified how their interests will be impaired by this litigation.

Even if the interests alleged were sufficient, the Republican Movants have not identified how the outcome of this litigation will "impair or impede" them. Fed. R. Civ. P. 24(a)(2). Nothing about this challenge harms the ability of "Republican voters to vote," or "Republican candidates to

compete." Mot. 6. This is not a case where there are "rights . . . that could be taken away"—from either Republican voters or Republican candidates—by enjoining HB 991's DPOC requirements. *La Union del Pueblo Entero*, 29 F.4th at 307. To the contrary, Plaintiffs' lawsuit seeks to return to the status quo before HB 991, when *all* eligible citizens could register and vote without additional documentary proof. This stands in sharp contrast with FL NAACP Plaintiffs, who have identified how HB 991 will burden their members' constitutional right to vote and violate pro-voter protections in the NVRA. *See* Fla. NAACP Pls.' Am. Compl. ¶¶ 14–26. And it also explains why courts often find Rule 24(a)(2)'s impairment element satisfied when a lawsuit seeks to *harm* or *burden* the act of voting—but not when such suits seek to make voting more accessible. *Compare Issa*, 2020 WL 3074351, at *3 (finding impairment satisfied where voting would become more challenging if the plaintiffs' challenge succeeded), *with Liebert*, 345 F.R.D. at 173 (finding that Republican movants failed to show how eliminating a requirement such "that voting . . . becomes easier, not harder" impaired any asserted interest); *cf. Short v. Brown*, 893 F.3d 671, 677–78 (9th Cir. 2018) (plaintiff's constitutional rights not violated where "a law that makes it easier [for someone else to] vote"); *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 191 (5th Cir. 2020) (similar). If this suit prevails, supporters of the Republican Movants can still vote and compete in the same way they have long done so. The Republican Movants' only rejoinder is to speculate that "fair and accurate elections" may be "jeopardized by this lawsuit." Mot. 8. But they do not bother to cite any pre-HB 991 examples of purportedly *un*fair or *in*accurate elections to support this unadorned speculation that enjoining the new law would undermine Florida's elections in any way.

Equally opaque is the Republican Movants' suggestion that relief in this case could impair their ability to "spen[d]" "Republican resources . . . wisely." Mot. 6. To be sure, when an organization has no choice but to divert limited resources to staunch harm caused by an election law,

10

it may have a cognizable interest. *Cf. Issa*, 2020 WL 3074351, at *3. But the Republican Movants

say little about how that could be the case here, for good reason. If HB 991 is enjoined, Floridians

will register as they long have—by affirming their citizenship under penalty of perjury—nothing

less, nothing more. If anything, *preserving* HB 991 might require the Republican Movants to remind

their voters to bring DPOC to the polls or to register and assist those who lack ready access to it. It

is implausible that the Republican Movants will expend resources simply telling their voters that the

registration rules remain as they have always been and no longer require extra, unnecessary steps.

As for the Republican Movants' alleged interest in "undermine[d] . . . political legitimacy,"

Mot. 7, they have made no showing that the lack of a DPOC requirement in Florida has impaired this

interest. For example, they point to no recently elected Republican officeholder in Florida—of which

there is no shortage—whose "legitimacy" suffered prior to HB 991. Nor do they explain why their

voters will stay home in the absence of HB 991, particularly given the success Republican candidates

have enjoyed in recent Florida elections. Moreover, courts have found that DPOC laws *reduce* voter

confidence by making it harder for citizens to vote without any meaningful or actual benefit. *See*

*Fish v. Schwab*, 957 F.3d 1105, 1134–35 (10th Cir. 2020). The Republican Movants cite nothing to

contradict that finding here.[7]

Once again, the Republican Movants' reliance on *Bost* is wholly misplaced. Specifically, *Bost*

concerned a challenge to a rule that impacted the competitive electoral process the candidate was

---

[7] The Republican Movants also repeatedly seek to instill a false sense of immediacy to their supposed impairment, repeatedly referencing how enjoining HB 991 might impact the "upcoming election." Mot. 7, 9. But HB 991 will not take effect until January 1, 2027. Act of April 1, 2026, § 34, 2026 Fla. Sess. Law Serv. Ch. 2026-26 § 34 (West). Accordingly, Republican Movants cannot peg their interest on the purported need to "expend 'resources to educate their members on the shifting situation in the lead-up to the 202[4] [sic] election.'" Mot. 7–8 (alteration in original) (quoting *La Union del Pueblo Entero*, 29 F.4th at 307). If anything, their failure to fully grasp when and how the law will operate only further demonstrates how attenuated their interest is.

engaged in. The Court held that an "unlawful election rule can injure a candidate in several ways," *Bost*, 607 U.S. at 77, as "[d]epartures from the preordained rules [can] cause [candidates] particularized and concrete harm," *id.* at 79. Here, however, the Republican Movants allege no harm from an "unlawful election rule" or any rule that will make voting harder for their supporters. Nothing in state or federal law *requires* DPOC, so the Republican Movants face no *Bost*-like injury if the law is enjoined, consistent with the decades-long status quo. If anything, the *Bost* analogy runs the opposite way: the only "unlawful election rule" at issue is HB 991. While Republican Movants may share an ideological interest in a voter registration law they apparently like, they can allege no impairment or concrete harm from its injunction.

**C.      The Republican Movants are adequately represented by State Defendants, who have vigorously defended HB 991.**

The Republican Movants try to set the bar too low for purposes of showing that the existing Defendants will not represent their interests. *See* Mot. 9. In the Eleventh Circuit, courts presume that government entities will adequately represent interests advanced by third-party intervenors. *Burke*, 833 F. App'x at 293 ("When, as here, th[e] existing party is a government entity, '[w]e presume that the government entity adequately represents the public, and we require the party seeking to intervene to make a strong showing of inadequate representation.'" (alteration in original) (citation omitted)); *see also League of Women Voters of Fla., Inc. v. Lee*, No. 4:21-cv-186, 2021 WL 5278735, at *1 (N.D. Fla. June 4, 2021) (describing the "claim that Defendants cannot adequately represent [the RNC and RPOF's] interest in ensuring that Florida's laws are not upended" as "suspect"). The Republican Movants ignore this presumption and thus fail to overcome it.

This presumption applies with particular force here because the Republican Movants claim interests in the litigation that are identical to those of the State Defendants. *See Chiles*, 865 F.2d at 1215 (denying intervention where the proposed intervenor "ha[d] an interest which is *identical* to"

12

the county defendant). The Republican Movants and the State Defendants each advance interests in the integrity of Florida's elections and ensuring that only qualified citizens register to vote. Indeed, Defendant Secretary of State Byrd has been especially vocal about his steadfast support for HB 991's DPOC requirement due to purported election integrity concerns.[8] The Republican Movants have made no showing the Secretary of State will fail to vigorously defend HB 991.

The Republican Movants likewise fail to overcome a *second* presumption—that a proposed intervenor is adequately represented when it shares the same "objective" as a pre-existing party. *Athens Lumber Co.*, 690 F.2d at 1366. To rebut this presumption, intervenors must come forward "with some evidence to the contrary." *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999) (crediting suggestion of an impending settlement as evidence of inadequacy). The Republican Movants have not done so. They are fully aligned with the State Defendants; both aim to defend the legality of HB 991 and defeat Plaintiffs' requests to enjoin the law's DPOC requirement. Indeed, the Republican Movants have neither presented evidence nor otherwise explained how their defense or arguments in favor of HB 991 would differ *at all* from the State's. This shortcoming is fatal and underscores the likelihood that, if allowed to intervene, the Republican Movants would offer no unique contribution to this case. *See Wyatt ex rel. Rawlins v. Hanan*, 170 F.R.D. 189, 192 (M.D. Ala. 1995) ("The party seeking intervention must 'contribute' something to the 'lawsuit beyond underlining the positions already taken' by the current parties." (quoting *Bush v. Viterna,* 740 F.2d 350, 357 (5th Cir. 1984))). And while it is true that Defendants do not oppose intervention, the best explanation is not that their positions differ, but rather that the lead defendant—Secretary Byrd—is

---

[8] *Governor Ron DeSantis Signs Florida SAVE Act to Strengthen Election Integrity and Security*, Exec. Off. of the Gov. of Fla. (Apr. 1, 2026), https://www.flgov.com/eog/news/press/2026/governor-ron-desantis-signs-florida-save-act-strengthen-election-integrity-and [https://perma.cc/8FD4-Q9L9] (quoting Secretary Byrd saying, "The Florida SAVE Act [HB 991] upholds the Florida Constitution by ensuring only citizens can vote in Florida elections.").

a Republican who supports HB 991 for the same reasons the Republican Movants do. *Contra* Mot. 10; *see Liebert*, 345 F.R.D. at 173 (denying Republicans' motion to intervene in part because the legislature had already intervened and "Republicans ha[d] a large majority in both houses of the legislature").

At bottom, this litigation already represents a vast "range of interests," Mot. 10, reflected across a large number of parties on both sides of the "v." Republican Movants have offered nothing to suggest that the State Defendants will not zealously defend HB 991 against Plaintiffs' challenge and therefore adequately represent the Republican Movants' purported interests in the "integrity" of Florida elections. Mot. 4. And in the improbable event the Republican Movants seek to advance a different merits argument than the Secretary—which their motion does not even suggest, let alone establish—they can do so just as easily through an amicus brief, which affords them the added benefit of reviewing the Secretary's briefing beforehand. The Republican Movants thus fail to satisfy this element as well.

### D.     The Republican Movants did not act promptly to intervene.

A party may intervene only on a "timely motion." Fed. R. Civ. P. 24(a). Although there is no "precisely measurable dimension[]" of timeliness, *Chiles*, 865 F.2d at 1213, the length of delay, the prejudice to other parties, and the prejudice to the proposed intervenor if excluded are all relevant factors, *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002). Of these, "[t]he most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene." *Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019).

Despite insisting that they have crucial interests at stake in this case, the Republican Movants did not act swiftly to protect them. They waited four months after Plaintiffs filed their original

14

complaints to seek intervention. And while a four-month delay is not categorically untimely, the circumstances here make it so, as the Republican Movants have no doubt been alert to this litigation since its inception. *See United States v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir. 1983) (evaluating "the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest"); *Dillard v. City of Foley*, 166 F.R.D. 503, 505 (M.D. Ala. 1996) (finding intervention untimely where movants "waited approximately three months" after "they first knew that their interest might be affected"). If nothing else, the slothful way the Republican Movants acted should cause the Court to look skeptically at their asserted interests and claims of impairment. *Supra* Argument §§ II.A, B.

Substantive matters have also already occurred in this case. Over the past four months, the Court has issued transfer, consolidation, and scheduling orders—all of which required briefing or coordination among the many parties. *See* ECF Nos. 61, 64, 88; *contra* Mot. 5. And Republican Movants' promise to "comply[] with the scheduling order," Mot. 5, does not mitigate the burden imposed by adding (unnecessary) new parties, who no doubt seek to add more briefing, discovery requests, motion practice, experts, and trial witnesses to this dispute, *see Vazzo v. City of Tampa*, No. 8:17-cv-2896, 2018 WL 1629216, at *6 (M.D. Fla. Mar. 15, 2018). Indeed, the operative scheduling order was carefully negotiated by the existing parties to meet the litigation needs of the current parties and did not account for the additional briefing, discovery requests, or trial days the Republican Movants are likely to bring with them. Such disruption could have been easily avoided if the Republican Movants had acted in a prompt manner, thereby ensuring that any *potential* parties were known prior to the scheduling conference.

In contrast to this disruption, the Republican Movants will face no prejudice if they are denied intervention—they will be adequately represented by the State Defendants, *supra* Argument II.C,

and they may separately express their views as *amici*, *see Brenner*, 298 F.R.D. at 692.

### III.    The Court should also deny permissive intervention.

Republican Movants alternatively seek permissive intervention, *see* Mot. 11–13, which is "wholly discretionary" for the Court to grant or deny, *Worlds*, 929 F.2d at 595. Perhaps sensing the tenuousness of their Rule 24(a)(2) arguments, Republican Movants even suggest it would be the most "efficient" path forward. Mot. 2. For permissive intervention, a movant must—at minimum— show that their request is timely and they share a common question of fact or law with existing parties. *See* Fed. R. Civ. P. 24(b)(1). FL NAACP Plaintiffs have already explained why the motion is tardy. *Supra* Argument § II.D. And even if the Republican Movants could satisfy these threshold considerations, the Court has good reason to exercise its discretion against granting intervention, including the risk of "undu[e] delay [and] prejudice." Fed. R. Civ. P. 24(b)(3).

*First*, adding yet more parties will add "unnecessary procedural complexity" into an already complicated case. *Brenner*, 298 F.R.D. at 691. Coordinating discovery, briefing, and a trial across twelve plaintiff nonprofit organizations and numerous governmental parties is no small task. The Republican Movants would add yet more, and they "do not come alone"—they come with more briefing, more discovery, and more trial time. *Vazzo*, 2018 WL 1629216, at *6 (quoting *South Carolina v. North Carolina*, 558 U.S. 256, 288 (2010) (Roberts, C.J., concurring in part and dissenting in part)). As a full party to the proceedings, the Republican Movants would have "the ability to: depose witnesses; make discovery requests; submit discovery motions;" and fully participate in trial, *id.* at *5, imposing a sizeable burden on the parties and the Court.

On the other side of the ledger, Republican Movants' amorphous interests do not justify imposing these burdens on FL NAACP Plaintiffs and other existing parties. *See Liebert*, 345 F.R.D. at 173 (denying permissive intervention where "adding the Republicans as a party would create more

16

complexity in the case without any benefit"). As noted, the Republican Movants assert only "generalized political interests" in this litigation. *Brenner*, 298 F.R.D. at 692; *supra* Argument § II.A. And existing Defendants will adequately represent the Republican Movants' unadorned interest in hoping that HB 991 is ultimately enforced. *See League of Women Voters of Fla. v. Detzner*, 283 F.R.D. 687, 688 (N.D. Fla. 2012) (denying permissive intervention in part where "the defendants can and will adequately represent the interest of the state's voters"); *supra* Argument § II.C.

*Second*, the Republican Movants' involvement in this case risks "introduc[ing] unnecessary partisan politics into an otherwise nonpartisan legal dispute," *Miracle*, 333 F.R.D. at 156 (quotation omitted), thus "generat[ing] more heat than light" when it comes to developing the issues in this case, *Brenner*, 298 F.R.D. at 692; *see also* Mot. 10 (acknowledging their partisan motivations for intervening). Indeed, two of the three courts that recently denied the RNC intervention in similar DPOC cases pointed to this concern. *See* Ex. 1 at 23–24 (explaining that granting the RNC intervention "r[an] the risk of over-politicization and abuse of Rule 24"); Ex. 3 at 5 (agreeing "that granting [the RNC's] Motion would needlessly inject 'partisan politics into an otherwise nonpartisan legal dispute'" (quoting *Miracle*, 333 F.R.D. at 156)).

In the alternative, if the Court is inclined to allow permissive intervention, it should follow other courts in limiting the scope of that intervention to minimize delay and to avoid duplicative briefing and evidence. *Accord* Fed. R. Civ. P. 24 advisory committee's notes to 1966 amendment (noting intervention may be "subject to appropriate conditions or restrictions"). With respect to motion practice, such conditions often include: (1) requiring the intervenor to file consolidated briefs with the existing parties (such as Secretary Byrd); (2) restricting the length of an intervenor's briefing to something less than that afforded the principal parties; (3) prohibiting the intervenor from filing any dispositive motions (at least at a different time than the existing parties); and/or (4) requiring the

17

intervenor to seek leave to file briefs in order to address issues not already adequately addressed. *See, e.g.*, Order at 3–4, *Mi Familia Vota v. Hobbs*, No. 2:21-cv-01423 (D. Ariz. Oct. 4, 2021), ECF No. 53 (imposing similar restrictions on the same movants in DPOC challenge brought by Democratic entity); *In re Pinchuk*, No. 1:13-mc-22857, 2014 WL 12600728, at *6 (S.D. Fla. Jan. 27, 2014) (imposing limited intervention); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 21 (D.D.C. 2010) (similar); *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 10 (D.D.C. 2018) (similar); *see also Southern v. Plumb Tools*, 696 F.2d 1321, 1322 (11th Cir. 1983) ("Discretion under Rule 24(b) to grant or deny intervention in toto necessarily implies the power to condition intervention upon certain particulars." (citation omitted)).

As for discovery, courts often forbid intervenors from independently issuing requests and require them to rely on discovery adduced by the original parties (at least absent leave to pursue discovery neglected by the other parties). *E.g.*, *A. Philip Randolph Inst., of Ohio v. LaRose*, No. 1:20-cv-01908, 2020 WL 5524842, at *2 (N.D. Ohio Sept. 15, 2020). Alternatively, courts require the intervenor to share the deposition time and discovery requests of existing parties, rather than allotting them additional time or requests. *E.g.*, *Planned Parenthood Minn., N.D., S.D. v. Daugaard*, 836 F. Supp. 2d 933, 943 (D.S.D. 2011). And courts have also forbidden intervenors from presenting their own witnesses at trial, including experts. *E.g.*, *Trautmann v. Cogema Mining, Inc.*, No. 5:04-cv-117, 2006 WL 5157676, at *5 (S.D. Tex. Aug. 29, 2006). In the event the Court allows intervention (and for all the reasons set forth above, it should not), it should not hesitate to adopt whatever combination of these restrictions it believes will best resolve this case in an expeditious manner.

## CONCLUSION

For the foregoing reasons, the Court should deny the Republican Movants' motion to intervene.

Dated: August 10, 2026                    Respectfully submitted,

                                          /s/ Frederick S. Wermuth
                                          **FREDERICK S. WERMUTH**
                                          FL. Bar No. 0184111
                                          **QUINN B. RITTER**
                                          FL Bar No. 1018135
                                          **KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.**
                                          25 East Pine Street
                                          Orlando, FL 32801
                                          Telephone: (407) 422-2472
                                          fwermuth@kbzwlaw.com
                                          qritter@kbzwlaw.com

                                          **ABHA KHANNA\***
                                          **WALKER McKUSICK\***
                                          ELIAS LAW GROUP
                                          1700 Seventh Avenue, Suite 2100
                                          Seattle, WA 98101
                                          Telephone: (202) 948-1135
                                          akhanna@elias.law
                                          wmckusick@elias.law

                                          **CHRISTOPHER D. DODGE\***
                                          **NICOLE E. WITTSTEIN\***
                                          ELIAS LAW GROUP
                                          250 Massachusetts Ave NW, Suite 400
                                          Washington, DC 20001
                                          Telephone: (202) 948-1135
                                          cdodge@elias.law
                                          nwittstein@elias.law

                                          *\* Admitted Pro Hac Vice*

                                          *Attorneys for Plaintiffs Florida State Conference of*
                                          *Branches and Youth Units of the NAACP and Florida*
                                          *Alliance for Retired Americans*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of August, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Frederick S. Wermuth*
**FREDERICK S. WERMUTH**
Florida Bar No. 0184111
**QUINN B. RITTER**
FL Bar No. 1018135
**KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.**
25 E. Pine Street
Orlando, FL 32801
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
qritter@kbzwlaw.com
courtfilings@kbzwlaw.com
agonzalez@kbzwlaw.com