**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNIDOSUS, et al.,<br>*Plaintiffs*,<br>v.<br>CORD BYRD, in his official capacity as Secretary of State of Florida, et al.,<br>*Defendants*,<br>REPUBLICAN NATIONAL COMMITTEE and REPUBLICAN PARTY OF FLORIDA,<br>*Proposed Intervenor-Defendants*. | No. 1:26-cv-22257-JB |

## REPLY IN SUPPORT OF MOTION TO INTERVENE

The NAACP Plaintiffs' opposition to intervention says much, but ultimately proves one thing: no court in the Eleventh Circuit has ever denied the RNC intervention in an election case. And in the face of what the NAACP acknowledges is an "avalanche" of precedent granting intervention, Opp. at 1 (Doc. 116), that circuit-wide agreement should be dispositive. The simplest path is the one courts routinely take: grant permissive intervention, and allow Movants to defend their obvious interests in the rules governing Florida elections.

Movants intervened quickly after Plaintiffs amended their complaints, and well before any dispositive motions. In the dozens of cases in which the RNC has intervened, the NAACP Plaintiffs can't point to a single one in which the RNC slowed down or unduly complicated the proceedings. Losing a case on the merits because the RNC intervened is ordinary litigation, not undue prejudice. *See, e.g.*, *Ga. State Conf. of the NAACP v. Kemp*, No. 1:24-cv-4546 (N.D. Ga. Oct. 10, 2024) (minute order granting intervention to the RNC and Georgia Republican Party and denying the NAACP's motion for temporary restraining order). This case will affect Movants' interests—interests recently recognized by the Supreme Court. And while NAACP Plaintiffs assume that Movants' interests are adequately represented, they ignore the clear circumstances rebutting those presumptions in this case.

## ARGUMENT

The NAACP Plaintiffs start with a false legal premise, asking the Court to assume they are right about the merits. They claim, for example, that Movants "have no 'legally protected interest' in a law that burdens lawful voters." Opp. at 7. And they assert that "enjoining HB 991 will remove the burden the law imposes on *all* prospective voters' … access to the franchise." Opp. at 9. Plaintiffs enjoy the benefit of the doubt on a motion to dismiss. But "in resolving a motion to intervene," this Court "cannot assume" that Plaintiffs "will ultimately prevail on the merits." *Pavek v. Simon*, No. 19-cv-3000, 2020 WL 3960252, at *3 (D. Minn. July 12, 2020) (citing *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)); *accord Cap. Infrastructure, LLC v. Hernando Cnty.*, No. 8:06-cv-1347, 2006 WL 2400953, at *1 (M.D. Fla. Aug. 18, 2006). Florida's law doesn't burden any voters, and in resolving this motion, the Court can't assume that it does.

While purporting to recite the "actual legal standard" governing intervention, the NAACP Plaintiffs nowhere acknowledge that Rule 24 intervention is construed liberally and that "[a]ny doubts … should be resolved in favor of the proposed intervenors." *Fed. Sav. & Loan Ins. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Instead, they ask the Court to assume the outcome of this case before hearing all parties, and to second-guess Movants' legitimate interests at stake in Florida's proof-of-citizenship requirement. These arguments misstate the law and assume the facts.

### I. Movants' intervention has been consistently granted based on their interests in voter registration, representation, and winning elections.

The NAACP Plaintiffs spill much ink trying to characterize Movants' argument as one for "automatic" intervention. But what they don't say speaks loudest: they do not cite a single case in Florida district courts—or anywhere in the Eleventh Circuit—denying intervention to the RNC or a state political party in an election case. Movants cited more than a dozen cases from courts in the Eleventh Circuit allowing Republican committees to intervene in defense of state election and voter registration laws. Interv. Mot. at 1–2, n.1–2 (Doc. 100). They cited even more from federal courts

across the country. *Id.* That Movants often intervene "with little opposition or deliberation" only underscores the NAACP Plaintiffs' unusual opposition here. Opp. at 6. Of the "12 plaintiff organizations and 70 state- and county-level defendants" in this case, only the two NAACP Plaintiffs oppose intervention. Opp. at 3. It favors Movants' intervention that, typically, "[n]o one disputes" that political parties meet the "requirement for intervention as of right." *Citizens United v. Gessler*, No. 14-cv-002266, 2014 WL 4549001, at *2 (D. Colo. Sept. 15, 2014).

In response, the NAACP Plaintiffs cite a handful of non-binding decisions denying intervention to Republican committees. Opp. at 116, 5, n.2. Of those cases, one was reversed for purposes of appeal. *See Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020). Another that they rely on, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-509 (D. Ariz. Oct. 27, 2022), disproves each of their fears. First, that case shows that the Court can simply grant intervention in the lead case as unopposed,[1] and allow Movants to participate in the consolidated cases. Second, it shows that Movants are true to their word that they work to reduce duplicative briefing. *E.g.*, *id.*, Doc. 200 (RNC's one-page notice joining the State's motion to dismiss). Third, that the Supreme Court recently granted the RNC's petition for writ of certiorari in that case shows that Movants have standing to defend state election laws,[2] and that their participation is often essential to defense of those laws. *RNC v. Mi Familia Vota*, No. 25-1017 (U.S. June 29, 2026). By contrast, none of the NAACP Plaintiffs' cases are from courts bound by Eleventh Circuit precedent. *Cf. Fed. Sav. & Loan Ins.*, 983 F.2d at 216; *Siefel v. LePore*, 234 F.3d 1163, 1189 n.1 (11th Cir. 2000) (per curiam) (Florida Democratic Party granted intervention in voting

[1] The Unidos Plaintiffs took no position on the RNC's intervention given the RNC's representations that it will not seek to amend the Court's schedule. *See* Interv. Mot. at 13. Contrary to the NAACP Plaintiffs' suggestion, that makes this case more like *Mi Familia Vota*, not less.

[2] The Supreme Court granted the RNC's petition over the plaintiffs' objection that the RNC lacked standing to appeal. *See* Opp. Br. of LUCHA Resp. at 30-33, *RNC v. Mi Familia Vota*, No. 25-1017 (S. Ct. May 26, 2026).

recount case). And all predate the Supreme Court's recent ruling in *Bost v. Illinois State Board of Elections*, 607 U.S. 71 (2026), which clarified Movants' interests in election laws.

*Bost* clarified that political candidates have greater interests in election rules and outcomes than "common competitors in the economic marketplace." *Id.* at 77. The political committees that campaign for and represent those candidates are no different. That is because "[a]n unfair and inaccurate election plainly affects" Movants and their candidates "in a different way" than it does individuals and organizations who are not political competitors. *Id.* at 78. So Movants also have an "interest" in "a fair process and an accurate result" that sustains intervention whenever the outcome of a case threatens the fairness or accuracy of those proceedings. *Id.* at 77. And "given the thoroughly intertwined relationship of parties and their candidates," *Nat'l Republican Senatorial Comm. v. FEC*, 146 S. Ct. 2404, 2418 (2026), that associational interest suffices for intervention.

Movants also have organizational interests in this case. The law challenged in this case will affect how voters register and who in Florida will be able to register—including those who might register to vote as Republicans. The RNC and the Republican Party of Florida have a direct interest in ensuring that only eligible voters are registered to vote as Republicans—which ensures a Republican "winner's political legitimacy." *Bost*, 607 U.S. at 78. And because Movants "spend untold time and resources seeking" to help elect Republican candidates who can "claim the right to voice the will of the people," they have "'an undeniably different—and more particularized—interest' in knowing what that will is." *Id.* (citation omitted). As the organizations representing Republican voters in Florida, this gives Movants "an obvious personal stake" and could "cause [them] particularized and concrete harm." *Id.* at 79. Those interests are "'direct, substantial, legally protectible.'" *Chiles v. Thornburgh*, 865 F.2d 1197, 1213–14 (11th Cir. 1989).

The NAACP Plaintiffs try to distinguish Movants' authorities because "HB 991 [does not] regulate the conduct of political parties." Opp. at 8. But neither did the statute challenged in *Bost*. And

neither does HB 991 regulate the conduct of organizations like the NAACP, which is why they allege harm to their "members." NAACP Am. Compl. ¶17 (Doc. 90). The NAACP Plaintiffs ignore the representational aspect of Movants' organizations, and the direct interests political parties have in registering citizens, turning out voters, and winning elections. *See* Interv. Mot. at 100 at 3–4; *see also RNC v. NCBOE*, 120 F.4th 390, 396–97 (2024) (affirming the RNC's interest in "organizing lawful voters and encouraging them to support Republican candidates at all levels of government" and "hosting candidate and voter registration events, staffing voting protection hotlines, investigating reports of voter fraud and disenfranchisement"). If the NAACP Plaintiffs have standing to litigate this case, Movants certainly have an "interest" in defending against it. *Chiles*, 865 F.2d at 1213–14.

Nor is there any reason to think Movants have interests solely in cases brought by the DNC or where another political party advances "mirror-image' interests." Opp. at 5 (quoting *DNC v. Bostelmann*, No. 20-cv-249, 2020 WL 1505640, at *5 (W.D. Wis., Mar. 28, 2020)). To be sure, Republican party organizations typically share similar interests to other political parties. But that is because the interests of major political parties tend to overlap as "compet[itors] for the people's support." *Bost*, 607 U.S. at 77. Movants' interests in accurate voter registration and election results are not restricted to "purely 'ideological' reason[s] for intervention" and give rise to "'direct' and 'substantial' interests" in many election and voter registration cases. *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 308 (5th Cir. 2022). The Fifth Circuit thus reversed a district court's denial of intervention to local and national Republican committees, holding that they had a right to intervene to defend various changes to election laws, even though no other political party was involved in the case. *Id.* That's been true "in 'virtually all' of the recent challenges to Florida's election rules." *See, e.g.*, *Fla. Rising Together v. Byrd,* Doc. 81 at 3, No. 6:24-cv-1682 (M.D. Fla. Mar. 5, 2025). Indeed, the Florida State Conference of the NAACP is no stranger to the RNC's participation. *See Fla. State Conf. of the NAACP v. Lee*, Doc. 43, No. 4:21-cv-187 (N.D. Fla. 2021) (intervention granted).

**II. The motion is timely.**

Despite the NAACP Plaintiffs' attempts to make four months sound like an eternity, courts regularly grant intervention far later. *See Chiles*, 865 F.2d at 1213; *see also Snadon v. SEW-Eurodrive*, 2020 WL 13544217, at *1 (N.D. Ga. Nov. 4, 2020) (motion filed ten months after case removed to federal); *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed one year after answer). In any case, Movants sought intervention immediately after the *amended* complaints, and before any answer or responsive pleading was filed. They did not sit on their hands, and their intervention would not prejudice existing parties.

*First*, that Movants intervened after consolidation and amended pleadings does not show undue delay. The NAACP Plaintiffs acknowledge that the cases were not consolidated until May, and the amended complaints filed on July 22, in which the Plaintiffs added "various NVRA claims." Opp. at 3–4. Movants intervened a mere five days later. Five days cannot be considered "too long to receive notice of the amended complaint, review the amended complaint, consider the ramifications …, consult with counsel, hire Florida counsel, and prepare, review, and file a motion to intervene." *Retina-X Studios, LLC v. ADVAA, LLC,* 303 F.R.D. 642, 653 (M.D. Fla. 2014) (finding intervention timely and not prejudicial when filed "[s]eventy-one days" after an amended complaint). The NAACP Plaintiffs cannot complain that Movants were "slothful" when Movants acted swiftly once the nature and scope of this case changed—and with it, the resulting threat to the Movants' interests.

*Second*, Movants' intervention will not cause any undue delay to the existing parties. Movants complied with Rule 24(c) by "accompan[ying]" their motion with "pleading[s] that sets out the claim or defense for which intervention is sought." So no "undue delay or burden" will result from their need to file responsive pleadings if intervention is granted, as this case is "still at the answer stage." *New Ga. Project*, 2021 WL 2450647, at *2. While the NAACP Plaintiffs fear "unnecessary procedural complexity," Opp. at 16, they fail to identify any such complexity or delay that would be "undue."

And the Eleventh Circuit has made clear that the "convenience" of the parties is irrelevant. *Clark v. Putnam Cty.*, 168 F.3d 458, 462 (11th Cir. 1999). The NAACP Plaintiffs didn't oppose consolidation, even though it added a host of Plaintiffs and claims to the case. *See* J. Mot. to Consol. (Doc. 63). They have no qualms about "complexity" when it increases the firepower on their side. Besides, Movants don't add additional claims, they commit to abiding by the Court's scheduling order, and they will work to reduce duplicative briefing, as they have in other cases. *E.g.*, *Nielsen v. DeSantis*, No. 4:20-cv-236, 2020 WL 6589656, at *26-27 (N.D. Fla. May 28, 2020); *Mi Familia Vota*, Doc. 200, No. 2:22-cv-509. The motion is timely.

**III. Movants overcome the presumption of adequate representation.**

The NAACP Plaintiffs seek to reduce "adequate representation" to mutual defense of a statute. In claiming that Movants set the bar too low, they tilt against binding precedent holding that "the burden of making that showing should be treated as minimal." *Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972). Movants did not "ignore" the presumption of adequate representation, Opp. at 12, rather, as the Eleventh Circuit has held, they overcome it by "present[ing] some evidence to the contrary"—that their interests are different. *Stone v. First Union Corp.*, 371 F.3d 1305, 1311–12 (11th Cir. 2004). Even where similar interests cause two parties to take similar litigation positions, an intervenor's "interests are not adequately represented" unless they hold "identical interests." *Id.* at 1312; *Huff v. Comm'r*, 743 F.3d 790, 800 (11th Cir. 2014). NAACP Plaintiffs baselessly claim that Movants' interests are identical the State's.

Movants listed many interests in their motion. *See* Interv. Mot. at 6-7. "Movants want Republican voters to vote, Republican candidates to compete in fair elections, and Republican resources to be spent wisely and not wasted on diversions." *Id.* In addition, Movants seek to represent eligible voters. Those partisan interests cannot be represented by government actors, as a matter of law. *See* Interv. Mot. at 9–10 (collecting cases). "[T]hough the Committees' interests are not solely ideological,

they are nevertheless incidentally partisan—if for no other reason than that they are brought on behalf of a partisan group, representing its members to achieve favorable outcomes. "Neither the State nor its officials can vindicate such an interest while acting in good faith." *La Union del Pueblo Entero*, 29 F.4th at 309. For example, while Movants and the State are *currently* aligned in their objective—defense of HB 991—it is possible that their non-identical interests will diverge over the implementation of the law, or over the law's effect on non-Republican voters. Movants need only show that "Defendants' representation of their interests, at the very least, *may* be inadequate." *Greene v. Raffensperger*, No. 22-cv-1294, 2022 WL 1045967, at *4 (N.D. Ga. Apr. 7, 2022). The NAACP Plaintiffs also have no answer to the seventy-plus government parties who took no position or did not oppose intervention, which "raise[s] sufficient doubt concerning the adequacy of [their] representation." *U.S. House of Representatives v. Price*, No. 16-5202, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017) (unpublished op.); *accord Utahns for Better Transp. v. DOT*, 295 F.3d 1111, 1117 (10th Cir. 2002).

The NAACP Plaintiffs do not dispute that Movants will plainly "suffer if the Government were to lose this case, or to settle it against [their] interests."' *Mausolf v. Babbitt*, 85 F.3d 1295, 1302–03 (8th Cir. 1996). Zealous defense of HB 991 by the State at this early stage is no guarantee that Movants' interests will be identically represented. *Contra* Interv. Mot. at 14.

**IV. Plaintiffs provide no reason to deny permissive intervention.**

Like "virtually all" Florida courts, this Court may find Rule 24(b) to be the most "efficient" course. *Fla. Rising Together*, Doc. 81 at 3 (granting permissive intervention to RNC and RPOF). As discussed above, Movants' intervention presents no threat of undue prejudice, delay, or complication. *Appleton v. Comm'r*, 430 F. App'x 135, 138 (3d Cir. 2011) ("'Undue' means not normal or appropriate."). They bring "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). While the NAACP Plaintiffs emphasize that a court *may* deny permissive intervention or limit an intervenor's participation, they present no reason why this Court *should* deny

intervention or limit Movants' involvement. *But see Clark,* 168 F.3d at 462 ("convenience" of the parties is irrelevant). And other courts have noted that political committees like Movants "are not marginally affected individuals; they are substantial organizations with experienced attorneys who might well bring perspective that others miss or choose not to provide." *Nielsen*, 2020 WL 6589656, at *26–27. Allowing Movants to intervene, as every other Florida court has, would serve "'the interest of a full exposition of the issues.'" *South Carolina v. North Carolina*, 558 U.S. 256, 272 (2010). This Court should not be the first to stray from that path.

## CONCLUSION

The Court should grant the motion.

Dated: August 17, 2026

Respectfully submitted,

*/s/ Jesus M. Suarez*

Jesus M. Suarez
CONTINENTAL PLLC
245 Alcazar Avenue
Coral Gables, FL 33134
(305) 677-2707
JSuarez@ContinentalPLLC.com

Thomas R. McCarthy
Gilbert C. Dickey
Conor D. Woodfin
Peter Allevato†
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com
peter@consovoymccarthy.com

† *Supervised by principals of the firm admitted to practice in Virginia*

*Counsel for Movants*