**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:26-cv-22257-JB/Torres**

UNIDOSUS, et al.,

*Plaintiffs*,

and

FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, et al.,

*Consolidated Plaintiffs*,

v.

CORD BYRD, in his official capacity as Florida Secretary of State, et al.,

*Defendants*.

---

**STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

The parties fundamentally disagree about what HB 991 does and doesn't do. That dispute affects every NVRA claim in both complaints and, apart from the student-identification claim, the burden side of *Anderson-Burdick*'s balancing test. Secretary Byrd, Executive Director Kerner, and Deputy Secretary Williams therefore explain HB 991's effects on voter registration, citizenship verification, and removal from the voter rolls. Mindful of Local Rule 7.1(a), they do not further address the NAACP Plaintiffs' standalone equal-protection claim, which incorrectly assumes that Florida treats those who use the federal voter registration form differently from those who use the state form and fails to plead discriminatory intent. They also do not further address the Unidos Plaintiffs' claim against DCF Deputy Secretary Williams, which is barred by Eleventh Amendment immunity and fails for lack of Article III standing, or the student-identification claim.

## Argument

**A.** To level set: the issue here isn't whether the State of Florida can verify citizenship for a voter—it plainly can. The NVRA itself provides for the registration of only "eligible applicant[s]." 52 U.S.C. § 20507(a)(1). And Florida, like every other state, requires that voters be U.S. citizens. *Voter Registration Rules*, Vote.Org (2026), https://www.vote.org/voter-registration-rules/; *see also* U.S. Const. art. I, § 2, cl. 1 (allowing states to set the qualifications for "Electors" voting in elections for the U.S. House); U.S. Const. amend. XVII (same for the U.S. Senate).

Nor is the issue how to verify citizenship. There's no serious debate that a state can require documents to establish citizen status. After all, in *Crawford v. Marion County Election Board*, the Supreme Court upheld Indiana's photo identification requirement for voting where some applicants had to produce documentary proof of citizenship to obtain a photo identification. 553 U.S. 181, 198 n.17 (2008); *see also id.* at 192-93 (upholding photo identification requirement, in part, because of the NVRA and finding that the act "indicate[s] that Congress believes that photo identification is one effective method of establishing a voter's qualification to vote").

The issue is when to verify citizenship. Plaintiffs say that verification—documentary proof of citizenship—isn't allowed when submitting a voter registration application because that would make Florida's approach inconsistent with the NVRA. They then say that anything that keeps a person from casting a *regular* ballot also counts as registration. *See* Doc.132 at 2; Doc.133 at 6. This conflation of registration and voting turns the NVRA's structure on its head. It can't be right. If documentary proof of citizenship can't be required when registering to vote, and it can't be required at any point before a person casts a regular (as opposed to provisional) ballot, then it can't be required at all. Prohibiting proof both before registering and before voting would frustrate a state's ability to enforce its voter qualification requirements. That would set the NVRA on a

collision course with the Constitution's Voter Qualifications Clause because the state would be unable to implement its citizenship-eligibility requirement. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 16-17 (2013) (it would "raise serious constitutional doubts" if the NVRA "precluded a State from obtaining the information necessary to enforce its voter qualifications"); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014) ("Certainly an interpretation of the [NVRA's] General Removal Provision [52 U.S.C. § 20507(a)(3)-(4)] that prevents Florida from removing non-citizens would raise constitutional concerns regarding Congress's power to determine the qualifications of eligible voters in federal elections.").

The correct approach is to distinguish registering from the act of voting—casting the ballot itself. Distinguishing registering from voting is also consistent with the NVRA. Congress enacted the NVRA as a "complex superstructure" governing registration to vote—but not the qualifications for voting. *ITCA*, 570 U.S. at 5; *see also* 52 U.S.C. § 20501(b). The NVRA makes available several kinds of registration forms. *See* 52 U.S.C. §§ 20505(a)(1)-(2), 20506(a)(6)(A), 20505(b). Once an "eligible applicant" has been "registered," the "registrant" can still be "removed from the official list of eligible voters" for certain defined reasons—the registrant's request, criminal conviction or mental incapacity, death, or change in residence. 52 U.S.C. § 20507(a)(1), (3)-(4). States must also "conduct a general program" "to remove the names of ineligible voters from the official lists of eligible voters" due to death or a change in the residence of the registrant. 52 U.S.C. § 20507(a)(4). These programs to "systematically remove the names of ineligible voters" must be complete at least 90 days before any "primary or general election for Federal office." 52 U.S.C. § 20507(c)(2)(A). In this way, the "eligible applicant[s]"—meaning citizens of a certain age—are "registered." The voter rolls are then checked to ensure eligibility before voting begins. The NVRA doesn't therefore collapse registration and voting into a single act: a person registers to vote and if

that person remains eligible, that person votes. *Cf.* 52 U.S.C. § 21083(b) (Help America Vote Act requiring first-time voters registering by mail to provide additional identification before voting).

**B.** At the very least then, it follows that a state can require documentary proof of citizenship after a person registers to vote but before that person votes. That's what HB 991 does for a subset of people. Though for most people, no documentary proof is ever required.

People registering with a paper voter registration application or through the online voter registration system provide demographic information (including name, date of birth, Florida driver license or identification card number and last four digits of a Social Security number) and certain affirmations (including one concerning citizenship). Fla. Stat. §§ 97.052(2), 97.0525(2)(b). The demographic information is used to verify that the person is who they claim to be. Fla. Stat. § 97.053(6). Among other things, the information is compared with the information maintained or accessed by DHSMV. Fla. Stat. § 97.057(11)-(12); *see also* Fla. Stat. § 97.057(2)-(4) (option to register directly through DHSMV when getting a license or identification). DHSMV is the Florida agency implementing the federal REAL ID requirement. *See* Fla. Stat. § 322.033(1). It maintains citizenship-related information for those with a Florida driver license or identification card. Fla. Stat. § 322.08(2)(c); 49 U.S.C. § 30301 note (Real ID Act of 2005 § 202(c)(2)(B)); 6 C.F.R. § 37.11(c)(1)(i)-(iv), (c)(1)(vii)-(viii), (g). With the information confirmed by DHSMV, the person is added to the voter rolls and can vote. No documentary proof of citizenship is required.

When the demographic information can't be verified or "if the records of the Department of Highway Safety and Motor Vehicles indicate that the applicant is not a United States citizen or has not provided a document acceptable as evidence of United States citizenship," then "the supervisor of elections *shall* verify the voter's legal status as a United States citizen using available state and federal governmental sources and, if applicable, initiate notice pursuant to s. 98.075(7)."

HB 991 § 4, codified at Fla. Stat. § 97.053(6)(b). Among other things, supervisors have access to the federal SAVE database, "an online service administered by U.S. Citizenship and Immigration Services (USCIS) that provides point in time immigration status and U.S. citizenship information." *About SAVE*, USCIS (2026), https://www.uscis.gov/save/about-save/about-save; *see also* Doc.120-1 at ¶ 5. Once the supervisor confirms citizenship status through SAVE, the person is added to the voter rolls and can vote. No documentary proof of citizenship is required.

Where records from DHSMV, the SAVE database, and other resources prove insufficient, then the applicant "must provide a document acceptable as evidence of United States citizenship." HB 991 § 4, codified at Fla. Stat. § 97.053(6)(a). Still, a provisional ballot remains available. HB 991 § 4, codified at Fla. Stat. § 97.053(6)(a).

Meanwhile, the back-end process continues for election officials: "[t]he [D]epartment [of State] shall identify those *registered* voters who are potentially ineligible based on their legal status regarding United States citizenship," periodically sending relevant information to the local supervisor of elections. HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a) (emphasis added). "[T]he supervisor of the county in which the voter is *registered* must" then take very specific steps before "removal of the *registered* voter's name from the statewide voter registration system." HB 991 § 8, codified at Fla. Stat. § 98.075(7)(a) (emphasis added). There's nothing improper about these ongoing, individualized assessments of people already registered to vote; where necessary, this subset of people can provide documentary proof of citizenship to remain on the voter rolls or vote a provisional ballot and later provide the necessary proof.

Plaintiffs, for their part, overlook all the interlocking provisions of Florida law and hyperfocus on § 97.053(2). That's the wrong approach. Statutes should be read *in pari materia*. *See, e.g.*, *Fla. Dep't of State v. Martin*, 916 So. 2d 763, 768 (Fla. 2005). Plaintiffs' hyperfocus doesn't work,

either. True, § 97.053(2) states that "[a] voter registration application is complete and becomes the official voter registration record of that applicant when all information necessary to establish the applicant's eligibility pursuant to s. 97.041 is received by a voter registration official and verified pursuant to subsection (6)." HB 991 § 4, codified at Fla. Stat. § 97.053(2). But this provision works together with the others concerning citizenship verification through DHSMV and the efforts of supervisors—provisions that negate the need for documentary proof of citizenship.

In the end, HB 991 leaves much unchanged. Voter registration applications are submitted the same way. Documentary proof of citizenship isn't required when registering to vote. It's only required to vote a regular ballot or have the provisional ballot count when citizenship information is unavailable or incorrect in multiple databases. And for those registered to vote, removal from the voter rolls follows the same process as before.

**C.** Plaintiffs argue otherwise by citing to statements from the Governor at the bill signing ceremony and a few legislators during a floor debate. But statements describing a bill as requiring citizenship verification don't answer the legal question at issue: whether that verification serves as a precondition to registration. Regardless, the Governor doesn't speak for the Florida Legislature. *See, e.g.*, *Brnovich v. DNC*, 594 U.S. 647, 689-90 (2021) (legislators aren't agents of others). Nor does a legislator speak for the body. *See, e.g.*, *United States v. O'Brien*, 391 U.S. 367, 384 (1968).

**D.** Plaintiffs also contend that the Secretary's directive providing his position to supervisors on how HB 991 works should be "given zero weight." Doc.133 at 7. But then they spend pages parsing and attacking the directive, making plain that it's central to the case. *See* Doc.132 at 7-9; Doc.133 at 5-7. Nowhere do they dispute the directive's authenticity or content. They simply disagree with its legal assessment. Despite this disagreement, the directive can't be ignored. The Secretary issued it consistent with his duty to "[p]rovide written direction" "to the supervisors of

elections on the performance of their official duties with respect to the Florida Election Code," Fla. Stat. § 97.012(16), and he can "[b]ring and maintain such actions at law or in equity by mandamus or injunction to enforce the performance of any duties of a county supervisor of elections" "with respect to chapters 97 through 102 and 105," Fla. Stat. § 97.012(14). The supervisors are therefore expected to follow the directive to provide a uniform statewide process for post-registration citizenship verification. *Id.*; *see also Byrd v. Smart & Safe Fla.*, No. 1D2026-0145, 2026 WL 184610, at *5 (Fla. 1st DCA Jan. 23, 2026) ("[T]he Secretary had specific statutory authority to provide directions to Supervisors on how they should perform their official duties."), *review denied*, No. SC2026-0255, 2026 WL 658580 (Fla. Mar. 9, 2026); *Pines v. DeSantis*, No. SC2026-0209, 2026 WL 555563, at *1 (Fla. Feb. 27, 2026) ("The Secretary of State is the chief election officer of the state and has the authority to interpret the election laws.").

**E.** The cases Plaintiffs cite don't change the result. Some aren't on point. Others cut against Plaintiffs. One out-of-circuit case is current before the U.S. Supreme Court.

Specifically, Plaintiffs rely on the Sixth Circuit's decision in *United States Student Association Foundation v. Land*, 546 F.3d 373 (6th Cir. 2008), for their argument that HB 991 doesn't "accept and use" the federal form, and their broader point merging the line between registration and voting. But *Land* is neither controlling nor persuasive on these issues. It addressed only whether Michigan's practice of removing voters because a voter identification card was returned as undeliverable violated 52 U.S.C. § 20507(d)—Section 8(d) of the NVRA. *Id.* at 376-77. It reiterated that states may not remove a registrant based on change of residency without meeting Section 8(d)'s removal criteria. *Id.* at 381-82. It never addressed the "accept and use" requirement, recognizing the limited scope of its holding. *Id.* at 381 n.6; *see also Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1272-73 (D. Colo. 2010) (recognizing limited application of

decision in *Land*). And, if anything, *Land* kept Michigan from moving the moment of registration *later* in time—until the point when voters received their voter card. 546 F.3d at 382.

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016), involved a records request under Section 8(i) of the NVRA and didn't address the timing of voter registration. *Id.* at 1335-36. The portion Plaintiffs cite concerned the meaning of "records," not the moment of registration. *See id.* at 1328 n.11.

*Common Cause Indiana v. Lawson*, 937 F.3d 944 (7th Cir. 2019), involved an automatic removal program triggered by a third-party database match with no voter contact. *See id.* at 948-49. The court found the program inconsistent with the NVRA's notice requirements. *Id.* at 959. That holding said nothing about when a voter becomes registered.

*Common Cause/New York v. Brehm*, 344 F. Supp. 3d 542 (S.D.N.Y. 2018), actually supports dismissing Plaintiffs' NVRA claims. New York law would move registered voters to "inactive" status if the local board of elections had information that the voter no longer resided in the precinct. *Id.* at 545-46. "Inactive" status meant two things: the voter "will not appear in the official poll book at the voting precinct on Election Day" and "will be unable to vote using a regular ballot and will be given an affidavit ballot instead." *Id.* at 546 (quotations omitted). Though the board would send a notice to the voter, the "inactive" designation was immediate. *Id.* at 545-46.

Still, the Southern District of New York dismissed the facial challenge to the law under the NVRA. *Id.* at 556. The court rejected the plaintiff's argument that "removal from the 'active' voter list constitutes the 'functional equivalent' of having been removed from 'official list of eligible voters' because 'only voters on the "active" list appear in the "official" poll book on Election Day and only "active" voters are permitted to vote on Election Day using a regular ballot.'" *Id.* at 551. It held that "New York's procedures do not so upset the balance set by Congress between enhancing

voter participation and protecting the integrity of the electoral process as to invalidate as a matter of law the State's decision to manage its voter rolls by maintaining a separate list." *Id.* at 555 (quotation and citation omitted). Nor did "New York's treatment of its official list" "amount to a circumvention of federal law." *Id.* And the requirement that inactive voters use provisional ballots wasn't "inconsistent with the NVRA." *Id.* at 556. In reaching its decision, the court rejected an expansive reading of *Land* that seemingly merged registration with voting. *Id.* at 554; *see also Voice of the Experienced v. Ardoin*, 813 F. Supp. 3d 600, 655-56 (M.D. La. 2025) (in an NVRA challenge, rejecting the argument that "registration and reinstatement are essentially the same").

Plaintiffs also invoke *Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025), *cert. granted*, No. 25-1017. But *MFV* addressed an Arizona regime that singled out certain registrants when an official had "reason to believe" they were non-citizens and then limited them to voting only in federal elections without a full ballot. *Id.* at 714-15. Florida's system is different: HB 991 applies the same verification process to every registrant, regardless of the form used, and every person is entitled to notice and a provisional ballot if citizenship can't be verified prior to voting. *MFV* is also currently before the Supreme Court. *See RNC v. Mi Familia Vota*, No. 25-1017. To the extent *MFV* holds that the NVRA prohibits *any* post-registration verification short of allowing a full ballot, that reading conflicts with *ITCA* and raises constitutional concerns that the Supreme Court identified in *ITCA* and may well address now. *See ITCA*, 570 U.S. at 16-17.

The Unidos Plaintiffs' reliance on *Florida State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1156 (11th Cir. 2008), is similarly misplaced. First, on the facts, *Browning* involved verification of voters' driver license numbers, state identification numbers, and Social Security numbers. *Id.* This information had to be included on the voter registration application and was used to confirm the identity of the voter applicant. *Id.* Second, *Browning* didn't address whether this

verification complied with the NVRA or perform any other analysis under the NVRA. *Id.* at 1159 (explaining that the district court dismissed the plaintiffs' NVRA claim). Rather, the decision addressed whether the verification requirement conflicted with the Help America Vote Act and the Civil Rights Act of 1964 (and concluded there was no conflict). *Id.* at 1167. And while the Eleventh Circuit didn't address the merits of the plaintiffs' NVRA claim, the district court did in a previous order—holding that Fla. Stat. § 97.053(6) didn't conflict with the NVRA and dismissing the plaintiffs' claim. *Fla. State Conf. of the NAACP v. Browning*, No. 4:07-CV-00402, 2007 WL 9697653, at *8 (N.D. Fla. Dec. 18, 2007) (reversed in part on other grounds).

Finally, *Virginia Coalition for Immigrant Rights v. Beals*, 803 F. Supp. 3d 454 (E.D. Va. 2025), remains on point. It involved a claim under the NVRA's "accept and use" provision. *Id.* at 475. There, as here, the plaintiffs alleged that the citizenship verification program interfered with the voter registration process. *See id.* ("Count III alleges that by requiring certain voters to reaffirm their citizenship, Defendants are violating the NVRA's directive that voters need only complete a voter registration form to be registered for federal elections."); *id.* at 477 ("In Plaintiffs' view, Defendants' process creates an unnecessary voter registration requirement in the registration process."). There, as here, the plaintiffs said "that they have stated a claim because they allege that Defendants' program essentially requires applicants to 'complete additional paperwork before allowing them to vote.'" *Id.* at 475; *see also* Doc.132 at 14 (same). And there the court dismissed the claims, concluding that "Plaintiffs do not allege facts demonstrating how Defendants' program is part of the registration process." 803 F. Supp. 3d at 477. This Court should do the same.

**Conclusion**

This Court should grant the motion to dismiss for the reasons above and in Doc.120.

Respectfully submitted,

Dated: September 16, 2026

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Martin C. Wolk (FBN 1065532)
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
mwolk@holtzmanvogel.com
kgordon@holtzmanvogel.com

*Counsel for Florida Secretary of State, Florida Department of Highway Safety and Motor Vehicles Executive Director, and Florida Department of Children and Families Deputy Secretary*

Ashley E. Davis (FBN 48032)
General Counsel
Bilal A. Faruqui (FBN 15212)
Deputy General Counsel
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 South Bronough Street
Tallahassee, FL 32399
(850) 245-6531
ashley.davis@dos.fl.gov
bilal.faruqui@dos.fl.gov
jenna.mclanahan@dos.fl.gov

*Counsel for Florida Secretary of State*

**LOCAL RULE 7.1(c)(2) CERTIFICATION**

In compliance with Southern District of Florida Local Rule 7.1(c)(2), the undersigned certifies that the foregoing does not exceed ten pages.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

**CERTIFICATE OF SERVICE**

I certify that on September 16, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil