**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:26-cv-22257-JB/Torres**

UNIDOSUS, et al.,

*Plaintiffs*,

and

BLACK VOTERS MATTER FUND, et al.,

*Consolidated Plaintiffs*,

v.

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

*Defendants*.
_______________________________________/

**DEFENDANT SECRETARY BYRD'S MOTION TO DISMISS**
**BVM PLAINTIFFS' COMPLAINT**

Secretary of State Cord Byrd moves to dismiss the claims in Black Voters Matter Fund and League of United Latin American Citizens' Complaint, 1:26-cv-26047, Doc.1, for much the same reasons as those in his earlier motion to dismiss and reply in support, Docs.120, 134. BVM Plaintiffs, like the other plaintiff groups, challenge HB 991 based on a false premise. They say that HB 991 "conditions voter registration on documentary proof of citizenship ('DPOC') or the State's ability to independently verify citizenship through government records." 1:26-cv-26047, Doc.1 at ¶ 2. They too compare HB 991 to the law struck down in *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013)—a law that required officials to "reject any application for registration that is not accompanied by satisfactory evidence of United States citizenship." *Id.* at 6.

But HB 991 leaves undisturbed the only citizenship requirement that Florida has long imposed on those registering to vote: a checked box, signed under penalty of law, attesting that the

applicant is a U.S. citizen. Fla. Stat. § 97.053(5)(a)4. Nothing in HB 991 requires the applicant to attach a birth certificate, passport, or any other documentary proof of citizenship when registering to vote. Nothing stops a person from filling out the federal voter registration form. Nor does HB 991 allow election officials to reject a form—state or federal—for lack of documentary proof.

Florida's Secretary of State—the state's chief election officer charged with "[o]btain[ing] and maintain[ing] uniformity in the interpretation and implementation of the election laws," Fla. Stat. § 97.012(1)—confirmed this reading in a directive issued to all Supervisors under Florida Statutes § 97.012(16). Directive 2026-03 states that "HB 991 does not prohibit registration" and that "[p]ursuant to federal and state law, Supervisors of Elections must register every applicant just as you always have." **Exhibit 1** (Directive 2026-03) at ¶¶ 2, 7. It further explains that "HB 991 does not condition registration on an applicant's submission of documentary proof of citizenship along with the voter registration application," but rather "operates post-registration, requiring Supervisors to notify the applicant of potential ineligibility, to allow provisional ballot voting until US citizenship is verified, and to perform removal proceedings (if applicable)." **Exhibit 1** at ¶ 3.

HB 991's burdens thus run to Supervisors—who must check databases, send notices, and administer provisional ballots and removal hearings. Much remains the same for voters. The complaint proceeds as though the law says otherwise and imposes an Arizona-like pre-registration documentary requirement. *See, e.g.*, 1:26-cv-26047, Doc.1 at ¶ 122 (claiming that HB 991 violates the NVRA "[b]y conditioning registration of Federal Form applicants on independent citizenship verification or DPOC beyond the requirements of the Federal Form").

## ***Legal Standard***

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action" and "mere conclusory statements" will not do. *Id.* Nor must this Court accept as true conclusory allegations that specific words as used in the challenged text have a certain meaning when the text is available for the Court's review. *Id.* Even at the motion to dismiss stage, this Court may also consider the Secretary's directive implementing HB 991 through direction to the Supervisors. That's because the directive is a public document issued consistent with the Secretary's statutory obligations and the document's authenticity isn't in dispute. *See, e.g.*, *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (allowing judicial notice of a public document filed with the Securities and Exchange Commission whose authenticity wasn't at issue); *Learning Connections, Inc. v. Kaufman, Englett & Lynd, PLLC*, No. 6:11-CV-00368, 2012 WL 13103015, at *6 (M.D. Fla. Jan. 18, 2012) ("[O]fficial documents from the Secretary of State possess the requisite level of reliability required for a court to take judicial notice." (quotation removed)).

### ***Background***

HB 991 is a comprehensive election reform bill. *See* Ch. 2026-26, Laws of Fla. Plaintiffs challenge a subset of its provisions addressing citizenship verification. *See generally* 1:26-cv-26047, Doc.1 at ¶¶ 48-70. Relevant here are the following:

- The definition of "[d]ocument acceptable as evidence of United States citizenship" as (a) a birth certificate, (b) a passport, (c) a naturalization certificate, (d) a consular report of birth abroad, (e) a Florida driver license or Florida identification card that indicates citizenship, (f) a photo identification issued by the federal government or the state that indicates citizenship, or (g) a federal court order. HB 991 § 1, codified at Fla. Stat. § 97.021(10).

- The requirement that "[i]f the voter registration applicant's or the voter's legal name is different from the name that appears on the document," the applicant or voter must also supply "official legal documentation providing proof of legal name change." HB 991 § 1, codified at Fla. Stat. § 97.021(10).

- A checkbox on the state voter registration form where the applicant acknowledges that submitting false information is a third-degree felony, though the law previously said the form was being completed under penalty of perjury. HB 991 § 2, codified at Fla. Stat. § 97.052(2)(q); *see also* Fla. Stat. § 97.052(2)(q) (2025).

- Whether registering online, at DHSMV, or on paper, the requirement that citizenship automatically be checked through information available from DHSMV. HB 991 § 3, codified at Fla. Stat. § 97.0525(4) (online registration); HB 991 § 4, codified at Fla. Stat. § 97.053(6) (paper registration).

- If citizenship is established, the requirement that "legal status as a United States citizen must be recorded in the statewide voter registration system." HB 991 § 3, codified at Fla. Stat. § 97.0525(4)(b) (online registration); HB 991 § 5, codified at Fla. Stat. § 97.057(11) (paper registrations "as required in s. 97.053" are checked against DHSMV database).

- If citizenship status can't be verified through information from DHSMV, the Supervisors' obligation to verify citizenship "using available state and federal governmental sources." HB 991 § 4, codified at Fla. Stat. § 97.053(6)(b). And if the research is inconclusive, the Supervisors' obligation to provide notice to individuals of what documents will verify their citizenship; the right of an individual to request a hearing; and the right of an individual to cast a provisional vote. HB 991 § 4, codified at Fla. Stat. § 97.053(6).

- The Department of State's obligation to "identify those registered voters who are potentially ineligible based on their legal status regarding United States citizenship by comparing or receiving information from other governmental entities." HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a). Receipt of such information does not itself trigger removal—the Department must "review and make an initial determination as to whether the information is credible and reliable" and notify Supervisors of this information if it's credible and reliable so that the Supervisors can initiate the notice and removal process. HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a), (7)(a).

The Secretary of State, as the state's chief election officer charged with "[o]btain[ing] and maintain[ing] uniformity in the interpretation and implementation of the election laws," Fla. Stat. § 97.012(1), issued a directive to address any misunderstanding among the Supervisors about HB 991, Fla. Stat. § 97.012(16) (allowing same). Directive 2026-03 states that "[s]pecifically, the misinformed Supervisors believe that HB 991 prohibits registration of applicants who have not been

verified as United States citizens, and that this prohibition conflicts with federal law requiring their registration for federal elections." **Exhibit 1** at ¶ 2. "HB 991 does not prohibit registration," the directive makes plain. **Exhibit 1** at ¶ 2. Invoking *ITCA*'s holding that federal law requires a state "to register every applicant to vote in federal elections upon the applicant's submission of a complete application based solely on an affirmation, under penalty of law, that he or she satisfies all eligibility requirements," the directive confirms that "[t]he amendments made by HB 991 do not conflict with federal law." **Exhibit 1** at ¶ 3. "HB 991 does not condition registration on an applicant's submission of documentary proof of citizenship along with the voter registration application," but rather, "the law operates post-registration." **Exhibit 1** at ¶ 3.

Directive 2026-03 then instructs the Supervisors that they "must register every applicant just as you always have." **Exhibit 1** at ¶ 7. Only *after* registration, if DHSMV information indicates the individual's citizenship is unknown or in question, must the Supervisor attempt verification, provide notice, ensure provisional ballot access, and, where non-citizenship is affirmatively indicated, initiate the pre-existing removal process. **Exhibit 1** at ¶ 7.

***Argument***

In their complaint, BVM Plaintiffs ignore the text of HB 991, the broader election code, and the Secretary's directive. They read HB 991 as requiring proof of citizenship *before* someone is registered to vote. Their National Voter Registration Act claims are grounded in this fundamental mistake. Their procedural due process claim overlooks the safeguards that Florida law provides.

**I. Deficient Pre-Suit Notice (Counts III and V)**

First though, the NVRA sets out a specific prerequisite before plaintiffs have a private right of action: "A person who is aggrieved by a violation of [the NVRA] may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). "If the

violation is not corrected within" specified timeframes, "the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 52 U.S.C. § 20510(b)(2). "Although notice is framed here as permissive rather than mandatory, other NVRA provisions indicate that notice is mandatory." *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014). "Courts have consistently interpreted the word 'may' in § 20510(b) as mandatory." *Cromwell v. Kobach*, 199 F. Supp. 3d 1292, 1310 (D. Kan. 2016) (citing cases). For that reason, "[i]n the context of standing to bring a private action pursuant to 52 U.S.C. § 20510(b), 'failure to provide notice is fatal.'" *Bellitto v. Snipes*, 221 F. Supp. 3d 1354, 1362 (S.D. Fla. 2016) (quoting *Scott*, 771 F.3d at 836). Right from the outset, Plaintiffs face a problem because they didn't provide notice for all their NVRA claims. This Court can consider BVM Plaintiffs' notice letter (**Exhibit 2**) at this stage. *See Bellitto*, 221 F. Supp. 3d at 1363 n.2; *Am. Civ. Rts. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 794 (W.D. Tex. 2015).

Once considered, BVM Plaintiffs' letter shows that they failed to provide notice of the claims under Counts III (alleged violation of limits on removal of registered voters, NVRA Section 8(a)(3)-(4)) and Count V (alleged violation of 90-day quiet period, NVRA Section 8(c)(2)(A)). These two counts must therefore be dismissed. *See Bellitto*, 221 F. Supp. 3d at 1362-63 (dismissing under Rule 12(b)(1)); *Am. Civ. Rts. Union*, 166 F. Supp. 3d at 794 n.9 (Rule 12(b)(6) applies); *Cromwell*, 199 F. Supp. 3d at 1310 (Rule 12(b)(6)); *Voice of the Experienced v. Ardoin*, No. CV 23-331, 2024 WL 2142991, at *8 n.3 (M.D. La. May 13, 2024) (Rule 12(b)(6)).

No other plaintiffs challenged HB 991 under NVRA Section 8(a)(3)-(4). *See* Docs.89 at ¶¶ 224-96 (Unidos Plaintiffs), 90 at ¶¶ 150-201 (NAACP Plaintiffs). And though one other plaintiff group alleges that HB 991 violates NVRA Section 8(c)(2)(A), *see* Doc.89 at ¶¶ 287-90, that doesn't satisfy the notice requirement for BVM Plaintiffs.

Notably, this Court has held that notice must be specific to the plaintiff bringing the NVRA claim. In *Bellitto v. Snipes*, two plaintiffs brought NVRA claims: the American Civil Rights Union, a non-profit organization, and Bellitto, a registered voter and member of the ACRU. 221 F. Supp. 3d at 1357. "Regarding Plaintiff Bellitto, Plaintiffs concede[d] that Bellitto did not send notice herself, arguing instead that as a member of the ACRU, Bellitto derives standing through ACRU's notice." *Id.* at 1363. But this Court rejected that piggyback approach and dismissed the plaintiff because "Bellitto did not herself comply with § 20510(b)(1)'s notice prerequisite." *Id.* "Bellitto 'has no basis for relief because [s]he did not file notice.'" *Id.* (alteration in original) (quoting *Scott*, 771 F.3d at 836); *see also Scott*, 771 F.3d at 836.

Nor does the fact that BVM Plaintiffs provided notice as to some alleged NVRA violations mean that they satisfied the notice requirement for all NVRA claims. "[A] plain reading of 52 U.S.C. § 20510 reflects that the pre-suit notice requirement thereunder is violation specific." *Bellitto v. Snipes*, 268 F. Supp. 3d 1328, 1333-34 (S.D. Fla. 2017). "It is not enough that a potential NVRA defendant has general notice that an individual or organization believes it to be in violation of the NVRA before facing litigation." *Id.* at 1334. "[N]otice as to one potential NVRA violation is not the equivalent of notice as to all potential NVRA violations." *Id.*; *see also Voice of the Experienced*, 2024 WL 2142991, at *31 (same); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 716 (S.D. Miss. 2014) ("[T]he statute [52 U.S.C. § 20510] contemplates that an aggrieved person will file a complaint with the chief election official of a State, and, if the violation is not corrected, will file a lawsuit relating to the particular violation about which the plaintiff provided notice.").

**II. Accept and Use Claim (Count I)**

Next, the accept-and-use claim. Section 6(a)(1) of the NVRA requires that a state "accept and use" the federal voter registration form created by the U.S. Election Assistance Commission.

52 U.S.C. § 20505(a)(1). True, states cannot "requir[e] a Federal Form applicant to submit information beyond that required by the form itself." *ITCA*, 570 U.S. at 20. But HB 991 doesn't "conditioning registration of Federal Form applicants on independent citizenship verification or DPOC beyond the requirements of the Federal Form." 1:26-cv-26047, Doc.1 at ¶ 122.

HB 991's citizenship verification provisions say nothing about rejecting a voter registration form. The federal form will continue being accepted. Only *after* a form—federal or state—is submitted are HB 991's provisions triggered. Individuals for whom there is proof of citizenship don't need to do anything more to confirm their citizen status, regardless of how they registered to vote; their "legal status as a United States citizen must be recorded in the statewide voter registration system." HB 991 § 3, codified at Fla. Stat. § 97.0525(4)(b) (online registrations checked against DHSMV database); HB 991 § 5, codified at Fla. Stat. § 97.057(11) (paper registrations checked against DHSMV database). This includes every individual who has provided documentary proof of citizenship to DHSMV under the REAL ID Act, which Florida began implementing in 2010.

Florida's system is thus unlike Arizona's system struck down in *ITCA*. As the Supreme Court explained, "Arizona law require[d] voter-registration officials to 'reject' any application for registration, including a Federal Form, that [wa]s not *accompanied by* concrete evidence of citizenship." 570 U.S. at 5 (emphasis added). What's more, *ITCA* rejected the position that the NVRA's accept-and-use requirement means that everyone who uses the federal form must be allowed to cast a vote: "The NVRA clearly contemplates that not every submitted Federal Form will result in registration." *Id.* at 15. The Supreme Court further warned that "it would raise serious constitutional doubts if a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications." *Id.* at 17.

As noted above, Florida accepts all registration forms, federal and state. Individuals are removed for being non-citizens through a separate, pre-existing notice-and-hearing process. In this way, Florida's post-registration removal regime is like the one upheld in *Virginia Coalition for Immigrant Rights v. Beals*, where the district court dismissed an accept-and-use challenge because "Plaintiffs d[id] not allege that Defendants' program prevented individuals from properly registering to vote in the first instance." 803 F. Supp. 3d 454, 477 (E.D. Va. 2025). After reviewing *ITCA*, the district court reasoned that it wasn't enough to "allege that Defendants' program removes voters from the voter rolls at some indeterminate point after registering." *Id.* Plaintiffs had to show a refusal to accept the federal form. The plaintiffs in *Virginia Coalition* failed to do that. Plaintiffs here have likewise failed to allege an accept-and-use claim—they've failed to show that HB 991 precludes the state's election officials from accepting and using the federal form.

Plaintiffs further assert that, for the same reason, HB 991 violates NVRA Sections 6(a)(2) and 9(b). But for the same reason, this argument fails. HB 991 doesn't add a documentary requirement to any registration form, federal or state. The only textual change that HB 991 makes to the state voter registration form is the addition of a felony-acknowledgment checkbox, one that mirrors what the NVRA already requires on the federal form. *Compare* 52 U.S.C. § 20508(b)(2) (requiring eligibility-related attestation under "penalty of perjury"), *with* HB 991 § 2, codified at Fla. Stat. § 97.052(2)(q) (requiring "[a]cknowledgment, by providing a box for the applicant to check, that it is a third degree felony under state and federal law to falsely swear or affirm" about eligibility).

Because HB 991 doesn't impose an ex-ante documentary-proof condition for registration, it's unlike the regimes in cases like *Mi Familia Vota v. Fontes*, 129 F.4th 691, 704-05 (9th Cir. 2025), and *Fish v. Kobach*, 840 F.3d 710, 717 (10th Cir. 2016). In *Mi Familia Vota*, for example, "federal-form applicants without DPOC" were "registered as federal-only voters," and Arizona

law required that "state-form applications without DPOC must be rejected," with it being "a felony for a county recorder to fail to reject a state-form application." 129 F.4th at 705. HB 991 imposes no similar requirements. BVM Plaintiffs can't plead otherwise.

### III. Eligible Voter Registration Claim (Count II)

Nor can Plaintiffs state a claim under Section 8(a)(1) of the NVRA, 1:26-cv-26047, Doc.1 at ¶¶ 124-28, which provides that "[i]n the administration of voter registration for elections for Federal office, each state shall" "ensure that any eligible applicant is registered to vote in an election" within specified timeframes, 52 U.S.C. § 20507(a)(1). HB 991 requires Supervisors to register every completed, attested application—the very requirement that Section 8(a)(1) imposes.

Unresolved citizenship questions are mostly left for an individualized, post-registration process. That process requires election officials to act only on credible and reliable information, entitles every person to notice and a hearing, and allows every person to cast a provisional ballot. It's the same process that Florida uses for other issues like residency or felony status. It's also the same process that's been tested and approved by the courts for those other issues—and Plaintiffs fail to plausibly allege that this process now violates the NVRA. *See, e.g.*, *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1168-69 (11th Cir. 2008) (rejecting argument that Florida's list verification requirements conflict with registration mandates under the Help America Vote Act); *Fla. State Conf. of the NAACP v. Browning*, No. 4:07-CV-00402, 2007 WL 9697653, at *8 (N.D. Fla. Dec. 18, 2007) (holding that Florida's list verification requirements didn't conflict with the NVRA and dismissing the plaintiffs' claim) (reversed in part on other grounds).

In alleging otherwise, Plaintiffs rely on the Eleventh Circuit's decision in *Charles H. Wesley Education Foundation, Inc. v. Cox*, 408 F.3d 1349 (11th Cir. 2005). The Eleventh Circuit held that "[t]he [NVRA] simply requires that valid registration forms delivered by mail and postmarked

in time be processed." *Id.* at 1354. There's nothing in the Eleventh Circuit's decision that prohibits post-registration verification and removal of ineligible voters. The State continues to process and accept completed federal and state voter registration forms as it did before HB 991.

**IV. Removal Claim (Count III)**

Plaintiffs allege that HB 991 violates NVRA Section 8(a)(3)-(4). 1:26-cv-26047, Doc.1 at ¶¶ 129-32. Section 8(a)(3) states that "the name of a registrant may not be removed from the official list of eligible voters except" "(A) at the request of the registrant," "(B) as provided by State law, by reason of criminal conviction or mental incapacity," or "(C) as provided under paragraph (4)." 52 U.S.C. § 20507(a)(3). Section 8(a)(4) requires that states "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of "(A) the death of the registrant" or "(B) a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

As noted above, this claim should be dismissed because Plaintiffs failed to provide notice under 52 U.S.C. § 20510(b). The claim also fails on the merits. In Plaintiffs' view, states are unable to verify the citizenship status of individuals before they vote. The Eleventh Circuit has already rejected that position, explaining that "[c]ertainly an interpretation of the [NVRA's] General Removal Provision [Section 8(a)(3)-(4)] that prevents Florida from removing non-citizens would raise constitutional concerns regarding Congress's power to determine the qualifications of eligible voters in federal elections." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014). The reason is straightforward: Section 8(a)(3)-(4) only applies to "eligible" voters. 52 U.S.C. § 20507(a)(3)-(4). Non-citizen registrants have never been "eligible."

Indeed, this emphasis on "eligible" voters appears throughout the NVRA. The findings and purposes section of the act begins with the observation that "the right of *citizens of the United States* to vote is a fundamental right." 52 U.S.C. § 20501(a)(1) (emphasis added). One of its

purposes is "to establish procedures that will increase the number of *eligible citizens* who register to vote in elections for Federal office," and another is "to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of *eligible citizens* as voters in elections for Federal office." 52 U.S.C. § 20501(b)(1)-(2) (emphasis added). "In the administration of voter registration for elections for Federal office," the NVRA also charges states with "ensur[ing] that any *eligible applicant* is registered to vote in an election." 52 U.S.C. § 20507(a)(1) (emphasis added). These are just a few examples. The bottom line—the NVRA didn't displace the ability of states to enforce their voter qualifications against *ineligible* persons.

*Bell v. Marinko* explained the difference between removing eligible voters and efforts to remove ineligible voters. 367 F.3d 588 (6th Cir. 2004). There, the plaintiffs were removed as voters from a precinct's voter list on the basis that they weren't permanent residents of the precinct. *Id.* at 589-90. The plaintiffs "argue[d] that the N[VRA] sets forth the exclusive reasons for which a state may remove a voter from a voting precinct's list of registered voters," and asserted that Section 8(a)(3)-(4) provided the exclusive grounds for removing voters. *Id.* at 591. The court rejected the position. Per the court, Section 8(a)(3)-(4) prevents removing *eligible* voters: "In creating a list of justifications for removal, Congress did not intend to bar the removal of names from the official list of persons who were ineligible and improperly registered to vote in the first place," because the NVRA "protects only 'eligible' voters from unauthorized removal." *Id.* at 591-92. The plaintiffs "were improperly registered in the first place, and as a result, the voting rolls were inaccurate," meaning that "[a]s instructed by the N[VRA], the Board necessarily removed their names from the rolls." *Id.* at 592. "Were we to find that the Board's removal of these voters does violate the Act, we would effectively grant, and then protect, the franchise of persons not eligible to vote." *Id.*

The Northern District of Florida made the same point about non-citizens: "section 8(a)(3)'s prohibition on removing a registrant except on specific grounds simply does not apply to an improperly registered noncitizen." *United States v. Florida*, 870 F. Supp. 2d 1346, 1349-50 (N.D. Fla. 2012). The court recognized that "[a] person who was once properly registered can be removed from the voting list under section 8(a)(3) only for specific reasons." *Id.* at 1350. But "none of this applies to removing noncitizens who were not properly registered in the first place." *Id.* "For noncitizens, the state's duty is to maintain an accurate voting list." *Id.*

In *ITCA*, the Supreme Court said unequivocally that it would "raise serious constitutional doubts" if the NVRA "precluded a State from obtaining the information necessary to enforce its voter qualifications." 570 U.S. at 17. Florida, like every other state, requires that voters be citizens. *Voter Registration Rules*, Vote.Org (2026), https://www.vote.org/voter-registration-rules/; *see also* U.S. Const. art. I, § 2, cl. 1 (allowing states to set the qualifications for "Electors" voting in elections for the U.S. House); U.S. Const. amend. XVII (same for the U.S. Senate). HB 991's citizenship verification provisions serve to help Florida enforce its voter qualifications—to confirm that individuals are eligible to vote in the first place. In reading Section 8(a)(3)-(4) to prevent Florida from taking additional steps to confirm voter citizenship, Plaintiffs misinterpret the NVRA.

**V. Uniformity and Nondiscrimination Claim (Count IV)**

HB 991 also doesn't violate Section 8(b)(1)'s requirement that "[a]ny State program or activity" related to voter roll maintenance "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1). Florida imposes the same requirements for everyone when it comes to list maintenance. Fla. Stat. §§ 98.065(1), 98.075(1). The verification requirements apply regardless of whether someone uses the federal or state form. There aren't any distinctions based on race, sex, age, or birthplace. And "[t]he impact of non-verification" applies

"equal[ly] as to all applicants" under the law. *Browning*, 569 F. Supp. 2d at 1257. Florida's regime then isn't like the one in *Mi Familia Vota*, where Arizona singled out certain voters when an official had "reason to believe" that they weren't citizens. 129 F.4th at 714-15.

Allegations about possible database errors or voter-specific burdens don't change the analysis. On its face, read together with other provisions of Florida law, HB 991 requires credible and reliable information that someone might not be a citizen, notice, an opportunity to be heard, a chance to cast a provisional ballot, and a chance to correct errors. No group is targeted or more scrutinized. Plaintiffs' uniformity and nondiscrimination claim should therefore be dismissed.

**VI. 90-Day Systematic List Maintenance Claim (Count V)**

As explained above, the Court should dismiss this count because Plaintiffs didn't provide the requisite notice. The argument fails for other reasons, as well. Section 8(c)(2)(A) of the NVRA provides that "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to *systematically* remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A) (emphasis added). *Arcia* clarifies what this provision prohibits and what it doesn't. 772 F.3d at 1344-48. It explains that the 90-day quiet period reaches systematic removals; removals based on individualized determinations may proceed. *Id.* A program is "systematic" for purposes of the NVRA where it "d[oes] not rely upon individualized information or investigation to determine which names from the voter registry to remove" but instead "use[s] a mass computerized data-matching process to compare the voter rolls with other state and federal databases." *Id.* at 1344.

HB 991 doesn't allow for systematic mass removal. Citizenship is verified for each individual application, whether it's a new registration or an update to an existing one, based on credible and reliable information such as data from DHSMV. HB 991 §§ 3-5, codified at Fla. Stat.

§§ 97.0525(4)(c), 97.053(6), 97.057(11). In the case of a previously registered voter, only after an initial assessment by the Department of State is the registration sent to the relevant Supervisor of Elections for further action. HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a). In all cases, the Supervisor must notify the voter, allow the voter to respond, hold a hearing when requested, and make an individualized final determination before removal. HB 991 § 8, codified at Fla. Stat. § 98.075(7)(a). "All determinations of eligibility must be based on a preponderance of the evidence." Fla. Stat. § 98.075(7)(b)1. An erroneously removed name can be restored even within 90 days of an election. Fla. Stat. § 98.081(2). This individualized process requires Supervisors to make use of all available state and federal sources to verify citizenship—there's no mass, automatic removal that violates Section 8(c)(2)(A). *See* HB 991 § 4, codified at Fla. Stat. § 97.053(6)(b); **Exhibit 1** at ¶¶ 5, 7. It stands in contrast to a program that "involves little more than comparing [database] lists against the voter rolls." *Va. Coal.*, 803 F. Supp. 3d at 473. So this NVRA claim, like the others, should be dismissed. *Cf. DHS v. League of Women Voters*, No. 26A308, slip op. at 6 (U.S. Sept. 25, 2026) ("Federal Government" may use the SAVE database "to conduct *individualized* inquiries, which are permitted under federal law" within 90 days of an election).

**VII. Procedural Due Process Claim (Count VI)**

Lastly, BVM Plaintiffs' procedural due process claim. They allege a claim based on the provisions in HB 991 that require the Department of State to "identify those registered voters who are potentially ineligible based on their legal status regarding United States citizenship" and direct Supervisors of Elections to initiate notice and removal procedures for those voters. HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a), (7)(a). Such a claim "requires a plaintiff to prove three elements: '(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'" *Catron v. City of St. Petersburg*, 658 F.3d 1260,

1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). "[D]ue process is a flexible concept that varies with the particular circumstances of each case." *Worthy v. Phenix City*, 930 F.3d 1206, 1223 (11th Cir. 2019) (quoting *Grayden*, 345 F.3d at 1232). So, "to determine the requirements of due process in a particular situation," courts apply the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Worthy*, 930 F.3d at 1223 (quoting *Grayden*, 345 F.3d at 1232-33). That requires consideration of three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* (quoting *Mathews*, 424 U.S. at 335).

As an initial matter, BVM Plaintiffs failed to plead facts as to the specific factors from *Mathews*. *See* 1:26-cv-26047, Doc.1 at ¶¶ 150-57. Their conclusory claim should be dismissed. *See Iqbal*, 556 U.S. at 678 ("mere conclusory statements" should be dismissed).

Next, the balancing test from *Mathews*. The right to vote—relevant to the first factor—certainly qualifies as an important interest. Enforcing the State's eligibility requirements—relevant to the third factor—also qualifies as an important and even a "compelling interest." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). The procedural due process claim then turns on the second factor. Here, the focus is on "the procedures used." *Worthy*, 930 F.3d at 1223 (quoting *Mathews*, 424 U.S. at 335). "The fundamental requisite of due process of law is the opportunity to be heard." *Id.* at 1224 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). The hearing "must be at a meaningful time and in a meaningful manner." *Id.* (quoting *Goldberg*, 397 U.S. at 267); *see also Catron*, 658 F.3d at 1266 ("The Due Process Clause requires 'that a deprivation of life, liberty or property be

preceded by notice and opportunity for hearing appropriate to the nature of the case.'" (internal quotation omitted) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985))).

The procedures used to remove a person from Florida's voter rolls are long and thorough. They ensure that more than adequate process is afforded to avoid depriving a citizen of the right to vote. They include the following:

- The Department of State must "identify those registered voters who are potentially ineligible based on their legal status regarding United States citizenship by comparing or receiving information from other governmental entities." HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a).

- "Upon receipt of information from such other governmental entities indicating a voter may be ineligible based on his or her legal status regarding United States citizenship," the Department must "review and make an initial determination as to whether the information is credible and reliable." HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a).

- "If the department determines that the information is credible and reliable," the Department notifies the relevant Supervisor of Elections for the voter in question and provides a copy of the supporting documentation indicating the voter's potential ineligibility. HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a).

- "Upon receipt of the notice that the department has made a determination of initial credibility and reliability," the Supervisor must "[n]otify the registered voter of his or her potential ineligibility by mail within 7 days after receipt of notice or information." HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a), (7)(a)1.

- As relevant here, the notice to the voter must include the following: "[a] statement of the basis for the registered voter's potential ineligibility and a copy of any documentation upon which the potential ineligibility is based," "[a] statement that failure to respond within 30 days after receipt of the notice may result in a determination of ineligibility and in removal of the registered voter's name from the statewide voter registration system," "[a] return form that requires the registered voter to admit or deny the accuracy of the information underlying the potential ineligibility," "[a] statement that, if the voter is denying the accuracy of the information underlying the potential ineligibility, the voter has a right to request a hearing for the purpose of determining eligibility," "[i]nstructions for the registered voter to contact the supervisor of elections of the county in which the voter is registered if assistance is needed in resolving the matter," "[a] list of the documents acceptable as evidence

of United States citizenship," and a statement that the voter will be required to vote a provisional ballot until a final determination of eligibility is made and that the voter can have the provisional ballot counted by providing evidence that the voter is eligible to vote within two days after the election. HB 991 § 8, codified at Fla. Stat. § 98.075(7)(a)1.

- If the voter doesn't respond to the notice, the Supervisor must make a final determination of the voter's eligibility within seven days after expiration of the voter's time to respond. The Supervisor must notify the voter of the Supervisor's determination and action. HB 991 § 8, codified at Fla. Stat. § 98.075(7)(a)3.

- If a voter responds to the notice and denies the information underlying the potential ineligibility but doesn't request a hearing, the Supervisor must review the evidence and make a determination of eligibility no later than thirty days after receiving the response from the voter. The Supervisor must notify the voter of the Supervisor's determination and action and that the voter has the right to appeal a determination of ineligibility pursuant to Florida Statutes § 98.0755. HB 991 § 8, codified at Fla. Stat. § 98.075(7)(a)5.

- If a voter requests a hearing, within seven days after receiving the voter's request, the Supervisor must send notice to the voter to attend a hearing at a time and place specified in the notice. The Supervisor must hold the hearing no later than thirty days after issuing the notice of the hearing. The voter can request an extension upon showing good cause as to why the voter is unable to attend the scheduled hearing. HB 991 § 8, codified at Fla. Stat. § 98.075(7)(a)5.

- The Supervisor must make a determination of eligibility within seven days of the hearing. The Supervisor must notify the voter of the Supervisor's determination and action and that the voter has the right to appeal a determination of ineligibility pursuant to Florida Statutes § 98.0755. HB 991 § 8, codified at Fla. Stat. § 98.075(7)(a)5.; *see also* 1:26-cv-26047, Doc.1 at ¶ 66 (explaining that "[a] voter may appeal an adverse eligibility determination to circuit court, and the appeal operates as a supersedeas and is tried de novo").

- "All determinations of eligibility must be based on a preponderance of the evidence." Fla. Stat. § 98.075(7)(b)1.

- If at any time the voter provides evidence of citizenship, the Supervisor must record the voter's citizen status. HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a).

Plaintiffs nevertheless state that HB 991 "fails to ensure that the affected registered voter receives fair pre-deprivation notice of potential removal for alleged non-citizenship." 1:26-cv-

26047, Doc.1 at ¶ 154. That just isn't true. From the Department's initial determination of whether information is "credible and reliable," to the notice and hearing for the voter, to the option to appeal any adverse decision to the circuit court, Florida law provides meaningful procedures before a registered voter is removed. *Cf. Catron*, 658 F.3d at 1265 (finding a procedural due process violation where "no formal procedures have been set out by which the recipient of a trespass warning may challenge the basis of the warning or the terms of the warning").

Plaintiffs further allege that HB 991 violates due process because it "allows a voter's registration status and ability to cast a regular ballot to be adversely affected before the State has established the registrant's ineligibility." 1:26-cv-26047, Doc.1 at ¶ 155. Even if true, "[t]he government must provide the required notice and opportunity for a hearing 'at a meaningful time and in a meaningful manner,'" and "notice and hearing may be postponed until after the deprivation has occurred." *Catron*, 658 F.3d at 1266 (quoting *Mathews*, 424 U.S. at 333); *see also Mathews*, 424 U.S. at 343 (not "depart[ing] from the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action").

The hearing process for individuals subject to potential removal isn't necessarily post-deprivation, either. The Department has an ongoing duty to check citizenship. HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a). When a Supervisor receives information that a voter might not be eligible, there are statutory timeframes within which the Supervisor must notify the voter, hold a hearing, and determine eligibility. HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a), (7)(a). In other words, the process of confirming the voter's eligibility follows timeframes designed to allow eligible voters to cast a regular ballot in any upcoming election.

Plaintiffs also claim that it's a procedural due process violation that "the same Supervisor who administers the statutory removal process issues notice, receives the voter's response,

conducts any requested hearing, and makes the final eligibility determination." 1:26-cv-26047, Doc.1 at ¶ 153. First, Plaintiffs provide no authority for the argument that Supervisors of Elections, the officials "responsible for administering federal and state elections and maintaining voter registration records within their respective counties," 1:26-cv-26047, Doc.1 at ¶ 37, shouldn't be the ones to issue notices, conduct hearings, and make decisions on voter eligibility. Second, Supervisors aren't the only officials with a role in this process. The Department of State helps determine whether information that a voter might not be a citizen is "credible and reliable." HB 991 § 8, codified at Fla. Stat. § 98.075(6)(a). At the other end, if the Supervisor's determination is adverse to the voter, the voter can appeal to Florida trial court for a de novo trial. HB 991 § 8, codified at Fla. Stat. § 98.075(7)(a)5. So, the Department of State and the state's judiciary are also involved.

In sum, BVM Plaintiffs cannot and do not allege that the procedures at issue are insufficient. Their procedural due process claim thus fails as a matter of law. *See Catron*, 658 F.3d at 1267 ("[W]e accept—even without the aid of a factual record—that some expense and burden would probably arise as a result of additional procedures to allow challenges to the receipt of a trespass warning."); *Mathews*, 424 U.S. at 347 ("We only need say that experience with the constitutionalizing of government procedures suggests that the ultimate additional cost in terms of money and administrative burden would not be insubstantial.").

***Conclusion***

For the foregoing reasons, this Court should dismiss the claims. Plaintiffs didn't give the required notice for two of their NVRA claims. The complaint otherwise rests on a version of HB 991 that doesn't exist, claims of unequal treatment that don't follow from HB 991, and an oversight of the procedural safeguards that HB 991 provides for voters flagged as potential non-citizens.

Respectfully submitted,

Dated: October 2, 2026

Ashley E. Davis (FBN 48032)
General Counsel
Bilal A. Faruqui (FBN 15212)
Deputy General Counsel
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 South Bronough Street
Tallahassee, FL 32399
(850) 245-6531
ashley.davis@dos.fl.gov
bilal.faruqui@dos.fl.gov
jenna.mclanahan@dos.fl.gov

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Martin C. Wolk (FBN 1065532)
HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
mwolk@holtzmanvogel.com
kgordon@holtzmanvogel.com

*Counsel for Florida Secretary of State*

**LOCAL RULE 7.1(c)(2) CERTIFICATION**

In compliance with Southern District of Florida Local Rule 7.1(c)(2), the undersigned certifies that the foregoing does not exceed twenty pages.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

**CERTIFICATE OF SERVICE**

I certify that on October 2, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil