# Exhibit 2

SPLC FLORIDA

Southern Poverty Law Center
2 South Biscayne Boulevard
Suite 3750
Miami, FL 33131
splcenter.org

May 15, 2026

**VIA EMAIL & CERTIFIED MAIL**

Hon. Cord Byrd
Florida Secretary of State
R.A. Gray Building
500 South Bronough Street
Tallahassee, Florida 32399
SecretaryofState@DOS.MyFlorida.com

**Re: Notice of Florida's Non-Compliance with the National Voter Registration Act from Enactment of Florida House Bill 991**

Dear Secretary of State Byrd:

On behalf of Black Voters Matter, Harriet Tubman Freedom Fighters, the League of United Latin American Citizens, and similarly situated individuals, the undersigned write regarding House Bill 991 ("HB 991"), which was signed into law by Governor Desantis on April 1, 2026. *See* Ch. 2026-26, Laws of Fla. **Pursuant to 52 U.S.C. § 20501(b), this letter serves as notice that the provisions of HB 991 requiring DPOC to confirm eligibility to register and vote violates Sections 5-6, and 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20505, 20507- 20508.**

As described below, HB 991 imposes unlawful documentary proof-of-citizenship ("DPOC") requirements, conditions registration on database verification, and establishes a systematic voter removal program based on unreliable data. We urge the State to refrain from implementing or enforcing these provisions because, among other reasons, denying or delaying registration based on the absence of database confirmation, requiring DPOC beyond sworn attestation, and initiating removals based on database "matches" would violate the NVRA. The NVRA requires that eligible applicants be registered upon submission of a valid application and prohibits list maintenance programs that are not reasonable, uniform, and nondiscriminatory.

**A. HB 991 Violates the NVRA's "Accept and Use" Requirement for the Federal Form.**
*(52 U.S.C. §§ 20505, 20508(b))*

The NVRA establishes a uniform baseline for voter registration in federal elections. Central to that framework is the requirement that states "accept and use" the Federal Form, which requires applicants to attest, under penalty of perjury, that they meet all eligibility requirements, including citizenship and residence. 52 U.S.C. § 20505, § 20508(b). As *Arizona v. Inter Tribal Council of Arizona, Inc.* makes clear, this attestation requirement is exclusive: the NVRA "forbids States to demand that an applicant submit additional information beyond that required by the Federal

SPLC FLORIDA

Southern Poverty Law Center
2 South Biscayne Boulevard
Suite 3750
Miami, FL 33131
splcenter.org

Form." 570 U.S. 1, 15 (2013) ("*ITCA*"). Thus, the NVRA does not permit states to impose additional DPOC requirements in connection with Federal voter registration beyond the sworn statement required by the Federal Form.[1]

Sections 4 and 5 of HB 991 conflict with this federal mandate by imposing a layered DPOC regime that conditions voter registration on verification through state records and, where those records are deemed insufficient, the production of additional documentation. Although HB 991 does not expressly prohibit the use of the Federal Form itself, the statute effectively refuses to accept the Federal Form's sworn attestation as sufficient unless the applicant's citizenship can also be confirmed through state records or supplemental documentary proof. In this way, HB 991 imposes an additional citizenship-verification requirement beyond the attestation mandated by federal law.

Section 4, amending Fla. Stat. § 97.053, requires any applicant whose record is flagged as potentially being a non-citizen cannot complete the registration process unless they provide documentary proof of U.S. citizenship in a form acceptable to the State. In practical terms, this means that even applicants who truthfully attest to their eligibility under penalty of perjury are denied registration unless they can affirmatively resolve any discrepancy or gap in the State's records with additional documentation.

Section 5, amending Fla. Stat. § 97.057, operationalizes this regime by requiring the Florida Department of Highway Safety and Motor Vehicles (DHSMV) to transmit and maintain data regarding individuals' citizenship status and the type of documentation provided in the statewide voter registration system. While the State may coordinate with DHSMV for administrative and list-maintenance purposes, the NVRA does not permit Florida to treat the absence of matching citizenship information in state databases as a basis to withhold or deny registration from applicants who have already satisfied the Federal Form's attestation requirement.

By requiring applicants to produce or verify DPOC beyond the sworn attestation mandated by federal law, HB 991 imposes an additional documentary proof requirement that the NVRA does not allow. *ITCA* at 20; *Kobach v. U.S. Election Assistance Com'n*, 772 F.3d 1183, 1194 (10th Cir. 2014); *League of Women Voters of United States v. Newby*, 838 F.3d 1, 14-15 (D.C. Cir. 2016). Accordingly, because the NVRA requires states to "accept and use" the Federal Form without

[1] The NVRA'S requirements here also apply equally to the State's mail registration form. The State form must mirror the Federal Form's requirements and may request only that information necessary to enable election officials to assess an applicant's eligibility and administer the registration process. This information must also be provided under penalty of perjury. 52 U.S.C. § 20508(b). We note that Louisiana currently maintains a unitary voter registration system; therefore, the NVRA's requirements in connection with the registration of voters for Federal office apply equally to the registration of voters for State and local office.

SPLC FLORIDA

Southern Poverty Law Center
2 South Biscayne Boulevard
Suite 3750
Miami, FL 33131
splcenter.org

imposing additional DPOC requirements, Section 4 of HB 991 is preempted insofar as it concerns the registration of voters for Federal office.

**B. HB 991 Unlawfully Conditions Registration and Removal on Citizenship Verification.** *(52 U.S.C. § 20507)*

The NVRA requires states to ensure that "any eligible applicant is registered to vote" upon timely receipt of a valid voter registration application. 52 U.S.C. § 20507(a)(1). Courts have recognized that the NVRA governs how states process voter registration applications and preempts inconsistent state requirements. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005).

HB 991 conflicts with that mandate by conditioning registration on database confirmation of citizenship documentation and authorizing election officials to delay or deny registration when such confirmation cannot be obtained. See HB 991 §§ 3-4 (amending Fla. Stat. §§ 97.0525, 97.053). Under the law, an applicant who submits a complete application and attests to citizenship under penalty of perjury may nonetheless be denied or delayed registration based solely on the absence of a database match.

That framework is incompatible with Section 8(a)(1) of the NVRA. HB 991 substitutes the absence of database confirmation for evidence of ineligibility and thereby unlawfully shifts the burden of proving ineligibility from the State to the applicant. The absence of a database match is not evidence of ineligibility, particularly because citizenship databases are frequently incomplete or inaccurate, especially for naturalized citizens.[2]

Accordingly, HB 991 is preempted to the extent it authorizes the denial or delay of registration for otherwise eligible applicants who have submitted valid voter registration applications and attested to their citizenship status under penalty of perjury, in compliance with the NVRA.

HB 991 extends this same defect into voter list maintenance and removal procedures. Section 8 of the NVRA permits removal only through prescribed procedures based on reliable evidence of ineligibility and requires that list maintenance programs be "reasonable, uniform, and nondiscriminatory." 52 U.S.C. § 20507(a)(4), (b)(1). HB 991 departs from these requirements by creating a centralized, database-driven system for identifying and removing voters based on purported indicators of non-citizenship. A key defect in HB 991 is that it treats the absence of DPOC in government databases as sufficient evidence to initiate voter removals. The NVRA does not permit that. Section 8 allows removal only on the basis of reliable evidence that a registrant is ineligible, and it does not authorize states to presume non-citizenship from

[2] U.S. Comm'n on Civil Rights, *An Assessment of Minority Voting Rights Access in the United States* 154 (2018), https://www.usccr.gov/files/pubs/2018/Minority_Voting_Access_2018.pdf ("SAVE is not a comprehensive list of U.S. citizens . . . [,] is not updated to include all naturalized citizens, and it does not include [all] derivative citizens born to U.S. parents outside the country.").

SPLC FLORIDA

Southern Poverty Law Center
2 South Biscayne Boulevard
Suite 3750
Miami, FL 33131
splcenter.org

incomplete or inconclusive records. *See* 52 U.S.C. § 20507(a)(3)-(4), (b). Yet HB 991 substitutes lack of verification for proof of ineligibility.

That inversion is especially problematic because the databases on which HB 991 relies, including DHSMV records and jury disqualification lists, are not citizenship registries and are well known to contain incomplete, outdated, or inaccurate information, particularly for naturalized citizens. A voter may therefore be flagged not because the State has evidence that the voter is a noncitizen, but because the State cannot locate DPOC in its chosen records systems. The NVRA does not permit removal programs built on that premise.

The problem is compounded by the reality that many eligible voters may not possess readily available DPOC or may face substantial difficulty obtaining replacement records. Naturalized citizens, elderly voters, low-income voters, and voters born outside institutional medical settings are particularly likely to encounter gaps in documentary records or inconsistencies across government databases. HB 991 therefore risks subjecting eligible voters to removal procedures not because they are ineligible, but because they cannot readily produce or be matched to documentary records the State deems sufficient.

Congress enacted Section 8 of the NVRA to prevent precisely these kinds of error-prone purge practices, which risk removing eligible voters based on unreliable matching criteria rather than individualized evidence of ineligibility. For these reasons, HB 991 establishes a systematic voter purge program that is neither reasonable, uniform, nor nondiscriminatory, and that relies on mechanisms fundamentally incompatible with the individualized safeguards required by Section 8 of the NVRA.

********************

For all these reasons, HB 991 violates the NVRA. As Florida's Secretary of State, you are the State's Chief Election Officer, Fla. Stat. § 97.012(7), and as such, you are responsible for ensuring Florida's compliance with the NVRA, *see* 52 U.S.C. § 20509. This letter constitutes notice pursuant to 52 U.S.C. § 20510(b) that your enforcement of HB 991's DPOC provision to NVRA-mandated methods of registration and list maintenance will place you in violation of 52 U.S.C. §§ 20505, 20507- 20508. And county election officials who enforce provisions of HB 991 by immediately removing voters without complying with Section 8(d)'s safeguards are also violating the NVRA. If this violation is not corrected within 90 days, the undersigned may seek declaratory or injunctive relief to remedy the violation. *See* 52 U.S.C. 20510(b)(2).

We are prepared to meet with you and other officials at your earliest convenience. Thank you very much for your attention to this matter.

SPLC FLORIDA

Southern Poverty Law Center
2 South Biscayne Boulevard
Suite 3750
Miami, FL 33131
splcenter.org

Sincerely,

*/s/ Matletha Bennette*
Bradley E. Heard, Deputy Legal Director
Jack Genberg, Senior Supervising Attorney
Matletha Bennette, Senior Staff Attorney
Jennifer Thelusma, Senior Staff Attorney
Southern Poverty Law Center
PO Box 10788
Tallahassee, FL 32302-2788
bradley.heard@splcenter.org
jack.genberg@splcenter.org
matletha.bennette@splcenter.org
jennifer.thelusma@splcenter.org

*/s/ Andrew Warren*
Normal L. Eisen, Executive Chair
Andrew Warren, Deputy Legal Director
Democracy Defenders Fund
600 Pennsylvania Ave SE, Suite 15180
Washington, D.C. 20003
Norman@democracydefenders.org
Andrew@democracydefenders.org