IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BLACK VOTERS MATTER FUND, et al.,

Plaintiffs,

FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, et al.,

and

UNIDOSUS, et al.,

Consolidated Plaintiffs,

v.

CORD BYRD, in his official capacity as Florida Secretary of State, et al.,

Defendants.

Consolidated Case No. 1:26-cv-22257-JB

**BLACK VOTERS MATTER PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SECRETARY BYRD'S MOTION TO DISMISS**

## TABLE OF CONTENTS


**INTRODUCTION** **1**

**FACTUAL BACKGROUND** **2**

**ARGUMENT** **3**

I. PLAINTIFFS HAVE SATISFIED THE NVRA'S PRE-SUIT NOTICE REQUIREMENT 3

A. Plaintiffs' May 15, 2026 notice letter provided notice of the Section 8(a)(3)–(4) claim (Count III) 3

B. Under the unique circumstances of this case, Plaintiffs are not required to give notice of the NVRA Section 8(c)(2)(A) claim (Count V). 4

C. Moreover, the NVRA's notice requirement does not warrant dismissal of Plaintiffs' claims at this late stage of the election cycle. 6

II. PLAINTIFFS PLAUSIBLY ALLEGE THAT HB 991 VIOLATES THE NVRA 6

A. HB 991 conditions completed registration on citizenship verification despite Defendant's contrary characterization. 6

B. Count I plausibly states a claim under the Federal Form acceptance requirement and the State Form criteria. 8

C. Count II plausibly alleges that HB 991 prevents timely registration of eligible applicants. 10

D. Count III plausibly challenges removal of eligible citizens on grounds the NVRA does not permit. 11

E. Count IV plausibly alleges nonuniform and discriminatory list maintenance. 13

F. Count V plausibly alleges a systematic removal program subject to the NVRA's 90-day prohibition. 14

III. COUNT VI PLAUSIBLY ALLEGES CONSTITUTIONALLY INADEQUATE PROCEDURE BEFORE ELIGIBLE CITIZENS LOSE THEIR RIGHT TO VOTE 15

A. The Complaint alleges facts supporting the Mathews factors without needing to plead them as separate elements. 15

B. Initial reliability review and a preponderance standard do not resolve the pleaded risk of erroneous deprivation. 16

C. Plaintiffs plausibly allege that meaningful process must precede the loss of a countable ballot. 18

D. HB 991 permits voting restrictions before the eligibility proceeding concludes. 19

E. The Supervisors' combined functions must be assessed with the other alleged procedural defects 20

**CONCLUSION** **21**

## TABLE OF AUTHORITIES

### CASES

*Addington v. Texas*, 441 U.S. 418 (1979) ........ 17

*Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014) ........ 13, 14

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ........ 8, 9, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 3

*Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833 (6th Cir. 1997) ........ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 3

*Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004) ........ 12

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999) ........ 3

*Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011) ........ 15, 17

*Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349 (11th Cir. 2005) ........ 11

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602 (1993) ........ 20

*Dep't of Homeland Sec. v. League of Women Voters*, No. 26A308, slip op. (U.S. Sept. 25, 2026) ........ 15

*Echols v. Lawton*, 913 F.3d 1313 (11th Cir. 2019) ........ 3

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276 (11th Cir. 2007) ........ 3

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) ........ 10

*Fla. State Conf. of NAACP v. Browning*, 569 F. Supp. 2d 1237 (N.D. Fla. 2008) ........ 14

*Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ........ 11

*Fuentes v. Shevin*, 407 U.S. 67 (1972) ........ 18, 20

*Ga. State Conf. of NAACP v. Kemp*, 841 F. Supp. 2d 1320 (N.D. Ga. 2012) ........ 5

*In re Murchison*, 349 U.S. 133 (1955) ........ 20

*Jud. Watch, Inc. v. King*, 993 F. Supp. 2d 919 (S.D. Ind. 2012) .................................................... 6

*Mathews v. Eldridge*, 424 U.S. 319 (1976)................................................................ 16, 18

*Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025), cert. granted sub nom. *Republican Nat'l Comm. v. Mi Familia Vota*, 146 S. Ct. 2799 (2026) ........................................................ 10, 13

*Project Vote v. Blackwell*, 455 F. Supp. 2d 694 (N.D. Ohio 2006) .............................................. 13

*Reynolds v. Sims*, 377 U.S. 533 (1964)........................................................................... 17

*Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2001) ............................... 16

*Rosebud Sioux Tribe v. Barnett*, 603 F. Supp. 3d 783 (D.S.D. 2022) ............................................ 6

*Santosky v. Kramer*, 455 U.S. 745 (1982) ....................................................................... 17

*Self Advoc. Solutions N.D. v. Jaeger*, 464 F. Supp. 3d 1039 (D.N.D. 2020)............................... 19

*Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006) ........................................................... 16

*U.S. Student Ass'n Found. v. Land*, 546 F.3d 373 (6th Cir. 2008) ................................................. 8

*United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012)......................................... 12, 13

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) ......................................... 18

*Va. Coal. for Immigrant Rights v. Beals*, 803 F. Supp. 3d 454 (E.D. Va. 2025) ....................... 9, 15

*Voice of the Experienced v. Ardoin*, 813 F. Supp. 3d 600 (M.D. La. 2025) .................................. 6

*Voter Reference Found., LLC v. Torrez*, 727 F. Supp. 3d 1014 (D.N.M. 2024) ............................. 6

*Zinermon v. Burch*, 494 U.S. 113 (1990) ........................................................................ 18

**STATUTES**

52 U.S.C. § 20505(a)(1)........................................................................................ 8

52 U.S.C. § 20507(a)(3)........................................................................................ 4

52 U.S.C. § 20507(a)(3)–(4) ...................................................................................4, 11

52 U.S.C. § 20507(b)(2) ........................................................................................ 12

52 U.S.C. § 20507(c)(2)(A) .................................................................................... 14

52 U.S.C. § 20510(b)(1)–(2)..................................................................................... 3

52 U.S.C. § 20510(b)(2) .......................................................................................... 4

52 U.S.C. § 20510(b)(3) .......................................................................................... 6

H.B. 991, 2026 Leg., Reg. Sess. (Fla. 2026) ................................................................ passim

Fla. Stat. § 97.0525 ................................................................................................ 2

Fla. Stat. § 97.053(2)......................................................................................... 7, 10

Fla. Stat. § 97.053 .......... 2
Fla. Stat. § 97.053(6).......... 7
Fla. Stat. § 97.053(6)(a) .......... 7
Fla. Stat. § 97.057 .......... 2
Fla. Stat. § 98.065(5).......... 15
Fla. Stat. § 98.075 .......... 2
Fla. Stat. § 98.075(7)(a)1.b. .......... 19
Fla. Stat. § 98.093 .......... 2

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 3

Plaintiffs Black Voters Matter Fund and League of United Latin American Citizens ("BVM Plaintiffs") file this opposition to Defendant's Motion to Dismiss. *See* ECF No. 146 ("Mot.").

**INTRODUCTION**

Defendant's motion rests on a reading of HB 991 that its plain text does not support. He argues that the law leaves registration unchanged and merely verifies citizenship after registration. But calling an applicant "registered" does not change the practical effect of barring that applicant from casting a countable ballot. As alleged in the Complaint, HB 991's plain text conditions the completion of voter registration on citizenship verification, requires eligible citizens whose citizenship the State cannot confirm to provide additional proof, and consequently prevents eligible citizens from casting a countable ballot if they cannot provide that proof in time for the election. Neither Defendant's *post hoc* framing nor his Directive defeats Plaintiffs' plausible allegations.

The motion likewise fails to answer Plaintiffs' allegations that HB 991's documentary proof of citizenship ("DPOC") and list maintenance requirements violate the National Voter Registration Act ("NVRA"). HB 991's DPOC requirements base voter removal on a faulty premise: failure to verify citizenship does not establish noncitizenship. Even a facially neutral DPOC program can and will disproportionately burden naturalized citizens. Moreover, a systematic database review does not become individualized simply because officials send notices or offer hearings. Those procedures offer little protection if an eligible voter's ballot goes uncounted before the eligibility determination is complete.

Plaintiffs provided the notice the NVRA requires, identifying the challenged practices and affording Defendant an opportunity to correct them. His notice objections supply no basis for dismissal. The Complaint plausibly alleges that HB 991 violates the NVRA and denies eligible citizens meaningful process before they lose their votes. The Court should deny the motion.

## FACTUAL BACKGROUND

Florida already requires voter registration applicants to attest to citizenship under penalty of perjury. *Black Voters Matter Fund, et. al v. Byrd*, 1:26-cv-26047, ECF No. 1, ¶¶ 44–46 (“Compl.”). HB 991 adds a separate condition: eligible citizens must satisfy the State’s citizenship verification process or produce additional documents. *Id.* ¶¶ 47–54. Signed on April 1, 2026, the challenged provisions take effect January 1, 2027. *Id.* ¶ 48. Plaintiffs challenge the following provisions:

- **DPOC Registration Provisions (Fla. Stat. §§ 97.0525, 97.053, 97.057).** Registration applications and certain updates are compared against Department of Highway Safety and Motor Vehicles (“DHSMV”) records. If those records indicate noncitizenship or do not establish that acceptable citizenship documentation was previously provided, Supervisors must consult other governmental sources. If verification fails, the applicant must provide DPOC. These requirements apply even to eligible citizens who properly complete the Federal Form or State Form and attest to citizenship. Compl. ¶¶ 50–54. Accepting the application does not end the inquiry; an applicant whose citizenship remains unverified must vote provisionally, and the ballot will not count unless citizenship is timely verified or acceptable DPOC is timely provided. *Id.* ¶ 52.

- **List Maintenance Provisions (Fla. Stat. §§ 98.075, 98.093).** The Department identifies registered voters as potentially ineligible using information from governmental entities. After the Department assesses that information as credible and reliable, it refers voters to Supervisors for eligibility proceedings. *Id.* ¶¶ 55–60. But government records may reflect a naturalized citizen’s former status without reflecting subsequent naturalization. *Id.* ¶¶ 71–77. HB 991 supplies no uniform standards for selecting sources, resolving conflicting records, or determining what establishes current noncitizenship. *Id.* ¶ 63. The Complaint alleges that this systematic process will operate even during the ninety days before federal elections. *Id.* ¶¶ 143–49.

The eligibility proceedings do not necessarily protect the ballot while these questions are resolved. Registered voters must vote provisionally pending an eligibility determination. *Id.* ¶ 61. The Supervisor conducts the hearing and decides eligibility under a preponderance standard without an expressly assigned burden of persuasion or Chapter 120’s ordinary safeguards. *Id.* ¶¶ 64–65. Judicial review is available, but the statute does not explain how a pending dispute or appeal preserves a ballot before counting and certification deadlines expire. *Id.* ¶ 66.

Plaintiffs notified Defendant and all sixty-seven Supervisors of the alleged NVRA violations on May 15, 2026. Those violations remained uncured after the statutory cure period. *Id.* ¶¶ 115–16.

## LEGAL STANDARD

A complaint survives Rule 12(b)(6) when its factual allegations, accepted as true, plausibly establish an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, and Plaintiffs need only allege facts sufficient to raise their entitlement above speculation. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The Court accepts well-pleaded facts and draws reasonable inferences in Plaintiffs' favor. *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019).

Review generally is limited to the complaint and its attachments. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). Although the Court may take judicial notice of the Directive, that does not require accepting its disputed assertions as true. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 & n.10 (11th Cir. 1999). Defendant's interpretation cannot override HB 991's text or resolve factual disputes over its planned operation and implementation. Even if considered, the Directive does not overcome Plaintiffs' allegations.

## ARGUMENT

### I. Plaintiffs have satisfied the NVRA's pre-suit notice requirement.

#### A. Plaintiffs' May 15, 2026 notice letter provided notice of the Section 8(a)(3)–(4) claim (Count III).

According to Defendant Byrd, Plaintiffs failed to provide pre-suit notice. *See* 52 U.S.C. § 20510(b)(1)–(2). However, contrary to Secretary Byrd's assertions, Plaintiffs' pre-suit notice adequately notified Defendants of the Section 8(a)(3)–(4) claim. ECF No. 146-2, Plaintiffs' May 15, 2026 Notice Letter. Specifically, on pages 3–4, Plaintiffs allege that HB 991 violates the

NVRA's strict requirements governing voter removal. *Id.* The notice clearly explains Plaintiffs' position that HB 991 violates Section 8 of the NVRA by authorizing the removal of voters based on the absence of documentary proof of citizenship, rather than on reliable, legally permissible evidence of ineligibility. *Id.* Plaintiffs further explain that Defendants' reliance on incomplete government databases risks disenfranchising eligible voters and effectuates a systematic voter-purge program inconsistent with the NVRA's requirements for reasonable, uniform, and nondiscriminatory list maintenance. *Id.*

The notice identified the precise violation alleged in Count III: "[a] key defect in HB 991 is that it treats the absence of DPOC in government databases as sufficient evidence to initiate voter removals. The NVRA does not permit that." *Id.* at 3–4; *see* Compl. ¶ 131. It further explained, "Section 8 allows removal only on the basis of reliable evidence that a registrant is ineligible, and it does not authorize states to presume non-citizenship from incomplete or inconclusive records," citing 52 U.S.C. § 20507(a)(3)–(4), (b). *Id.* at 4; *see* Compl. ¶ 130. The notice therefore challenged HB 991 for substituting "lack of verification for proof of ineligibility" because "[t]he NVRA does not permit removal programs built on that premise," pursuant to Section 8(a)(3)–(4). *Id.* at 4; *see* Compl. ¶ 132. That is the same theory pleaded in Count III.

These allegations in the notice letter closely align with the allegations underlying Count III of the Complaint and served as more than sufficient notice of Plaintiffs' intentions to bring a Section 8(a)(3)–(4) claim. 52 U.S.C. § 20510(b)(2).

**B. Under the unique circumstances of this case, Plaintiffs are not required to give notice of the NVRA Section 8(c)(2)(A) claim (Count V).**

The purpose of the NVRA's pre-suit notice provision is to provide the State with an opportunity to correct an alleged violation without costly litigation. *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997). However, that purpose is negated when

the State has indisputably taken a position that cannot be reconciled with Plaintiffs' concerns. *Id.* (holding that NVRA pre-suit notice was unnecessary where providing notice would be futile because the State had already made clear its refusal to comply).

By the time Plaintiffs filed this lawsuit, Defendants had concretely demonstrated that they had no intention of remedying the alleged violation of Section 8(c)(2)(A). Specifically, Defendants refused to address the Section 8(c)(2)(A) concerns raised in another plaintiff group's notice letter. Consequently, by the time Plaintiffs were joined to this consolidated litigation, Defendants were already defending against an identical Section 8(c)(2)(A) claim. *See* ECF No. 89, ¶¶ 287–90.

Under these circumstances, requiring Plaintiffs to provide a new notice letter would serve no practical purpose and would needlessly delay resolution of an already pending dispute. The State is already engaged in litigation over whether HB 991 violates Section 8(c)(2)(A) and thus has made clear its position to defend rather than remedy the Section 8(c)(2)(A) violation. Accordingly, an additional notice letter identifying Plaintiffs' intention to bring a Section 8(c)(2)(A) claim would not meaningfully advance the prospect of voluntary compliance and is therefore futile at this point.

The reasoning of *Georgia State Conference of NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1334–35 (N.D. Ga. 2012), is instructive. There, the court excused additional notice where the defendants' position made clear that the challenged practices would not be changed in the manner the plaintiffs sought. *Id.* Although *Kemp* did not create a categorical exception whenever related litigation is pending, it establishes that notice need not be repeated where the State already knows of the alleged violation and its position demonstrates that additional notice would serve no meaningful purpose. *Id.*; *see Voter Reference Found., LLC v. Torrez*, 727 F. Supp. 3d 1014, 1218

(D.N.M. 2024), *aff'd*, 160 F.4th 1068 (10th Cir. 2025); *Jud. Watch, Inc. v. King*, 993 F. Supp. 2d 919, 922 (S.D. Ind. 2012); *Rosebud Sioux Tribe v. Barnett*, 603 F. Supp. 3d 783, 794 (D.S.D. 2022).

Here, Defendant's ongoing litigation over the same issue provides compelling evidence that the dispute is already concrete and adversarial.

**C. Moreover, the NVRA's notice requirement does not warrant dismissal of Plaintiffs' claims at this late stage of the election cycle.**

Moreover, a federal election is now just over two weeks away—well within the 30-day period in which a pre-suit notice is not required for claims against ongoing NVRA violations. *See* 52 U.S.C. § 20510(b)(3). Section 20510(b)(3) provides that the notice requirement does not apply to a violation occurring within 30 days before a federal election. *Id.* Thus, dismissal of Plaintiffs' Section 8(a)(3)–(4) claim and Section 8(c)(2)(A) claim is unwarranted because Plaintiffs may amend their complaint as of right at this stage and once again bring these claims without any additional notice. *See Voice of the Experienced v. Ardoin*, 813 F. Supp. 3d 600, 644 (M.D. La. 2025) ("interpretation of the NVRA notice provision indicates that Plaintiffs can amend their complaint to allege subsequent notice."). Under these unique circumstances, requiring Plaintiffs to send another notice letter would impose an unnecessary delay without providing Defendant any meaningful new opportunity to understand or remedy the alleged violation.[1]

For all these reasons and in the interest of judicial efficieny, the Court should decline to dismiss Plaintiffs' Section 8(a)(3)–(4) and Section 8(c)(2)(A) claims.

**II. Plaintiffs plausibly allege that HB 991 violates the NVRA.**

**A. HB 991 conditions completed registration on citizenship verification despite Defendant's contrary characterization.**

---

[1] Moreover, because another plaintiff group has brought and noticed an identical Section 8(c)(2)(A) claim, dismissing Plaintiffs' Section 8(c)(2)(A) claim would not bring a resolution to this issue.

Defendant's principal argument is that HB 991 leaves the citizenship checkbox unchanged and requires no DPOC with the initial application. Mot. 1–2, 7–11. But this argument addresses only the initial submission of a form, not the completion of the voter's registration. HB 991 expressly provides that an application only "is *complete* and becomes the official voter registration record" when the necessary eligibility information is received and "verified pursuant to subsection (6)." Fla. Stat. § 97.053(2) (emphasis added). Subsection (6) now includes citizenship verification and, where applicable, DPOC. *Id.* § 97.053(6). The State's motion nevertheless ignores Section 97.053(2).

Subsection (6)(a) confirms the connection. When DHSMV records indicate noncitizenship, or when acceptable DPOC is absent, the applicant must provide the specified DPOC evidence. Fla. Stat. § 97.053(6)(a). Only after receiving evidence confirming the applicant's citizenship must the Supervisor register the applicant as an active voter. *Id.* Until then, the applicant receives a provisional ballot, which is only counted if DPOC is provided before the deadline. *Id.* HB 991 therefore does not merely permit investigation of an independently identified eligibility concern after a citizen has completed registration. Rather, it conditions the completion of registration—and thus the ability to have one's ballot counted—on whether the state is satisfied with an individual's citizenship status, notwithstanding the individual's signed affirmation. That additional proof requirement is precisely what the NVRA prohibits.

Defendant's Directive does not resolve this conflict. It instructs Supervisors to "**register** every applicant just as you always have[,]" yet continues to describe those same individuals as "applicant[s]" whose citizenship must be verified before they may cast a regular ballot. ECF No. 146-1, ¶ 7 ("Dir."). Paragraph 5 similarly refers to an unverified individual as an "applicant," then describes that person as a "registered voter" when discussing potential removal. Calling these

individuals applicants, instead of registrants, runs directly counter to Defendant's broader argument that HB 991's provisions apply entirely post-registration. And these shifting labels do not change the actual requirements imposed. Although the Directive distinguishes unverified citizenship from evidence of noncitizenship for removal purposes, it nevertheless limits applicants with merely unverified citizenship to provisional voting. *Id.* ¶¶ 5, 7. A statutory requirement that prevents a timely, eligible applicant from completing registration and obtaining a countable ballot cannot evade the NVRA merely because Defendant labels it as occurring post-registration. *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 382–83 (6th Cir. 2008) (holding that states cannot defeat NVRA protections by defining registration in a way that strips those protections of their practical effect).

Even if this Court were to accept Defendant's post-registration characterization, it would not dispose of Plaintiffs' Counts III through V, which address HB 991's violation of the NVRA's list maintenance requirements. Counts III through V independently challenge what Florida does to existing registrants after registration. Compl. ¶¶ 129–49.

**B. Count I plausibly states a claim under the Federal Form acceptance requirement and the State Form criteria.**

Section 6(a)(1) of the NVRA requires Florida to accept and use the Federal Form, not simply receive it as the first step in a process requiring additional information. 52 U.S.C. § 20505(a)(1). *Arizona v. Inter Tribal Council of Arizona, Inc.* ("*ITCA*") considered both possible readings of "accept and use" and, in light of the phrase's statutory context, rejected the State's construction that mere receipt of the form was sufficient. 570 U.S. 1, 9–11, 15 (2013). Its holding precludes a State from requiring Federal Form applicants to submit information beyond the form's requirements. *Id.* at 20.

Defendant's attempt to distinguish *ITCA* fails. He argues that Arizona demanded documents accompanying the form, while Florida initiates verification after submission. Mot. 8. Neither distinction deals a blow to Count I. Plaintiffs allege that eligible applicants whose citizenship cannot be verified must supply DPOC to complete registration and cast a ballot that will count. Compl. ¶¶ 51–54, 121–23. Florida requires the same additional citizenship evidence that Arizona did; that it purports to do so after the form has been submitted does not mean the NVRA is not implicated. Nor does the existence of citizens whose records already satisfy the new condition eliminate the violation for those required to furnish additional proof. Delaying the demand does not cure its illegality.

Defendant also quotes *ITCA*'s recognition that not every Federal Form results in registration. Mot. 8. But that passage distinguishes the permissibility of additional demands on applicants from outright denial based on information already in the State's possession *establishing* ineligibility. *ITCA*, 570 U.S. at 15. Plaintiffs acknowledge the latter authority. However, a stale designation, missing record, or unsuccessful search does not itself establish that a person who attests to citizenship is ineligible. Compl. ¶¶ 71–77. Count I challenges the demand for additional proof from eligible citizens, not the denial of applications shown to be ineligible.

Defendant's reliance on *Virginia Coalition for Immigrant Rights v. Beals* is likewise distinguishable. There, the court dismissed the plaintiffs' accept-and-use claim because they did not allege that the removal program prevented proper registration in the first instance. 803 F. Supp. 3d 454, 477 (E.D. Va. 2025). Here, the Complaint makes precisely that allegation. Compl. ¶¶ 50–54, 121–23. A decision concerning subsequent removal of already registered voters does not resolve a claim that a new proof requirement prevents new applicants from completing registration at the outset.

State forms must also satisfy the NVRA's limitation to information necessary to assess eligibility and administer registration. 52 U.S.C. §§ 20505(a)(2), 20508(b)(1); Compl. ¶¶ 108, 119, 123. Defendant's assertion that HB 991 adds only a felony-acknowledgment checkbox to the printed State Form, Mot. 9, sidesteps the additional DPOC required to complete registration when citizenship cannot be verified. His attempts to distinguish *Mi Familia Vota v. Fontes*, 129 F.4th 691, 704–05 (9th Cir. 2025), *cert. granted sub nom. Republican National Committee v. Mi Familia Vota*, 146 S. Ct. 2799 (2026), and *Fish v. Kobach*, 840 F.3d 710, 717 (10th Cir. 2016), rest on the same premise. Mot. 9–10.

Plaintiffs challenge the additional proof required to complete registration, not merely the wording printed on the form. That the documents need not accompany the application does not defeat the claim. The central question is whether those documents are ultimately required to complete an eligible citizen's registration. Plaintiffs' Complaint plausibly establishes that they are.

**C. Count II plausibly alleges that HB 991 prevents timely registration of eligible applicants.**

Section 8(a)(1) requires a State to ensure that eligible applicants submitting valid applications within the specified deadlines are registered to vote in the election. 52 U.S.C. § 20507(a)(1). Count II alleges that eligible citizens who timely submit complete Federal or State Forms will not obtain effective registration while Florida awaits additional verification or documents. Compl. ¶¶ 124–28. *ITCA* itself relied on the timely registration provision in rejecting the argument that a completed Federal Form could be treated as insufficient without additional state-required information. 570 U.S. at 10–11.

Defendant responds that all applicants are registered and any remaining issue is addressed through an individualized proceeding. Mot. 10–11. Again, that assertion overlooks Section 97.053(2), Fla. Stat., which provides that an application "is complete and becomes the official

voter registration record" when the necessary eligibility information is received and "verified pursuant to subsection (6)." Thus, HB 991 conditions an applicant's placement on the rolls as an active voter on their provision of the necessary evidence of citizenship. An eligible citizen's timely application is not given the required effect if the citizen remains unable to cast a countable ballot because the State cannot complete a verification process that federal law does not require the applicant to satisfy. An eventual eligibility determination after an election does not fulfill the State's obligation to register the applicant for that election.

The *Browning* decision is inapposite here. There, the Eleventh Circuit considered matching driver's license and Social Security numbers under the Help America Vote Act ("HAVA") and the Civil Rights Act's materiality provision. *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1156–57, 1167–75 (11th Cir. 2008). That case concerned the verification of ID numbers that federal law required from applicants. It did not address additional DPOC requirements or decide whether those requirements violate the NVRA.

Finally, *Charles H. Wesley Education Foundation, Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005), requires the processing of timely, valid mailed registration forms. Defendant's observation that *Cox* does not prohibit every later eligibility inquiry misses the point. Mot. 10–11. Plaintiffs challenge withholding registration from eligible applicants because they have not satisfied an additional proof requirement prohibited by the NVRA. The possibility of a permissible eligibility inquiry does not defeat that claim. Count II therefore survives.

### D. Count III plausibly challenges removal of eligible citizens on grounds the NVRA does not permit.

The NVRA limits removal of a registrant's name to specified grounds: (1) at the registrant's request, (2) applicable state-law rules concerning criminal conviction or mental incapacity, and (3) the death-or-residence program described in subsection (a)(4). 52 U.S.C. § 20507(a)(3)–(4).

Unless one of these factors is satisfied, the State may only initiate removal if a voter both fails to respond to a registration notice and has not voted or appeared to vote in two consecutive federal elections. 52 U.S.C. § 20507(b)(2). Count III alleges that HB 991 instead permits eligible citizens to be removed because citizenship verification fails, DPOC is unavailable, or a voter does not respond. Compl. ¶¶ 130–32. However, none of these reasons is a freestanding statutory ground for removing an otherwise eligible citizen.

Defendant argues that the general removal provision does not protect a noncitizen who was never eligible to register. Mot. 11–13. *United States v. Florida* adopted that interpretation, reasoning that Section 8(a)(3) addresses removal following proper registration rather than revocation of an improperly granted registration. 870 F. Supp. 2d 1346, 1349–50 (N.D. Fla. 2012). *Bell v. Marinko* likewise upheld removal of voters determined not to have been residents of the relevant precinct when they registered. 367 F.3d 588, 591–92 (6th Cir. 2004). However, neither decision stands for the proposition that the absence of documentary verification equates to ineligibility.

Even if officials may remove individuals affirmatively shown never to have been eligible, unsuccessful verification, missing DPOC, or failure to answer a notice does not establish noncitizenship. Compl. ¶ 131. That distinction is concrete. A DHSMV record reflecting lawful noncitizen status before naturalization can be *historically* accurate while providing no basis to conclude that the person is *presently* a noncitizen. Compl. ¶¶ 71–77. Plaintiffs challenge removal of eligible citizens under that defective inference, not Florida's power to remove people who are actually proven to be ineligible. That distinction is consistent with *ITCA*. 570 U.S. at 15.

*Arcia* also does not foreclose this claim. Mot. 11. The Eleventh Circuit decided the 90-day question and expressly reserved interpretation of the NVRA's general removal provision. *Arcia v.*

*Fla. Sec'y of State*, 772 F.3d 1335, 1346–47 (11th Cir. 2014). Requiring Supervisors to make a final eligibility determination does not cure a process that treats failed verification as proof of ineligibility. Compl. ¶¶ 63–64, 71–77, 131–32. Defendant cannot defeat a claim challenging the erroneous removal of eligible citizens by assuming that everyone removed will be a noncitizen.

**E. Count IV plausibly alleges nonuniform and discriminatory list maintenance.**

Section 8(b) of the NVRA requires any program or activity maintaining accurate and current registration rolls to be uniform and nondiscriminatory. 52 U.S.C. § 20507(b)(1). The list maintenance program mandated by HB 991 is neither. Plaintiffs allege that naturalized citizens are particularly likely to be flagged because government records may reflect their former noncitizen status without reflecting their subsequent naturalization. Compl. ¶¶ 71–77, 135. Those citizens therefore face additional scrutiny and demands for documentation despite their eligibility. HB 991 also lacks uniform standards governing which government sources officials must consult, how they must resolve incomplete or conflicting records, and what evidence establishes current noncitizenship. *Id.* ¶¶ 63, 137–38. These deficiencies expose similarly situated eligible voters to different scrutiny and eligibility determinations depending on how individual Supervisors administer the program. *Id.* ¶ 138.

Defendant responds only by asserting that the statute applies to everyone, makes no express distinctions based on protected characteristics, and incorporates existing uniformity requirements. Mot. 13–14. But a state "impose[s] burdensome demands in a discriminatory manner"—and thereby violates Section 8(b)—when its list maintenance programs "have a discriminatory impact." *United States v. Florida*, 870 F. Supp. 2d at 1350; *accord Mi Familia Vota*, 129 F.4th at 714–15; *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 703–04 (N.D. Ohio 2006) ("The regulations also have the discriminatory effect of imposing an undue burden primarily on poor

and/or elderly voter registration workers . . . ."). Defendants' only support for a contrary interpretation of Section 8(b) is the district court's decision in *Browning*. *Fla. State Conf. of NAACP v. Browning*, 569 F. Supp. 2d 1237, 1257 (N.D. Fla. 2008). *See* Mot. 13–14. But that holding did not address the NVRA at all; *Browning* was analyzing Equal Protection claims not at issue here.

**F. Count V plausibly alleges a systematic removal program subject to the NVRA's 90-day prohibition.**

Section 8(c)(2)(A) of the NVRA requires completion of any program whose purpose is to systematically remove ineligible voters at least ninety days before a federal primary or general election. 52 U.S.C. § 20507(c)(2)(A). Defendant does not identify an exception allowing citizenship-based systematic removals during that period. Instead, he argues that HB 991's removals are individualized because officials review information, send notices, permit hearings, and make final determinations. Mot. 14–15. However, *Arcia* rejects the premise that a program must delete names automatically to be systematic. *See* 772 F.3d at 1339–40. There, the Eleventh Circuit held that Florida's use of mass computerized comparisons to generate removal candidates, followed by notices, was systematic. *Id.* at 1344.

HB 991 recycles this same flawed approach. The Complaint alleges materially similar features: recurring comparisons of governmental information, including DHSMV and federal jury records; referrals of potentially ineligible voters; and resulting eligibility proceedings. Compl. ¶¶ 55–63, 143–47. It also alleges that the program will operate during the 90 days before federal elections. *Id.* ¶¶ 145–49. Defendant's asserted safeguards do not establish that the pleaded program is individualized as a matter of law. If mailing individual notices and reviewing individual responses categorically eliminated systematic operation, the program in *Arcia* would not have been struck down by the NVRA. Florida cannot evade that prohibition by again placing individual

proceedings at the end of a systematic process. Nor can state law authorize removals "at any time[,]" Fla. Stat. § 98.065(5), when federal law prohibits them.

*Beals* supports allowing this claim to proceed. It rejected the argument that a database-generated removal program became individualized merely because it focused on identified persons and contacted them twice. 803 F. Supp. 3d at 473. Applying *Arcia*, the court held that the allegations stated a claim under the 90-day provision. *Id.* Defendant's citation to that decision therefore cannot establish that HB 991's alleged operation falls outside the NVRA. Similarly, the possibility of restoring an erroneously removed voter under § 98.081(2) does not authorize a removal program Congress prohibited during the protected period. *See* Mot. 15.

The Supreme Court's recent SAVE decision does not revive Defendants' arguments. *See* Mot. 15. *Department of Homeland Security v. League of Women Voters* stayed an order concerning the federal government's modified SAVE system and recognized the permissibility of individualized inquiries. No. 26A308, slip op. at 6 (U.S. Sept. 25, 2026). The Court expressly left unresolved whether the NVRA prohibits citizenship-based cancellation programs within ninety days of a federal election. *Id.* at 6 n.2. Federal authority to provide citizenship information therefore does not establish States' authority to use that information in the systematic removal program alleged here during the prohibited period.

## III. Count VI plausibly alleges constitutionally inadequate procedure before eligible citizens lose their right to vote.

### A. The Complaint alleges facts supporting the *Mathews* factors without needing to plead them as separate elements.

A procedural due process claim requires a protected interest, state action, and constitutionally inadequate process. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). In assessing each claim, courts must consider the private interest, the risk of error and

value of additional safeguards, and the government's interests and administrative burdens. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Defendants incorrectly treat the absence of separately labeled allegations for each factor as a pleading defect. Mot. 16. A complaint must contain facts supporting a viable claim but need not recite a judicial balancing test as a checklist. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006); *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001). Those pleading principles are subject to *Iqbal*'s plausibility requirement, which Plaintiffs' Complaint satisfies.

Count VI expressly invokes *Mathews* and incorporates detailed allegations about the information used to initiate proceedings, the burden of responding, adjudicative procedures, and ballot restrictions. Compl. ¶¶ 150–56. It identifies the threatened loss of a vote, stale records that may falsely identify citizens, and safeguards that could reduce error before the loss becomes irreversible. *Id.* ¶¶ 55–77, 86–100, 151–56. The risk of loss of a fundamental right is just too great. Defendant's appeal to administrative costs does not excuse constitutionally inadequate process and, standing alone, provides no basis for dismissal. *See* Mot. 20.

**B. Initial reliability review and a preponderance standard do not resolve the pleaded risk of erroneous deprivation.**

Defendant's recitation of available procedures does not automatically show that they address the errors alleged. *See* Mot. 17–18. A record may reliably identify a person's former immigration status while saying nothing conclusive about citizenship after naturalization. Compl. ¶¶ 71–77. The statutory direction to use credible and reliable information does not itself specify how officials must account for that change, reconcile conflicting records, or distinguish a missing confirmation from current noncitizenship. *Id.* ¶ 63. Section 98.075(6)(b), Fla. Stat., also permits

action based on information received directly from other governmental entities, so the Department's initial review is not a complete answer to every route into the process.

*Catron* illustrates why the existence and quality of safeguards must be assessed together. The Eleventh Circuit considered the discretion afforded officials, the absence of sufficient guidance, and the lack of a meaningful mechanism for contesting a deprivation. *Catron*, 658 F.3d at 1267–69. General statutory assurances do not negate specific allegations concerning unreliable inputs, uncertain burdens, and a ballot deadline that can expire before eligibility is resolved.

The standard of proof likewise matters because it allocates the risk of error. *Santosky v. Kramer*, 455 U.S. 745, 754–56 (1982); *Addington v. Texas*, 441 U.S. 418, 423–27 (1979). Indeed, the Supreme Court requires a clear and convincing evidence standard when, as here, the individual interests at stake are "particularly important" and "more substantial than mere loss of money." *Santosky*, 455 U.S. at 756 (quoting *Addington*, 441 U.S. at 424). Those cases do not establish a categorical rule for voter registration disputes, but they establish that the choice of a preponderance standard cannot be defended without considering the interests at stake and the consequences of an erroneous finding.

Plaintiffs allege that the State initiates proceedings on potential ineligibility, does not clearly bear the burden of establishing current noncitizenship, and may terminate an existing registration without clear and convincing evidence. Compl. ¶¶ 64, 152. The fundamental nature of the voting interest, *see Reynolds v. Sims*, 377 U.S. 533, 562 (1964), supports Plaintiffs' argument for a heightened safeguard. An erroneous exclusion from a particular election cannot be repaired simply by restoring the voter afterward. At a minimum, the Complaint plausibly challenges a process that places on an eligible citizen the practical burden of disproving an inconclusive referral before a short, consequential deadline.

Even if the Court ultimately concludes that a preponderance standard is permissible, that will not resolve the independent allegations about who must prove ineligibility, what evidence suffices, or whether the voter can obtain a meaningful determination before the ballot is lost. The motion does not establish the constitutional adequacy of those features as a matter of law.

### C. Plaintiffs plausibly allege that meaningful process must precede the loss of a countable ballot.

Defendant relies on the general proposition that a hearing may sometimes follow a deprivation. Mot. 19. Due process is flexible, and Plaintiffs do not contend that every eligibility inquiry requires a full evidentiary hearing before any administrative action. But exceptions permitting later process do not dispense with the need to assess its timing and adequacy in the circumstances presented. *See Zinermon v. Burch*, 494 U.S. 113, 127–32 (1990); *Mathews*, 424 U.S. at 333, 343.

Here, the alleged deprivation is foreseeable and follows the authorized statutory procedure. It is not a random or unauthorized act that the State could not address beforehand. *See Zinermon*, 494 U.S. at 136–39. Florida established the investigation and hearing timetable. Plaintiffs allege that this timetable fails to provide a meaningful opportunity to resolve eligibility before the separate voting deadline becomes dispositive. Compl. ¶¶ 59–66, 154–56. Defendant's acknowledgment that the process is meant to permit voting in upcoming elections does not show that the statute guarantees timely resolution.

Pre-deprivation process is particularly important where later review cannot restore the lost opportunity. *Fuentes v. Shevin* explains that notice and an opportunity to be heard must arrive in time to prevent the deprivation they are meant to guard against. 407 U.S. 67, 81–82 (1972). *United States v. James Daniel Good Real Property* likewise recognizes that later judicial review may not compensate for an erroneous deprivation in the interim. 510 U.S. 43, 56 (1993). Applied here,

those principles require consideration of an election that will pass while an eligibility dispute remains unresolved—not merely the possibility of eventual restoration of a fundamental right.

The reasoning in *Self Advocacy Solutions N.D. v. Jaeger*, 464 F. Supp. 3d 1039, 1052 (D.N.D. 2020), is persuasive. In addressing signature-based ballot rejection, the court explained that an opportunity to vote after the election is no substitute for adequate process before rejection. The factual mechanism differs, but the timing problem is the same: "there is no possibility of meaningful postdeprivation process" because "there is no way to vote after an election is over, after all." *Id.* Plaintiffs plausibly allege that risk here.

**D. HB 991 permits voting restrictions before the eligibility proceeding concludes.**

The text answers Defendant's assertion that the process is not necessarily post-deprivation. Section 98.075(7)(a)1.h., Fla. Stat., expressly informs voters identified as potentially ineligible that they will be required to vote a provisional ballot which will not be counted unless they present evidence of eligibility within two days after the election. The published-notice provision contains the same warning. *Id.* § 98.075(7)(a)2.g. These restrictions attach while eligibility remains unresolved, not only after a final determination that the voter is ineligible. Compl. ¶¶ 61, 155–56.

The hearing schedule also does not eliminate that problem. A voter may have thirty days to respond to the initial notice, and a requested hearing may occur up to thirty days after its notice, followed by additional time for the final determination. Fla. Stat. §§ 98.075(7)(a)1.b., 5. An election and its two-day evidence deadline can pass before that process ends. Even if provisional voting alone does not invariably constitute a completed constitutional deprivation, Plaintiffs plausibly allege that an eligible voter's ballot can go uncounted before a meaningful eligibility determination. The Court need not decide the earliest possible moment of deprivation to reject dismissal of that allegation.

Likewise, mailed notice and publication alternatives do not establish that affected voters have a meaningful opportunity to respond before the ballot deadline. Plaintiffs challenge the adequacy and timing of that opportunity, not the absence of guaranteed actual receipt. Compl. ¶¶ 99, 104, 154–56. Nor does circuit court review cure the problem if it comes too late to preserve the voter's ballot. *Id.* ¶ 66. The State's procedures must protect against the loss of the vote, not merely provide a means to reverse removal after the election. *See Fuentes*, 407 U.S. at 82.

**E. The Supervisors' combined functions must be assessed with the other alleged procedural defects.**

Under HB 991, the same Supervisor administers the notice process, receives the voter's response, conducts the hearing, and decides eligibility, all without Chapter 120's ordinary adjudicative safeguards. Compl. ¶¶ 65, 153. Defendant points to the Department's initial involvement and the availability of judicial review. Mot. 19–20. But those safeguards arise before and after adjudication, and they do not establish whether *the adjudication itself* provides constitutionally adequate process.

Due process requires a neutral decisionmaker. *In re Murchison*, 349 U.S. 133, 136–37 (1955). An initial enforcement assessment is different from an adjudication, and later review is not a substitute for neutrality at the adjudicative stage. *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 617–19 (1993).

Plaintiffs do not rely on combined functions alone. They allege a process built on unreliable citizenship information, uncertain evidentiary burdens, and ballot deadlines that may expire before meaningful review. The Court need not infer personal bias to find those allegations sufficient. Officials' participation at the beginning and end of the process does not establish that eligible voters receive adequate protection before losing their constitutional right to vote.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's Motion to Dismiss.

Dated: October 16, 2026

Respectfully submitted,

/s/ Matletha Bennette
Matletha Bennette (Fla. Bar No. 1003257)
**SOUTHERN POVERTY LAW CENTER**
P.O. Box 10788
Tallahassee, FL 32302-2788
Tel: 786-347-2056
matletha.bennette@splcenter.org

Bradley E. Heard**
**SOUTHERN POVERTY LAW CENTER**
1101 17th Avenue NW, Ste 550
Washington, D.C. 20036
Tel: 202-945-7904
bradley.heard@splcenter.org

Jennifer Thelusma (Fla. Bar No. 1019776)
**SOUTHERN POVERTY LAW CENTER**
2 South Biscayne Blvd, Suite 3200
Miami, FL 33131
786-347-2056
jennifer.thelusma@splcenter.org

Norman L. Eisen** (DC Bar No. 435051)
Andrew Warren (FL Bar No. 646431)
Pooja Chaudhuri* (DC Bar No. 888314523)
Beauregard Patterson* (WI Bar No. 1102842)
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
(202) 601-8678
norman@democracydefenders.org
andrew@democracydefenders.org
pooja@democracydefenders.org
beauregard@democracydefenders.org

**Pro Hac Vice Application Pending*
***Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs Black Voters Matter Fund and League of United Latin American Citizens*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **16th** day of October, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

***/s/ Matletha Bennette***
Matletha Bennette (Fla. Bar No. 1003257)
**SOUTHERN POVERTY LAW CENTER**
P.O. Box 10788
Tallahassee, FL
Tel: 786-347-2056
matletha.bennette@splcenter.org